**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECH., LLC, ET AL.,** | |
| **Plaintiffs,** | **Civil Action No.** |
| **v.** | **2:17-cv-123-JRG-RSP** |
| **HUAWEI TECHS. CO. LTD ET AL.,** | |
| **Defendants.** | **JURY TRIAL REQUESTED** |

**PLAINTIFFS' EMERGENCY MOTION FOR ANTISUIT INJUNCTION
AND REQUEST FOR EXPEDITED BRIEFING**

TABLE OF CONTENTS

I.  Introduction.................................................................................................................1

II.  Statement Of Facts.....................................................................................................2

    A.  PanOptis initially files this suit against Huawei for patent infringement and a declaration it complied with FRAND......................................2

    B.  After asserting the defense of breach of FRAND in this case, Huawei files two cases in China based on the same transactions and events at issue here.................................................3

    C.  The nature of the FRAND dispute between PanOptis and Huawei. ..................................................................................................4

III.  Legal Standard .........................................................................................................5

IV.  Argument ................................................................................................................7

    A.  PanOptis meets at least two of the *Unterweser* factors...........................7

        1.  Permitting Huawei to carry out its Chinese litigation threatens the Court's jurisdiction to decide this matter. ..................................................................................................7

        2.  Huawei's Chinese litigation is vexatious and oppressive. ..................................................................................8

            a.  PanOptis will suffer inequitable hardship from Huawei's Chinese litigation. ..................................8

            b.  Huawei's Chinese litigation will frustrate and delay the speedy and efficient determination of this case. ..........................................10

            c.  Huawei's Chinese cases are duplicitous of this case.....................................................................10

    B.  Domestic judicial interests weigh in favor of an injunction. ................................11

    C.  Potential international comity concerns do not conflict with the domestic judicial interests addressed above for this first-filed action....................................................................12

D.      PanOptis satisfies the prerequisites for a preliminary injunction. ..........................................................................................13

E.      The Court should enjoin Huawei from (1) seeking relief in China that would interfere with this Court's jurisdiction, and (2) pursuing any claims in China that overlap with the defenses or claims in this case. ...........................................................14

V.      Expedited Briefing Schedule ...........................................................................14

VI.     Conclusion .......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Inc. v. Qualcomm Inc.*,
    2017 WL 3966944 (S.D. Cal. Sept. 7, 2017)..............................................................................9

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
    837 F.2d 33 (2d Cir. 1987)..................................................................................................7

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ........................................................................................6, 13

*In re Unterweser Reederei GMBH*,
    428 F.2d 888 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en
    banc) (per curiam), *rev'd on other grounds sub nom. M/S Bremen v. Zapata
    Off–Shore Co.*, 407 U.S. 1 (1972).....................................................................................5, 7

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) .......................................................................................... passim

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ........................................................................................ passim

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984)..........................................................................................2, 7

*Microsoft Corp. v. Motorola, Inc.*,
    871 F. Supp. 2d 1089 (W.D. Wash. 2012), *aff'd*, 696 F.3d 872 (9th Cir. 2012)...........9, 11, 13

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
    361 F.3d 11 (1st Cir. 2004)..................................................................................................6

## I.      INTRODUCTION

PanOptis filed this patent infringement action against Huawei on February 10, 2017, asserting four patents declared essential to the LTE standard, one implementation patent, and also requesting a declaration that PanOptis' portfolio licensing offers complied with its FRAND commitment. Huawei answered on May 19, 2017. In addition to denying infringement, Huawei asserted breach of FRAND by PanOptis as the predicate for six of its affirmative defenses, thus joining PanOptis in seeking an adjudication of its past licensing conduct vis-à-vis Huawei. This case is set for trial on August 20, 2018, with a discovery cutoff of March 19, 2018 and opening expert reports due on March 26, 2018.

PanOptis files this emergency motion for antisuit injunction because on July 6, 2017, Huawei filed two claims against PanOptis and its affiliates in the Shenzhen Intermediate People's Court. PanOptis first learned of those claims on September 1, 2017, when it received them by mail. Huawei's Chinese claims assert breach of FRAND by PanOptis—the same issue already pending in this case—and requests that the Chinese court prohibit PanOptis from further prosecuting or pursuing its patent infringement and FRAND compliance claims in this Court. If Huawei is granted the injunction it seeks in China, PanOptis would be put to the choice of being fined and/or detained for contempt in China or having to dismiss its patent infringement and FRAND compliance claims in this United States Court.

