**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECH., LLC, ET AL.,** | |
|     **Plaintiffs,** | **Civil Action No. 2:17-cv-123 JRG-RSP** |
|     **v.** | **Jury Trial Requested** |
| **HUAWEI TECHS. CO. LTD., ET AL.,** | |
|     **Defendants.** | |

**HUAWEI'S MOTION FOR DISMISSAL OF COUNT IX OF THE COMPLAINT**
**(FRAND) TO THE EXTENT IT RELATES TO NON-U.S. PATENTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................................ii

TABLE OF EXHIBITS....................................................................................................................v

I.      INTRODUCTION..............................................................................................................1

II.     STATEMENT OF FACTS.................................................................................................1

III.    LEGAL STANDARD.........................................................................................................2

IV.     ARGUMENT: DECLARATORY RELIEF FOR FRAND TERMS ON
        NON-U.S. PATENTS LIES OUTSIDE THE SUBJECT MATTER
        JURISDICTION OF THE COURT IN THIS CASE. THE COURT
        SHOULD DISMISS COUNT IX OR LIMIT COUNT IX SO THAT IT
        APPLIES ONLY TO U.S. PATENTS..................................................................................3

        A.      Federal Question Jurisdiction Under 28 U.S.C. §§ 1331 and 1338 Does
                Not Exist as to Non-U.S. Patents.........................................................................3

        B.      Diversity Jurisdiction Under 28 U.S.C. § 1332 Is Absent Here..............................5

        C.      The Court Should Decline to Exercise Supplemental Jurisdiction
                Under 28 U.S.C. § 1367 Over Count IX as to Non-U.S. Patents. ..........................6

                1.      Under 28 U.S.C. § 1367(a), License Terms for Non-U.S. Patents
                        Are Not So Related to the U.S. Federal Patent Law Claims in
                        this Action Such that They Form Part of the Same Case or
                        Controversy.............................................................................................7

                2.      Under 28 U.S.C. § 1367(c)(1), License Terms for Non-U.S.
                        Patents Raise Novel and Complex Issues of Foreign Law.........................8

                3.      The Court Should Also Decline Jurisdiction Pursuant to 28
                        U.S.C. § 1367(c)(2). ...............................................................................10

                4.      Under 28 U.S.C. § 1367(c)(4), Compelling Reasons Warrant
                        Declining Jurisdiction Over A Declaratory Judgment Claim
                        Regarding FRAND Compliance and Terms for Non-U.S.
                        Patents....................................................................................................10

V.      CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Qualcomm Incorporated*,
  No. 3:17-cv-00108, 2017 WL 3966944 (S.D. Cal. Sept. 7, 2017) ...........................................9

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)...................................................................................................................2

*Bonzel v. Pfizer, Inc.*,
  439 F.3d 1358 (Fed. Cir. 2006)..................................................................................................3

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
  241 F.3d 420 (5th Cir. 2001) .....................................................................................................3

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)..................................................................................................9

*Huawei Technologies, Co., Ltd. v. Samsung Electronics Co, Ltd.*,
  No. 16-cv-02787 .........................................................................................................................6

*Levi Strauss & Co. v. Papikian Enter.*,
  No. C 10-05051 JSW, 2011 WL 3739550 (N.D. Cal. Aug. 24, 2011) ...................................12

*Lickerish, Inc. v. Alpha Media Grp.*,
  2014 WL 12589641 (C.D. Cal. 2014)........................................................................................8

*Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*,
  No. C 11-01036 JSW, 2011 WL 13152817 (N.D. Cal. July 14, 2011) ...................................12

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
  211 F.3d 697 (2d Cir. 2000).......................................................................................................7

*Mars Incorporated v. Nippon Conlux Kabushiki-Kaisha*,
  825 F. Supp. 73 (D. Del. 1993)..................................................................................................8

*Mars Incorporated v. Kabushiki–Kaisha Nippon Conlux*,
  24 F.3d 1368 (Fed. Cir. 1994)....................................................................................................2