The egregiousness of Huawei's Chinese complaints are magnified by the fact that *Huawei is currently invoking the jurisdiction of this Court in another case in which it is the plaintiff to obtain a finding of infringement, a declaration of FRAND compliance, and a valuation of its own declared LTE essential patent portfolio.* The first of those cases, brought by Huawei against T-Mobile, Ericsson, and Nokia, is set for trial next week in this Court. That Huawei, when it is the plaintiff, embraces this Court's jurisdiction and requests the Court issue a

1

FRAND portfolio adjudication, but when it is the defendant, seeks to enjoin proceedings before this Court and require all matters be adjudicated in China, is blatant forum shopping.

"Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984). Therefore, "when the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings." *Id.* Huawei's Chinese actions are an affront to this Court's jurisdiction and the Court should enjoin Huawei from further prosecuting those actions.

## II.  STATEMENT OF FACTS

### A.  PanOptis initially files this suit against Huawei for patent infringement and a declaration it complied with FRAND.

PanOptis filed this case on February 10, 2017, asserting infringement of several LTE standard essential patents, and one implementation patent, all owned by PanOptis affiliates.[1] The suit also seeks a declaratory judgment that PanOptis' global offers to license its entire SEP portfolio to Huawei complied with PanOptis' contractual requirement to the European Telecommunication Standards Institute (ETSI) to grant licenses on fair, reasonable, and non-discriminatory (FRAND) terms. *See* Dkt. No. 31 (PanOptis' Third Amended Complaint). On May 19, 2017, Huawei answered and denied infringement. Dkt. No. 39. In addition to the

---

[1] The Plaintiffs in this case include Optis Wireless Technology, LLC, and Optis Cellular Technology, LLC, each of which owns the patents being asserted against Huawei. In addition, PanOptis Patent Management, LLC is included as a plaintiff as that entity has engaged in licensing negotiations with Huawei on behalf of its affiliates. In this motion, the Plaintiffs are collectively referred to as "PanOptis."

standard defenses of invalidity and unenforceability, Huawei also asserted the affirmative defense that PanOptis' global licensing offers to Huawei were in violation of FRAND. *Id*. at 32.

**B.      After asserting the defense of breach of FRAND in this case, Huawei files two cases in China based on the same transactions and events at issue here.**

On July 6, 2017, Huawei secretly filed two Chinese actions against PanOptis and its affiliates alleging that the terms of the same global licensing offers from PanOptis to Huawei at issue in this case violated PanOptis' FRAND commitment. Clark Decl., Ex. A [Complaint 1673] and  Ex. B [Complaint 1674]. Because Huawei secretly filed the actions on July 6, PanOptis did not learn of their pendency until September 1, 2017, when PanOptis received mailed copies of the complaints at its Texas addresses.[2] Warren Decl., ¶ 7.

Huawei's first Chinese complaint, docket number 1673, alleges that the portfolio license terms PanOptis has offered Huawei do not comply with FRAND and asserts, as a result, legal claims for breach of FRAND and antitrust violations. Clark Decl., ¶ 11. In the 1673 Complaint, Huawei requests that the Chinese court enjoin PanOptis from further pursuing its earlier-filed patent infringement and FRAND-compliance lawsuits against Huawei in the United States, as well as in the U.K. and Germany. In its prayer for relief, Huawei specifically requests an "Award that [PanOptis] shall immediately stop all civil infringement acts against Huawei." Clark Decl., Ex. A [Complaint 1673], at 2 (Prayer for Relief #2).[3]  Huawei also requests as relief a declaration that PanOptis has violated FRAND and claims associated damages of 99 million Chinese Yuan (approximately $15 million US). *Id*. (Prayer for Relief #1).

---

[2] PanOptis intends to contest propriety of service and jurisdiction in China, but it is unclear when the Chinese court will rule on those challenges.

[3] Two additional PanOptis affiliates, Unwired Planet, LLC and Unwired Planet International Limited have filed for a similar antisuit injunction in the UK court in order to protect that court's jurisdiction as well. Unwired Planet is also a named defendant in the 1673 complaint.

Huawei's second Chinese complaint, docket number 1674, raises many of the same factual allegations related to breach of FRAND as the 1673 complaint. The 1674 complaint requests the court to set the royalty rate for PanOptis' Chinese patents within China.   Clark Decl., Ex. B [Complaint 1674] at 2, 9.