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) ...................................................................................................6

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013)..........................................5, 6

*Ortman v. Stanray Corp.*,
371 F.2d 154 (7th Cir. 1967) ...................................................................................8

*Owen Equip. & Erection Co. v. Kroger*,
437 U.S. 365 (1978).................................................................................................2

*Palmer v. Hosp. Auth. of Randolph Cty.*,
22 F.3d 1559 (11th Cir. 1994) .............................................................................7, 8

*PanOptis Patent Management, LLC v. Blackberry Corporation*,
Case No. 2:16-cv-00059-JRG-RSP, Dkt. 110 (E.D. Tex. Feb. 10, 2017) ..............13

*Schwarzkopf Dev. Corp. v. Ti-Coating, Inc.*,
800 F.2d 240 (Fed. Cir. 1986)..................................................................................3

*Stein Associates, Inc. v. Heat & Control, Inc.*,
748 F.2d 653 (Fed. Cir. 1984)..................................................................................8

*TCL Communications Technology Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
Case No. SACV 14-00341 JVS, 2014 WL 12606650 (C.D. Cal. July 28, 2014)............4, 5

*TCL Communications Technology Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
Case No. SACV 14-00341 JVS, 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017)......................4

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966).............................................................................................7, 9

*In re Urethane Antitrust Litigation*,
683 F. Supp. 2d 1214 (D. Kan. 2010)......................................................................8

*Voda v. Cordis Corp.*,
476 F.3d 887 (Fed. Cir. 2007)...................................................................10, 11, 12

**Statutes**

28 U.S.C. § 1331.......................................................................................................3, 4

28 U.S.C. § 1332.......................................................................................................5, 6

28 U.S.C. § 1338.......................................................................................................3, 4

28 U.S.C. § 1367.....................................................................................6, 7, 8, 10, 11

**Court Rules**

Fed. Rule Civ. Proc. 12(b)(1)........................................................................................2

Fed. Rule Civ. Proc. 12(h)(3)........................................................................................2

**Other Authorities**

Claudia Milbradt, *Landmark decisions on FRAND licensing in Germany: What to look out for in negotiations,* BUSINESS LAW MAGAZINE (Mar. 2017), http://www.businesslaw-magazine.com/2017/11/23/landmark-decisions-on-frand-licensing-in-germany-what-to-look-out-for-in-negotiations/...........................................9

WIKIPEDIA, *List of parties to international patent treaties,* https://en.wikipedia.org/wiki/List_of_parties_to_international_patent_treaties ....................11

Takanori Abe, *Japan: IP High Court Rules in Apple v. Samsung FRAND Case,* MANAGING INTELLECTUAL PROPERTY (Sept. 2014) http://www.managingip.com/Article/3375734/Japan-IP-High-Court-rules-in-Apple-v-Samsung-FRAND-case.html .....................................................................................9

*Korea Fair Trade Commission Releases Full Decision and Finding in Qualcomm Case*, THE AM. CONSUMER INST. CTR. FOR CITIZEN RESEARCH (2017), http://www.theamericanconsumer.org/korea-fair-trade-commission-releases-full-decision-finding-qualcomm-case/ .....................................................................9

## TABLE OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Excerpts from the transcript of the October 17, 2017 Motion Hearing before Hon. Roy S. Payne |

## I.     INTRODUCTION

Huawei seeks dismissal of Count IX of PanOptis' Third Amended Complaint (Dkt. 31, "Complaint") to the extent that it encompasses non-U.S. patents, so as to ensure that any decision of this Court does not exceed its subject matter jurisdiction. To the extent Count IX seeks declaratory relief covering non-U.S. patents, it exceeds the scope of the Court's subject matter jurisdiction in this case. Huawei therefore moves to dismiss Count IX, with leave for PanOptis to amend so that any declaratory relief pursuant to Count IX is limited to U.S. patents and does not extend to any patents issued in countries outside the United States, or alternatively for an order that Count IX be limited so that it seeks only a declaration as to U.S. patents.[1]