PanOptis' answers in China are due on September 30, 2017. At any time, Huawei can file a motion in one of its Chinese actions for an order precluding PanOptis from proceeding before this Court.[4] Clark Decl., ¶¶ 15-16. Such an order, if granted, could preclude PanOptis from conducting discovery, meeting Court deadlines, or otherwise proceeding with this case.

### C.     The nature of the FRAND dispute between PanOptis and Huawei.

PanOptis consists of a group of companies wholly-owned by Inception Holdings LLC. Each of the subsidiaries of Inception Holdings comprises a distinct portfolio of patents acquired from industry leading companies. Warren Decl., ¶ 2. Two subsidiaries in the PanOptis group are Optis Wireless Technology LLC ("Optis Wireless") and Optis Cellular Technology LLC ("Optis Cellular"). *Id.* Both entities hold portfolios of patents essential to the cellular telephony standards, which they seek to license on FRAND terms. *Id.*

Two other PanOptis subsidiaries, Unwired Planet, LLC ("UP") and Unwired Planet International Limited ("UP IL"), are currently involved in litigation to set portfolio rates for standard essential patents in the U.K. against Huawei. *Id.* at ¶ 3. The U.K. trial court recently set a royalty rate for certain UP and UP IL essential patent families covering the GSM, UMTS, and LTE standards. The U.K. court did not adjudicate a rate for Optis Cellular, Optis Wireless, or certain UP IL essential patents. *Id.* at ¶ 4.

---

[4] As part of the related UK litigation, Huawei has represented that it will not take steps to interfere with the UK action until the UK court issues an order addressing the requested antisuit injunction.

PanOptis has offered Huawei a global license for its entire SEP portfolio for LTE technology that is in part based on past licensing agreements and the number of patent families in PanOptis' portfolio. *Id.* at ¶ 5. Although Huawei has represented that it will enter into the license finally adjudicated by the U.K. court, and is currently abiding by the terms of the license set by the U.K. court, pending appeal, it has resisted applying that rate to the remainder of the PanOptis portfolio that has not been adjudicated. *Id.* at ¶ 6. Instead, Huawei now seeks to get a better outcome by forum shopping in China.

In this case PanOptis has filed for patent infringement of unlicensed standard essential patents that are not part of the patents whose rates were adjudicated by the U.K. court, and seeks a declaration that it has complied with its FRAND obligations. Huawei recognizes that this Court has the power to perform such a FRAND adjudication; this is the exact position it has taken in its case against T-Mobile. *Huawei Technologies v. T-Mobile US, Inc., et al.*, Case No. 2:16-cv-715, Dkt. No. 1, ¶¶ 81-86.  In fact, when facing a motion to dismiss that claim for declaratory relief against T-Mobile, Huawei emphasized that this Court was the proper forum for such a dispute and that to dismiss the claim would "wast[e] party and judicial resources and creat[e] a risk of duplicative or inconsistent judgments." *Id.,* Dkt. No. 17, at 13. That is exactly the risk that PanOptis faces now by Huawei's later-filed Chinese lawsuits seeking an antisuit injunction.

## III.    LEGAL STANDARD

It is well established that federal courts are empowered to enjoin persons subject to their jurisdiction from prosecuting foreign suits. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996). A foreign antisuit injunction is "a particular subspecies of preliminary injunction." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003). Accordingly, "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions." *Id*.

5

In the seminal Fifth Circuit case on antisuit injunctions, *Unterweser*, the court noted that antisuit injunctions have properly issued on motion "when foreign litigation would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations." *In re Unterweser Reederei GMBH*, 428 F.2d 888, 896 (5th Cir. 1970), *aff'd on reh'g*, 446 F.2d 907 (5th Cir. 1971) (en banc) (per curiam), *rev'd on other grounds sub nom. M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972). Because the four elements in *Unterweser* are disjunctive, if any of the elements is present, an antisuit injunction may be granted. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006).

If the Court finds one or more of the *Unterweser* factors applies, the Court then must "balance domestic judicial interests against concerns of international comity." *Karaha*, 335 F.3d at 366. With respect to "domestic judicial interests," the Fifth Circuit looks to the need to "'protect the court's jurisdiction'" and to "'prevent vexatious or oppressive litigation.'" *Id.* (quoting *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277 (5th Cir. 2002); *Kaepa*, 76 F.3d at 627). As for international comity, the Fifth Circuit has noted that "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns," *Karaha*, 335 F.3d at 366( rejecting the approach taken by some other circuits that "elevates principles of international comity to the virtual exclusion of essentially all other considerations."). *Kaepa*, 76 F.3d at 627. This reflects the fact that the Fifth Circuit tends to be more proactive in granting antisuit injunctions than other courts. *See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 17 (1st Cir. 2004).