## II.    STATEMENT OF FACTS

Count IX seeks a "declaratory judgment that [PanOptis] has complied with its obligations arising from declaring its patents essential to various standards, and any applicable laws, during their negotiations with Huawei concerning a worldwide license under the PanOptis standards essential patents." Dkt. 31 ¶ 185. More particularly, at the October 17, 2017 hearing on PanOptis' earlier motion for anti-suit injunction, PanOptis clarified that:

> it couldn't be clearer that in Paragraph 184, we're seeking a declaration of FRAND terms for a worldwide license under PanOptis's entire portfolio of standards essential patents. That's patents in multiple -- many, many countries. And that's what is before the Court. So it isn't just limited to the United States, it's worldwide.

Ex. 1 at 55.

---

[1] As to the merits of Count IX, Huawei believes that PanOptis is entitled to no declaratory relief regardless of geographic scope because PanOptis' damages claim in this case violates its FRAND obligation. Huawei will be prepared argue that issue to the Court at the appropriate time. In its affirmative defenses, Huawei has asserted FRAND as a defense to the U.S. patents in suit; Huawei has not raised FRAND issues with respect to non-U.S. patents.

As it stated at the October 17, 2017 hearing, Huawei understood Count IX to seek a declaration of FRAND compliance and terms only as to the U.S. patents-in-suit. *Id.* at 36-37. At the most, any relief under Count IX should apply only as to U.S. patents. PanOptis itself has sued Huawei in Germany claiming damages for declared standard essential patents there. Dkt. 88-7, ¶¶ 5-6 (Zhang Decl.).  The parties' litigation in China is over the FRAND terms for PanOptis' standard essential Chinese patents, not its U.S. patents.  *Id.* at ¶¶ 10-11; Dkt. 137 (April 24, 2018 Report and Recommendation) at 2 ("Huawei also explained that, just as this action deals with specific United States patents and Huawei's FRAND defenses, the Chinese actions only relate to Chinese patents."). Thus, any declaratory judgment in this Court about FRAND terms of a license to PanOptis' patents would duplicate and potentially conflict with judgments issued by the German and Chinese courts if this Court's judgment covers non-U.S. patents.

## III.    LEGAL STANDARD

"It is a fundamental precept that federal courts are courts of limited jurisdiction," and possess only that power authorized by the United States Constitution and statute. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists." *Mars Incorporated v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1372 (Fed. Cir. 1994) (rejecting original and supplemental jurisdiction over a claim under a Japanese patent).

Under Fed. Rule Civ. Proc. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." "The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

## IV.   ARGUMENT: DECLARATORY RELIEF FOR FRAND TERMS ON NON-U.S. PATENTS LIES OUTSIDE THE SUBJECT MATTER JURISDICTION OF THE COURT IN THIS CASE. THE COURT SHOULD DISMISS COUNT IX OR LIMIT COUNT IX SO THAT IT APPLIES ONLY TO U.S. PATENTS.

### A.   Federal Question Jurisdiction Under 28 U.S.C. §§ 1331 and 1338 Does Not Exist as to Non-U.S. Patents.

This Court should dismiss PanOptis' claim for declaratory judgment as to FRAND terms and compliance as to non-U.S. patents because the Court lacks subject matter jurisdiction to do so in this case. PanOptis' complaint alleges jurisdiction only under 28 U.S.C. § 1331 ("civil actions arising under the Constitution, laws, or treaties of the United States") and § 1338 ("civil action arising under any Act of Congress relating to patents"). Dkt. 31 at ¶ 8. These statutes do not provide district courts with jurisdiction over a FRAND dispute over non-U.S. patents, which do not arise under the laws of the United States or under the U.S. Patent Act.