IV.     **ARGUMENT**

A.      **PanOptis meets at least two of the *Unterweser* factors.**

1.      **Permitting Huawei to carry out its Chinese litigation threatens the Court's jurisdiction to decide this matter.**

The first *Unterweser* factor is whether the foreign litigation would "frustrate a policy of the forum issuing the injunction." 76 F.3d at 627 n.9 (citing *Unterweser*, 428 F.2d at 890). "[W]hen the action of a litigant in another forum threatens to paralyze the jurisdiction of the court, the court may consider the effectiveness and propriety of issuing an injunction against the litigant's participation in the foreign proceedings." *Laker Airways*, 731 F.2d at 927 (D.C. Cir. 1984). And while courts may tolerate some parallel proceedings in foreign courts, "if a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) (citing *Laker*, 731 F.2d at 917-21). This could occur, for example, if a foreign court's judgment had the effect of enjoining proceedings in the United States, *China Trade*, 837 F.2d at 36, which is exactly what Huawei's Chinese litigation threatens here.

If Huawei obtains its requested injunction against PanOptis' proceeding in this matter, it would undermine this Court's jurisdiction to decide the core issues in this first-filed case. PanOptis would be forced to choose between risking a finding of contempt by the Chinese court or moving this Court to dismiss its infringement action, thus depriving this Court of jurisdiction to decide the infringement, damages, and FRAND compliance questions both parties have raised in their pleadings. Like the foreign suit in *Laker*, "the sole purpose of the [Chinese] proceeding is to *terminate* the American action." 731 F.2d at 930. This also sets up the sort of "race to

judgment" that multiple courts have warned could arise when a foreign court and an American court compete for jurisdiction over the same dispute. *Infra* Part IV.B.

**2.     Huawei's Chinese litigation is vexatious and oppressive.**

The second *Unterweser* factor justifying an injunction is whether the foreign litigation is vexatious or oppressive. 428 F.2d at 896. In determining whether a foreign suit is "vexatious or oppressive," the Fifth Circuit looks to three interrelated factors: "(1) 'inequitable hardship' resulting from the foreign suit; (2) the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'; and (3) the extent to which the foreign suit is duplicitous of the litigation in the United States." *Karaha*, 335 F.3d at 366 (quoting *MacPhail*, 302 F.3d at 277 and *Kaepa*, 76 F.3d at 627). In other words, courts should consider whether "prosecution of the foreign action would entail 'an absurd duplication of effort' and would result in unwarranted inconvenience, expense and vexation." *Kaepa*, 76 F.3d at 627 (upholding antisuit injunction where "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship' and 'tend to frustrate and delay the speedy and efficient determination of the cause'" (citations omitted)).

**a.     PanOptis will suffer inequitable hardship from Huawei's Chinese litigation.**

The basis of Huawei's Chinese suits is that PanOptis violated its contractual FRAND commitment because the royalty rates it has offered to Huawei are allegedly too high. That is the identical factual basis for Huawei's affirmative defense of breach of FRAND in this case, as well as PanOptis' request for a declaratory judgment of FRAND compliance. A review of the 1673 Complaint from paragraphs 8 to 10.8, which sets for the factual basis for the allegations, reveals that the gravamen of the Chinese action is that PanOptis' offered royalty rates exceed FRAND. *See* Clark Decl., Ex. A [1673 Complaint] at 7-16.

8

The same FRAND rate adjudication that Huawei seeks in China is already pending in this Court via two avenues: Huawei's breach of FRAND affirmative defense and PanOptis' request for declaratory judgment. Even though Huawei, in its Chinese action, asserts an antitrust claim, that claim is based on the predicate of an alleged FRAND licensing violation and nothing more. Clark Decl., ¶ 11, Ex. A. As such, the factual allegations in the Chinese case are merely cumulative of the issues already before this Court, and that litigation is thus vexatious and oppressive. *E.g.*, *Home Healthcare*, 2003 WL 22244382, at *3 ("Counsel for Plaintiffs represent to this court that '[a]ll of the issues raised by North American Indemnity in the actions filed in Brussels, Belgium duplicate and are directly related to the case pending before this Court.' As such, when considering all of the circumstances, the court is of the opinion that the proceedings in Belgium constitute vexatious and/or oppressive litigation.").