Although PanOptis argues that this is a "contractual dispute," Dkt. 91 at 1, this is in fact a patent infringement dispute, as PanOptis itself has alleged. Dkt. 31 at ¶ 1 ("This is an action for patent infringement."). If this case involved only a contract claim, this Court would not have jurisdiction over the case under 28 U.S.C. § 1338, as disputes regarding patent licenses do not raise substantial questions of federal patent law. *See Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362-65 (Fed. Cir. 2006) (holding that federal courts do not have jurisdiction under § 1338 over a dispute on a patent license because the dispute did not arise under the patent law); *see Schwarzkopf Dev. Corp. v. Ti-Coating, Inc.*, 800 F.2d 240, 244 (Fed. Cir. 1986) (quoting *Luckett*

3

*v. Delpark, Inc.*, 270 U.S. 496, 502 (1926)) ("It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent is not a suit under the patent laws of the United States, and can not be maintained in a federal court as such.").

The *TCL v. Ericsson* case, which PanOptis cited in support of jurisdiction at the October 17, 2017 hearing, helps show why jurisdiction does not exist in this case. There, a district court in the Central District of California decided that federal question jurisdiction existed under 28 U.S.C. § 1331 and § 1338 for a declaratory judgment claim "that Defendants have not offered their patent licenses on terms that conform to applicable legal requirements, including that they are not at RAND rates." *TCL Communications Technology Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, Case No. SACV 14-00341 JVS (ANx), 2014 WL 12606650 at *4 (C.D. Cal. July 28, 2014). As that court noted, TCL, an implementer of the patent portfolio at issue, "clearly seeks determination of the RAND licensing issue as a defense to a hypothetical well-pleaded complaint filed by the Defendants against TCL for patent infringement," and "the facts suggest a coercive action for TCL's alleged infringement of the Defendants' patents. Indeed, such a patent infringement lawsuit was brought in another judicial district by the Defendants against TCL after TCL had filed this lawsuit." *Id.* at *4 and *5.  The court stated that it "must . . . look to the anticipated cause of action the Defendants would bring. In doing so, the Court finds that . . . jurisdiction exists." *Id.* at *5.  In its jurisdiction decision, the *TCL* court did not discuss whether it had jurisdiction to adjudicate FRAND terms for non-U.S. patents, an issue that it appears neither party raised. The *TCL* court's subsequent decision on FRAND terms for a worldwide portfolio, *TCL v. Ericsson*, 2017 WL 6611635 at *54 (C.D. Cal. Dec. 21, 2017), appears not to have considered the jurisdiction issue further and noted that the "facts requisite to federal

jurisdiction are admitted," thereby providing no additional guidance on the issue raised on the present motion.

This Court should ask the same critical question that the *TCL* court considered in deciding the jurisdictional issue that the parties there did raise: what is the cause of action anticipated by the declaratory judgment claim? In the *TCL* case, the anticipated cause of action was Ericsson's claim for infringement of its U.S. patents, giving rise to federal question jurisdiction for TCL's FRAND cause of action for declaratory relief. In the present case, the only thing that Count IX anticipates is Huawei's defense against the U.S. patents that PanOptis has asserted in this case. Count IX does not anticipate and could not have anticipated a Huawei defense against PanOptis' German or Chinese (or other non-U.S.) patents, because PanOptis could not have sued on those patents in this Court, and in fact did not. Huawei would not have had any occasion to raise defenses against PanOptis' non-U.S. patents in this or any other U.S. court. Seen in light of what Huawei defense it seeks to anticipate, Count IX, to the extent it reaches non-U.S. patents, fails to qualify for federal question jurisdiction.

**B.     Diversity Jurisdiction Under 28 U.S.C. § 1332 Is Absent Here.**

This Court also lacks jurisdiction under 28 U.S.C. § 1332. Under that section, district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and is between "citizens of different States." For purposes of section 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Here, diversity jurisdiction does not exist because both PanOptis and Huawei Device USA, Inc. reside in Texas. Dkt. 31 at ¶¶ 2-10.