A key risk with duplicitous litigation like Huawei's is the potential for inconsistent judgments. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1100 (W.D. Wash. 2012), *aff'd*, 696 F.3d 872 (9th Cir. 2012) ("First, as the issue of injunctive relief is before both this court and the court in Germany, this court has concerns against inconsistent judgments."). Inconsistent FRAND determinations in this dispute, for example, could result in separate royalty rate determinations, frustrating PanOptis' ability to enforce its rights against Huawei and obtain the royalties to which it is entitled.

Huawei will suffer no hardship from an antisuit injunction. The injunctive relief PanOptis seeks here is targeted. PanOptis asks the Court to enjoin the Chinese litigation only to the extent that it (1) interferes with this Court's jurisdiction (*e.g.*, by enjoining PanOptis from pursuing its claims in this Court); and (2) adjudicates matters that can be (and should be) decided here in this first-filed case. *Infra* Part III.D. Thus, unlike the recent *Apple v. Qualcomm* opinion from the

Southern District of California, in which Qualcomm's requested antisuit injunction was denied in part for being overly broad,[5] PanOptis here seeks no more relief than is necessary to protect this Court's jurisdiction.

### b. Huawei's Chinese litigation will frustrate and delay the speedy and efficient determination of this case.

If permitted to proceed, Huawei's Chinese litigation will "frustrate and delay the speedy and efficient determination of" the issues in this first-filed case. *Kaepa*, 76 F.3d at 627. If the Chinese court enjoins PanOptis from proceeding, it will certainly frustrate the determination of the issues in this case. But even parallel litigation will frustrate this case, as PanOptis will be forced to simultaneously defend Huawei's claims in China and prosecute its claims here based on exactly the same factual basis. This will set up the type of race to judgment that the Fifth Circuit and multiple other circuit courts have found untenable, further justifying an antisuit injunction to prevent delay and inefficient litigation of issues pending before the court. *See Kaepa*, 76 F.3d at 627 nn.9-10 (citing *Unterweser*, 428 F.2d at 890, 896; *Bethell v. Peace*, 441 F.2d 495, 498 (5th Cir. 1971);  *Gau Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1353 (6th Cir. 1992); *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855-56 (9th Cir. 1981)).

### c. Huawei's Chinese cases are duplicitous of this case.

As discussed at sections II.A and II.B above, the issues raised in the Chinese cases concern PanOptis' alleged breach of its contractual FRAND obligations, which is precisely the

---

[5] *See Apple Inc. v. Qualcomm Inc.*, 2017 WL 3966944, at *5 (S.D. Cal. Sept. 7, 2017) ("The motion seeks to enjoin Apple from pursuing all of the claims in all of the foreign actions and from filing any other foreign action during the pendency of the U.S. action."). Moreover, unlike here, there is nothing in the record in *Apple* indicating that Apple was seeking to enjoin the first-filed U.S. action through a foreign lawsuit.

issue pending before this Court. Accordingly, Huawei's Chinese actions are merely duplicitous of this case.

### B.    Domestic judicial interests weigh in favor of an injunction.

After determining that one or more of the *Unterweser* factors applies, this Court must "balance domestic judicial interests against concerns of international comity." *Karaha*, 335 F.3d at 366. The domestic judicial interests in this scenario weigh heavily in favor of an antisuit injunction because this case is the first filed and will adjudicate the factual predicates asserted in Huawei's Chinese litigation. *See Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1100 (W.D. Wash.), aff'd, 696 F.3d 872 (9th Cir. 2012) (granting a motion for an antisuit injunction where "the timing of the filing of the [second action] raises concerns of forum shopping and duplicative and vexatious litigation.").

PanOptis' Third Amended Complaint, the live pleading in this case, seeks (1) a finding of infringement of seven patents owned by PanOptis, (2) damages to compensate for the infringement, (3) a compulsory forward-looking royalty, and (4) a declaration that PanOptis complied with its FRAND obligation vis-à-vis its offers to Huawei for a worldwide license to PanOptis' standard essential patents. Dkt. No. 31 at 40-41.