For this reason, PanOptis' reliance upon *Microsoft Corp. v. Motorola, Inc.*, Dkt. 91 at 5, fn. 3, to argue jurisdiction over a FRAND declaratory judgment claim as to non-U.S. patents is

misplaced. In that case, Microsoft claimed that Motorola had an obligation to license patents to

Microsoft, and that Motorola breached its FRAND obligations through two offer letters.

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2013 WL 2111217, at *1 (W.D. Wash. Apr.

25, 2013). Subject matter jurisdiction over the FRAND claim in that case was pursuant to 28

U.S.C. § 1332. *Id.* at *5 ("The court has subject matter jurisdiction over this dispute pursuant to

28 U.S.C. § 1332 because this is an action between citizens of different states and because the

amount in controversy exceeds $75,000.00."). That case is therefore inapposite here. Unlike the

case here, both parties in the *Microsoft* case were U.S. companies that consented to have a

license rate for the German patents adjudicated by the district court. *See* Dkt. 88 at 6, fn. 4; *see*

*also Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1038 (9th Cir. 2015).[2]

### C. The Court Should Decline to Exercise Supplemental Jurisdiction Under 28 U.S.C. § 1367 Over Count IX as to Non-U.S. Patents.

If diversity jurisdiction is lacking, as it is here, and the case involves State law claims that

are not independently subject to federal jurisdiction, a district court may exercise supplemental

jurisdiction over those claims only if they "are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution." 28 U.S.C. § 1367(a).

Even if a State law claim does form part of the same case or controversy, a district court

may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or

---

[2] Diversity jurisdiction is also a jurisdictional basis in *Huawei v. Samsung*, No. 16-cv-02787, in the Northern District of California, where both parties have asserted FRAND claims. Although Huawei initially asked the court there to set worldwide portfolio terms on the basis that both parties had claimed to be willing to offer and to accept a cross-license on such terms, in light of Samsung's opposition to a worldwide rate-setting, Huawei has since clarified that it seeks only a declaration of the FRAND terms for a cross-license to the parties' U.S. 3G and 4G standard essential patents.

complex issue of State law, (2) the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction, (3) the district court has dismissed all

claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other

compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Here, PanOptis has not alleged supplemental jurisdiction under 28 U.S.C. § 1367. For the

reasons set forth below, this Court should not *sua sponte* exercise supplemental jurisdiction over

Count IX with regard to the non-U.S. patents.

### 1. Under 28 U.S.C. § 1367(a), License Terms for Non-U.S. Patents Are Not So Related to the U.S. Federal Patent Law Claims in this Action Such that They Form Part of the Same Case or Controversy.

To satisfy the relatedness requirement of 28 U.S.C. § 1367(a), "[t]he state and federal

claims must derive from a common nucleus of operative fact . . . such that [it] would ordinarily

be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 725 (1966). Generally, claims arise out of a common nucleus of operative fact

when they "involve the same witnesses, presentation of the same evidence, and determination of

the same, or very similar, facts." *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64

(11th Cir. 1994); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d

Cir. 2000) (a sufficient relationship will be found if "the facts underlying the federal and state

claims substantially overlap[] . . . or where presentation of the federal claim necessarily b[rings]

the facts underlying the state claim before the court").

Here, no common nucleus of operative fact exists between the non-U.S. patent FRAND

claim and the U.S. patent claims asserted in this case. Whether license terms for non-U.S. patents

meet FRAND obligations involves a determination as to whether the royalty offered comports

with the issuing country's standards for setting royalties, while the patent infringement claims

relate generally to whether the accused products satisfy the limitations of the asserted patents.

These two issues would require different witnesses, presentation of different evidence, and, ultimately, a determination of very different facts. *Contra Palmer*, 22 F.3d at 1563–64. Where two different country's patent laws are at issue, the issues are *not* the same. *Stein Associates, Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984) (U.S. district court had no discretionary power to enjoin enforcement of British patents before a British tribunal; "the issues are not the same, one action involving United States patents and the other involving British patents"). Consequently, the "common nucleus" fails as to Count IX with respect to non-U.S. patents.