Conflictingly, Huawei requests in the "Prayer for Relief" for the 1673 Chinese case:

> Entry of judgment declaring that the licensing terms of the essential patents declared to comply with the 2G, 3G and 4G standards or technical protocols or essential patents relating to the 2G, 3G and 4G standards or technical protocols owned by [PanOptis] and to which [PanOptis has] the right to license to others violate the fair, reasonable and non-discriminatory principle….

Clark Decl., Ex. A [Docket 1673] at 2.

The domestic judicial interests are thus heightened in this case because of two factors. First, Huawei itself raised breach of FRAND as a factual predicate for six of its affirmative defenses in this case: patent misuse, actual or implied license, unclean hands, estoppel, breach of

contract, and unenforceability. Dkt. No. 39 at 31-32. Second, Huawei has voluntarily invoked the jurisdiction of this Court to make a FRAND determination as to its patent portfolio in another matter pending adverse to T-Mobile, Ericsson, and Nokia. *Huawei Technologies v. T-Mobile US, Inc., et al.*, Case No. 2:16-cv-715, Dkt. No. 1, ¶¶ 81-86. This court has a judicial interest in making sure that Huawei does not take inconsistent positions regarding FRAND when it is the plaintiff as opposed to when it is the defendant, which can be accomplished by making sure this case proceeds to final judgment without interference from a Chinese court. Similar to this case, the Fifth Circuit in *Kaepa*, upholding the district court's antisuit injunction, noted, among other things, that the defendant had consented to jurisdiction in Texas, had brought claims of its own in Texas, proceeded with the Texas litigation, then subsequently filed suit in Japan asserting substantively similar claims. 76 F.3d at 627-28.

### C. Potential international comity concerns do not conflict with the domestic judicial interests addressed above for this first-filed action.

The doctrine of comity counsels "international cooperation." *Karaha*, 335 F.3d at 371. Here, international cooperation counsels that Huawei not be allowed to use the Chinese actions to interfere in any way with this first-filed action. Thus, international comity does not counsel against granting the antisuit relief sought by this motion. This is particularly so under Fifth Circuit law. The Fifth Circuit has cautioned that, unlike other circuits' approaches, "notions of comity do not wholly dominate our analysis." *Karaha*, 335 F.3d at 366.

Moreover, the Fifth Circuit has recognized that international comity is less applicable to disputes between private parties as at issue here, as private disputes do not implicate concerns regarding foreign sovereignty in the same way "public international issues" do. *See Kaepa*, 76 F.3d at 627 (stating that no public international issue was implicated by the case as it was a contractual dispute between two private parties). Specifically, the FRAND dispute between the

parties here is a breach-of-contract issue, as the FRAND commitment is a contract between PanOptis and ETSI (the standard-setting organization) to which Huawei claims to be a third-party beneficiary. And the relief requested by PanOptis is simply to prevent the Chinese court, in second-filed actions, from interfering with this first-filed suit.

### D.    PanOptis satisfies the prerequisites for a preliminary injunction.

To the extent it is necessary to establish them, PanOptis satisfies the four prerequisites required for all preliminary injunctions, *i.e.*,

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Karaha*, 335 F.3d at 363 (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). In *Karaha*, the court made clear that, with respect to the first requirement—substantial likelihood of success—the proper inquiry was "whether [the movant] has demonstrated that the factors specific to an antisuit injunction weigh in favor of granting that injunction here." 335 F.3d at 364 n.19. For all of the reasons stated above, PanOptis has demonstrated that the factors specific to an antisuit injunction weigh in favor of grating the injunction here. *See, e.g.*, *Portimex*, 373 F. Supp. at 652-53; *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006).

PanOptis also satisfies the other prerequisites. If Huawei succeeds in undermining the Court's jurisdiction with its Chinese litigation, PanOptis will be irreparably injured by being deprived of its right to pursue its previously-filed claim in the United States. This threat outweighs any possible harm that Huawei may allege it would suffer if the Court issues the antisuit injunction. Finally, an antisuit injunction will not disserve the public interest—quite the opposite. The injunction will preserve the Court's jurisdiction to decide a first-filed case and address all issues raised in that case without interference from a foreign tribunal. The injunction

will also further "court policies against avoiding inconsistent judgments, forum shopping and engaging in duplicative and vexatious litigation." *Kaepa*, 871 F. Supp. 2d at 1100. Accordingly, the public interest will be served by issuing the requested injunction.