### 2. Under 28 U.S.C. § 1367(c)(1), License Terms for Non-U.S. Patents Raise Novel and Complex Issues of Foreign Law.

Even if supplemental jurisdiction could be found under section 1367(a) (which it cannot, as discussed above), a district court may still decline to exercise supplemental jurisdiction over a claim for reasons listed in section 1367(c). The Court should decline such jurisdiction for those reasons too.

One of those reasons is that "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Courts have invoked this provision to decline jurisdiction for claims involving novel or complex laws of a foreign country.[3] This case poses a novel or complex issue

---

[3] *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73, 75-76 (D. Del. 1993), *aff'd sub nom. Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994) ("[the claim] does raise novel and complex issues of Japanese law . . . . [T]he Court anticipates disagreements among the parties as to the substance of Japanese patent law. As the principles embodied in subsection (c)(1) are implicated by complex issues of foreign as well as state law, subsection (c)(1) suggests that the Court should decline to exercise jurisdiction over Mars' Japanese patent claim"); *In re Urethane Antitrust Litigation*, 683 F. Supp. 2d 1214, 1221 (D. Kan. 2010) (declining to exercise supplemental jurisdiction under § 1367(c)(1) after concluding that "litigation of the European law claims in this case would raise novel and complex issues of European law"); *Lickerish, Inc. v. Alpha Media Grp.*, 2014 WL 12589641 at *6 n.7 (C.D. Cal. 2014)("Although not binding, this Court finds persuasive other circuit courts' application of Section 1367(c)(1) to foreign law."); *Ortman v. Stanray Corp.*, 371 F.2d 154, 158 (7th Cir.

of foreign law because whether FRAND obligations have been met as to the non-U.S. patents ultimately requires a determination as to whether the royalty rate offered meets the FRAND obligation as defined by the various relevant foreign jurisdictions.

In the United States, courts have recognized that U.S. damages law principles are relevant to the determination of FRAND royalties for FRAND-encumbered U.S. patents. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014) ("As with all patents, the royalty rate for [standard essential patents] must be apportioned to the value of the patented invention."). However, the same principles of U.S. law on patent royalties may not apply to the German, Chinese and other non-U.S. patents that Count IX, as characterized by PanOptis, seeks to encompass. As the court observed in *Apple Inc. v. Qualcomm Incorporated*, No. 3:17-cv-00108, 2017 WL 3966944 (S.D. Cal. September 7, 2017), a FRAND adjudication in a U.S. court could not dispose of the FRAND royalty claims brought under the laws of various non-U.S. jurisdictions. *Id.* at *11. Courts and agencies in other countries may and do apply their own differing laws governing FRAND compliance and royalty rate determinations.[4]

---

1967)("In the case at bar, the alleged infringement of foreign patents does not involve state law, but the same reasoning as in *Gibbs* would seem to apply in determining the existence of federal court jurisdiction." (discussing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966))).

[4] See, e.g., Dkt. 88-2 at ¶ 4 and 88-5 and 88-6 (Wang Decl., and exhibits; Chinese court decisions on FRAND in Huawei Chinese litigation against InterDigital, applying Chinese law); Claudia Milbradt, *Landmark decisions on FRAND licensing in Germany: What to look out for in negotiations*, BUSINESS LAW MAGAZINE (Mar. 2017), http://www.businesslaw-magazine.com/2017/11/23/landmark-decisions-on-frand-licensing-in-germany-what-to-look-out-for-in-negotiations/ ("outlin[ing] the steps necessary to remain FRAND compliant under German Law"); Takanori Abe, *Japan: IP High Court Rules in Apple v. Samsung FRAND Case*, MANAGING INTELLECTUAL PROPERTY (Sept. 2014), http://www.managingip.com/Article/3375734/Japan-IP-High-Court-rules-in-Apple-v-Samsung-FRAND-case.html (setting FRAND royalty); *Korea Fair Trade Commission Releases Full Decision and Finding in Qualcomm Case*, THE AM. CONSUMER INST. CTR. FOR CITIZEN RESEARCH (2017), http://www.theamericanconsumer.org/korea-fair-trade-commission-releases-full-decision-finding-qualcomm-case/ (applying Korean Monopoly Regulation and Fair Trade Act to fine U.S. company for FRAND violation).