**E.     The Court should enjoin Huawei from (1) seeking relief in China that would interfere with this Court's jurisdiction, and (2) pursuing any claims in China that overlap with the defenses or claims in this case.**

The Court's injunction should restrain Huawei in two ways. *First*, the Court should enjoin Huawei from seeking an injunction from the Chinese court in any pending or future matters in China against PanOptis' prosecution of this case. This will ensure that Huawei's Chinese litigation will not interfere with the Court's jurisdiction to decide the issues in this first-filed case. *Second*, Huawei should be enjoined from pursuing any adjudication of claims in its pending Chinese cases, or any future cases, that are already pending before this Court or could lead to conflicting rulings. This would include claims that are premised upon PanOptis' compliance with FRAND. This will ensure that unnecessarily duplicative litigation will not take place in China, and it will prevent the possibility of inconsistent judgments issued by the two Courts.[6]

**V.     EXPEDITED BRIEFING SCHEDULE**

In view of the urgent nature of the foregoing, PanOptis respectfully requests that the Court enter the following expedited briefing schedule: Defendants shall file a response to

---

[6] A bond is not necessary to secure the Court's injunction. As the Fifth Circuit recognized in *City of Atlanta v. Metropolitan Atlanta Rapid Transit Authority*, "the amount of security required by the rule is within the discretion of the trial court. Thus, the court may elect to require no security at all." 636 F.2d 1084, 1095 (5th Cir. 1981). Huawei will suffer no harm here as a result of the Court's antisuit injunction because Huawei is still free to obtain a FRAND adjudication in this forum.

Plaintiffs' motion by 5 p.m. October 6, 2017; Plaintiffs shall file a reply by noon October 11, 2017; and Defendants shall file a sur-reply by 5 p.m. October 13, 2017.

## VI.     CONCLUSION

PanOptis respectfully requests this Court to enter an injunction preventing Huawei from (1) seeking relief in its Chinese litigation that would interfere in any way with this Court's jurisdiction over PanOptis' first-filed claim, and (2) pursuing adjudication of any claims or issues in the Chinese litigation that are pending in this case.


Dated: September 28, 2017                    Respectfully submitted,

                                             /s/ Kevin L. Burgess

                                             Kevin L. Burgess – Lead Counsel
                                             Texas State Bar No. 24006927
                                             kburgess@McKoolSmith.com
                                             Steve J. Pollinger
                                             Texas State Bar No. 24011919
                                             spollinger@McKoolSmith.com
                                             Scott L. Cole
                                             Texas State Bar No. 00790481
                                             scole@McKoolSmith.com
                                             Kevin P. Hess
                                             Texas State Bar No. 24087717
                                             khess@McKoolSmith.com
                                             Christine M. Woodin
                                             Texas State Bar No. 24100051
                                             cwoodin@McKoolSmith.com
                                             **MCKOOL SMITH, P.C.**
                                             300 W. 6th Street, Suite 1700
                                             Austin, TX 78701
                                             Telephone: (512) 692-8700
                                             Telecopier: (512) 692-8744

                                             Theodore Stevenson, III
                                             Texas State Bar No. 19196650

tstevenson@mckoolsmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
Jonathan Powers
Texas State Bar No. 24098277
jpowers@mckoolsmith.com
Marcus L. Rabinowitz
Texas State Bar No. 24098293
mrabinowitz@McKoolSmith.com
**MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
**MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Eric S. Tautfest
Texas Bar No. 24028534
etautfest@grayreed.com
Jared Hoggan
Texas Bar No. 24065435
jhoggan@grayreed.com
David T. DeZern
Texas Bar No. 24059677
ddezern@grayreed.com
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
**GRAY REED & MCGRAW, LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY,
LLC, PANOPTIS PATENT
MANAGEMENT, LLC, AND OPTIS
CELLULAR TECHNOLOGY, LLC**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7, I certify that on September 27, 2017, I spoke with Thomas Garten, counsel for Defendants, in an attempt to resolve the issues raised by this motion. I specifically outlined for Mr. Garten the relief that PanOptis seeks and explained the urgent nature of PanOptis' motion. Mr. Garten told me that he would confer with Huawei concerning the issues raised by this motion and the relief PanOptis seeks. As of the filing of this motion, I have not heard back from Mr. Garten on this matter.

/s/ Steven J. Polinger
Steven J. Polinger

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on September 28, 2017.

/s/  Kevin L. Burgess
Kevin L. Burgess