For this Court to adjudicate FRAND terms as to non-U.S. patents would not be a good expenditure of judicial resources in this case. In the German case, PanOptis has caused the German court to begin an accounting process that is a prelude to the collection of damages. Huawei's sales in Germany and China vastly exceed its sales in the United States; sixty percent of Huawei's sales are in China. Dkt. 88-7 at ¶ 10. The courts of Germany and China may not agree with or enforce the decision of a U.S. court as to what FRAND royalties should be for patents in those countries, and any work done by this Court on FRAND terms for the patents of those and other foreign countries could therefore be wasted. FRAND determinations are novel and complex enough issues under U.S. law. They are also novel and complex under the laws of other countries. Section 1367(c)(1) counsels against taking jurisdiction to adjudicate all those disputes.

### 3.  The Court Should Also Decline Jurisdiction Pursuant to 28 U.S.C. § 1367(c)(2).

The number of foreign countries implicated in PanOptis' reading of Count IX, coupled with the predominant distribution of Huawei's sales outside the U.S., also warrants declining jurisdiction pursuant to Section 1367(c)(2), since the claims as to non-U.S. patents would "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." *See Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007) (discussing judicial economy).

### 4.  Under 28 U.S.C. § 1367(c)(4), Compelling Reasons Warrant Declining Jurisdiction Over A Declaratory Judgment Claim Regarding FRAND Compliance and Terms for Non-U.S. Patents.

#### a)  International Comity and U.S. Treaty Obligations Warrant Declining Jurisdiction Over PanOptis' Non-U.S. Patents, Given the Pending German and Chinese Litigations.

In *Voda v. Cordis Corp.*, the Federal Circuit found that "comity and the principle of avoiding unreasonable interference with the authority of other sovereigns dictate in this case that the district court decline the exercise supplemental jurisdiction under § 1367(c)." 476 F.3d 887, 903 (Fed. Cir. 2007). The *Voda* court stated that the Paris Convention for the Protection of Industrial Property "clearly expresses the independence of each country's sovereign patent systems and their systems for adjudicating those patents. Nothing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another . . . ." *Id.* at 899. Further, the *Voda* court noted, the Patent Cooperation Treaty ("PCT") "maintains the independence of each country's patents," and neither the PCT nor the World Trade Organization's Agreement on Trade–Related Aspects of Intellectual Property Rights ("TRIPS") "contemplates or allows one jurisdiction to adjudicate patents of another." *Id.* The United States, Germany and China are all signatories to the Paris Convention, the PCT and the TRIPS Agreement, as are many other countries around the world. See

https://en.wikipedia.org/wiki/List_of_parties_to_international_patent_treaties.

PanOptis is pursuing litigation against Huawei in Germany seeking royalties under German law for alleged infringement of a PanOptis standard essential German patent, and Huawei has filed suit in China seeking a determination under Chinese law of the FRAND royalty terms for PanOptis' standard essential Chinese patents. Dkt. 88-7, ¶¶ 5-6 and 10-11 (Zhang Decl.). For a U.S. court to adjudicate rights, including royalty terms, for PanOptis' German and Chinese patents, in the absence of any agreement for it to do so, would create a potential conflict with the German and Chinese legal systems and violate the treaties providing that each country's patents are to be adjudicated under the courts of that country. *Voda* therefore counsels strongly

that allowing Count IX to apply to non-U.S. patents would exceed the permissible bounds of the Court's discretion.

District courts have applied the principles set forth in *Voda* to decline the exercise of supplemental jurisdiction over foreign patent claims. *See, e.g.*, *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*, No. C 11-01036 JSW, 2011 WL 13152817, at *4 (N.D. Cal. July 14, 2011) (finding that exercising supplemental jurisdiction over foreign patent claims "could undermine the obligations of the United States under international treaties such as the Paris Convention for the Protection of Industrial Property, the Patent Cooperation Treaty, and the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPS"), which uphold the independence of each country's system for adjudicating patent rights."); *Levi Strauss & Co. v. Papikian Enter.*, No. C 10-05051 JSW, 2011 WL 3739550, at *12-13 (N.D. Cal. Aug. 24, 2011) (finding that exercising jurisdiction over foreign patent claims "could prejudice the rights of foreign governments and undermine the 'spirit of cooperation' that forms the basis of the comity doctrine."). This Court should similarly decline to exercise supplemental jurisdiction over license terms for non-U.S. patents.

> **b)** **The ETSI Contract Terms That Count IX Incorporates Specifically Contemplate That The Respective National Courts Should Resolve Intellectual Property Rights Disputes Arising Under Their Countries' Respective Laws.**

The FRAND obligation here arises out of PanOptis' representations to the European Telecommunications Standards Institute ("ETSI"), a standard setting organization that produces globally-accepted standards for the telecommunication industry. ETSI has developed and promulgated an Intellectual Property Rights Policy ("IPR Policy") (found at Annex 6 to the ESTI Rules of Procedure, published November 19, 2014). The ETSI policy contemplates that "the national courts of law have the sole authority to resolve IPR disputes." Dkt. 88-14 at p. 16 of 23

12

(Section 4.3 of the ETSI Guide on IPRs). By using the plural phrase "national courts of law," the ETSI policy suggests that multiple different national courts will resolve disputes over the FRAND obligation arising out of the ETSI commitment. This express provision of the very agreement giving rise to the FRAND obligation further justifies limiting Count IX in this U.S. lawsuit to the declaration of FRAND compliance and terms as to U.S. patents only.[5]

## V.    CONCLUSION

For the reasons stated above, Count IX of PanOptis' Third Amended Complaint exceeds the Court's subject matter jurisdiction by seeking declaratory judgment as to patents outside the United States. As the Court has already noted in discussing the FRAND claims in the parties' Chinese litigation, ". . . although there may be similar factual disputes about PanOptis's global offer, and whether that offer complied with its FRAND obligations, the scope of any relief awarded by this court or the Chinese court extends only as far as jurisdiction allows." Dkt. 137 at 2. Accordingly, Huawei respectfully requests that the Court dismiss and give leave to amend Count IX so that any declaratory relief pursuant to Count IX is properly limited to United States patents and does not extend to any patents issued in countries outside the United States, or alternatively, order that Count IX is so limited.

---

[5] In *PanOptis v. Blackberry*, Case No. 2:16-cv-00059-JRG-RSP, Dkt. 110 at 11-12 (E.D. Texas Feb. 10, 2017), the Court denied a motion to dismiss for lack of case or controversy a FRAND declaratory relief claim relating to a worldwide license negotiation, but the Court there was not asked to consider and did not discuss the issue of subject matter jurisdiction over non-U.S. patents.

Dated: May 14, 2018

By: */s/ Robert T. Haslam*
Robert T. Haslam (rhaslam@cov.com)
  *Lead Attorney*
Stanley Young (syoung@cov.com)
Anupam Sharma (asharma@cov.com)
Thomas E. Garten (tgarten@cov.com)
James Hovard (jhovard@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Gregory S. Nieberg (gneiberg@cov.com)
Heng Gong (hgong@cov.com)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

Paul J. Wilson (pwilson@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Michael C. Smith
(michaelsmith@siebman.com)
Texas Bar No. 18650410
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin Street
Marshall, TX 75670
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

*Attorneys for Defendants*
**HUAWEI DEVICE USA INC. AND
HUAWEI DEVICE CO., LTD.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of the foregoing document via the

Court's CM/ECF system per Local Rule CV-5(a)(3) this 14th day of May, 2018.


*/s/ Robert T. Haslam*