# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

OPTIS WIRELESS TECH., LLC, ET AL.,

      Plaintiffs,

      v.

HUAWEI TECHS. CO. LTD. ET AL.,

      Defendants.

Civil Action No.  2:17-cv-123-JRG-RSP

<u>FILED UNDER SEAL</u>

**JURY TRIAL REQUESTED**

---

**PANOPTIS' MOTION FOR SUMMARY JUDGMENT ON PANOPTIS' FRAND
DECLARATORY JUDGMENT CLAIM (COUNT IX) AND HUAWEI'S FIFTH, SIXTH,
<u>SEVENTH, EIGHTH, NINTH, AND TENTH AFFIRMATIVE DEFENSES ON FRAND</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF THE ISSUE TO BE DECIDED.............................................4

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................4

    A. The FRAND Dispute Between PanOptis and Huawei. .............................4

        1. PanOptis' Initial Global FRAND Offer..........................................4

        2. PanOptis Files This Lawsuit Against Huawei For Patent
           Infringement and a Declaration It Complied With FRAND.......................5

        3. Huawei Proposes to Use Ericsson's LTE Rate as a Proxy For the
           FRAND Rate Huawei Owes PanOptis. ..........................................5

        4. The U.K. Court Determines a FRAND Rate For PanOptis
           Subsidiary in Litigation With Huawei. ..........................................7

        5. Huawei Files Cases in China, Asserting Claims That Mirror
           PanOptis' Declaratory Judgment Claim Here..............................9

        6. PanOptis Revises Its Global FRAND Offer to Huawei in Light of
           the U.K. Court Ruling.....................................................................10

    B. PanOptis Introduces Undisputed Evidence Into the Record That PanOptis'
       Global Offers Comply With Its FRAND Commitment........................11

        1. PanOptis Has Proven the Number of Actually Standard Essential
           Patent Families at Issue Here.......................................................11

        2. PanOptis Has Offered Unrebutted Expert Testimony Showing That
           Its Global Offers Are FRAND.....................................................12

    C. Huawei Relies on PanOptis' ASEPs and Major Market Rate to Opine on
       Reasonable Royalty Damages.................................................................14

IV. SUMMARY JUDGMENT STANDARD...........................................................15

V. ARGUMENT .....................................................................................................15

    A. Huawei Bears the Burden of Proof on the FRAND Issues Raised in the
       Declaratory Judgment Claim and the Related Affirmative Defenses....................15

    B. Summary Judgment Is Appropriate Because Huawei Alleges Breach of
       FRAND, But Has Adduced No Evidence to Support Its Claim. ..........................16

    C. PanOptis' Declaratory Judgment Claim Does Not Require Adjudicating
       Essentiality, Infringement, Or Validity of Individual Patents. .............................17

VI. CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...........................................................................................15

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) ............................................................................16

*Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*,
754 F.3d 272 (5th Cir. 2014) ............................................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...........................................................................................15

*Crescent Towing & Salvage Co. v. M/V ANAX*,
40 F.3d 741 (5th Cir. 1994) ..............................................................................16

*Geiserman v. MacDonald*,
893 F.2d 787 (5th Cir. 1990) ............................................................................15

*Huawei Techs. Co. Ltd. v. Samsung Elecs. Co., Ltd.*,
No. 16-cv-02787 (N.D. Cal.) ...........................................................2, 3, 18, 19

*Huawei Techs. v. T-Mobile US, Inc.*,
No. 2:16-cv-715 (E.D. Tex.) ............................................................................18

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015) ..........................................................................17

*Nokia Corp. v. Qualcomm, Inc.*,
No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383 (D. Del. 2006) ......................17

*Safeco Ins. v. City of White House*,
191 F.3d 675 (6th Cir. 1999) ............................................................................16

*Singh v. Bajwa*,
No. 3:08-cv-383, 2008 U.S. Dist. LEXIS 63413 (N.D. Tex. Aug. 19, 2008) .........................15

*SynQor, Inc. v. Artesyn Techs., Inc.*,
No. 2:07-cv-497, 2011 WL 3625036 (E.D. Tex. Aug. 17, 2011) ......................16

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*,
No. 8:14-cv-00341 (C.D. Cal.) ...............................................................13, 14, 15

*United Techs. Corp. v. Chrome Alloy Gas Turbine Corp.*,
   105 F. Supp. 2d 346 (D. Del. 2000)..........................................................................17

## I.      INTRODUCTION

PanOptis is entitled to summary judgment in its favor on its claim for declaratory judgment and on Huawei's mirror-image affirmative defenses. PanOptis has offered to license its global portfolio of standard essential patents (SEPs) to Huawei on FRAND terms, and Huawei has adduced no evidence to meet its burden to show otherwise.

PanOptis owns worldwide patent portfolios that include numerous patents declared essential to various telecommunications standards (2G, 3G, and 4G LTE). These portfolios were acquired from three renowned global technology companies: Ericsson, Panasonic, and LG Electronics. PanOptis made a commitment to the European Telecommunication Standard Institute (ETSI) to license its standard essential patents on fair, reasonable, and non-discriminatory (FRAND) terms. Huawei is a global telecommunications company selling devices that rely on PanOptis' standard essential patents. Huawei agrees that it needs a license to PanOptis' portfolio of standard essential patents, and it professes to be seeking such a license. Nevertheless, over years of negotiation, PanOptis' offers to Huawei—on FRAND terms—have been uniformly rejected. The heart of the parties' dispute is whether PanOptis' offer of a global portfolio license to Huawei, in particular the portfolio royalty rate, is in fact FRAND.

After negotiating over the portfolio rate for almost three years, it became clear that Huawei was unwilling to take a license to PanOptis' standard essential patents on FRAND terms. PanOptis thus filed this action against Huawei on February 10, 2017, asserting infringement of six patents declared essential to the 4G LTE standard as well as one implementation patent. And to resolve the central issue underlying the parties' dispute, PanOptis also sought a judicial declaration that its offers of a portfolio license to Huawei are FRAND compliant. Huawei answered PanOptis' complaint on May 19, 2017, denying infringement and asserting breach of FRAND by PanOptis as the predicate for six of its affirmative defenses.

Two months later, on July 6, 2017, Huawei filed claims against PanOptis and its affiliates in China seeking "[e]ntry of judgment declaring that the licensing terms of the essential patents declared to comply with the 2G, 3G, and 4G standards …violate the fair, reasonable, and non-discriminatory principle (hereinafter referred to as 'FRAND' principle)."[1] Huawei thus asserts claims in China that mirror PanOptis' declaratory judgment claim here. And Huawei's claims in China are *not* limited to PanOptis' Chinese standard essential patents: Huawei's complaint provides that the "relevant geographic markets include China and other markets within the jurisdictions in which the Plaintiffs require licenses for the standard-essential patents."[2]

While Huawei asks the court in China to evaluate whether PanOptis' global license offers comply with FRAND, it has simultaneously suggested that this Court lacks subject matter jurisdiction to make the same determination.[3] According to Huawei, evaluating PanOptis' global FRAND offers would improperly put the enforceability of foreign patents at issue in this case.[4] That is not true. As Huawei points out in the Northern District of California, where it is seeking *identical relief* for Samsung's alleged breach of a FRAND commitment based on a cross license of Huawei's and Samsung's *global patent portfolios*, such an "argument confuses the Court's authority to determine FRAND royalty rates in the context of a contractual dispute with its authority to determine damages for patent infringement."[5] And as Huawei further acknowledges in its case against Samsung, the asserted global FRAND claims do not require "deciding patent

---

[1] Dkt. 77-1(1673 Complaint) at 1.
[2] *Id.* at 5.
[3] "This Court lacks jurisdiction to declare that PanOptis has complied with its FRAND obligations as to its *Chinese* patents by offering such a global license." [Dkt. 92 at 3]
[4] *Id.* at 4.
[5] Huawei's Brief in Support of its Request to Bifurcate or Phase Trials, *Huawei Techs. Co. Ltd. v. Samsung Elecs. Co., Ltd.,* No. 16-cv-02787, Dkt. 84 at 1 (N.D. Cal. Sept. 20, 2016).

validity, infringement, enforceability, or essentiality" of any foreign standard essential patents.[6] Huawei is correct: "While some (not all) of the prior cases in which courts have determined FRAND rates have proceeded by consent, that is immaterial to whether the Court has the power to do it. Jurisdiction cannot be conferred by consent, and the fact that courts have undertaken such determinations is precedent for their power to do so."[7] The Court plainly has jurisdiction over the claims and defenses relating to the domestic patents at issue in this litigation. And the dispute underlying these claims and defenses—the heart of the controversy between the parties— is whether PanOptis' offer of a global portfolio license to Huawei is in fact FRAND. As Huawei has argued previously, this Court has the power to resolve that controversy. And it can do so without reaching the enforceability of any of PanOptis' foreign patents.

Huawei understands that the global FRAND issues are at the center of the controversy between the parties, and that they are raised by the declaratory judgment claim and the affirmative defenses that have been pled in this case. Nevertheless, Huawei has essentially ignored these critical issues pending in this Court (while pursuing them in China), and has failed to adduce any evidence to satisfy its burden to prove that PanOptis' global license offers breached its commitment to ETSI in relation to Huawei. PanOptis, on the other hand, has introduced undisputed facts into the record showing that the licensing terms of its global offers to Huawei are FRAND. Indeed, Huawei's expert relies on those same licensing terms in opining on a reasonable royalty for the standard essential patents in this case. Accordingly, PanOptis asks the Court to grant summary judgment as to PanOptis' declaratory judgment claim and against Huawei's affirmative defenses asserting breach of FRAND and declare that PanOptis' portfolio offers to Huawei comply with PanOptis' FRAND commitment.

---

[6] *Id.* at 2.
[7] *Id.* at 4.

## II. STATEMENT OF THE ISSUE TO BE DECIDED

(1) Whether PanOptis' global licensing offers to Huawei comply with PanOptis' FRAND commitment.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The FRAND Dispute Between PanOptis and Huawei.

PanOptis consists of a group of companies wholly-owned by Inception Holdings LLC. Each of the subsidiaries of Inception Holdings comprises a distinct portfolio of patents acquired from industry leading companies. Dkt. 76-1, Warren Decl., ¶ 2. Two subsidiaries in the PanOptis group are Optis Wireless Technology LLC (Optis Wireless) and Optis Cellular Technology LLC (Optis Cellular). *Id.* Both entities hold portfolios of patents essential to the cellular technology standards, which they seek to license on FRAND terms. *Id.* The patents in the Optis Wireless and Optis Cellular portfolios were acquired from Ericsson, Panasonic, and LG. [Dkt. 31 ¶ 22-23]

PanOptis initiated its licensing efforts with Huawei in April 2014, over four years ago. Declaration of Lindsay Leavitt (Leavitt Decl.) ¶¶ 2-3, Exs. A (PanOptis' Response to Huawei Interrogatory No. 8) and B (PanOptis' Response to Huawei Interrogatory No. 10). During the parties' negotiations, PanOptis made multiple offers and concessions to Huawei, negotiating in good faith every step of the way. Huawei acknowledges that it requires a license to the Optis Wireless and Optis Cellular portfolios.[8]

### 1. PanOptis' Initial Global FRAND Offer.

PanOptis made its initial offer to Huawei in June 2014. Leavitt Decl. ¶ 4, Exs. C (POHW_00029616) and B (PanOptis' Response to Huawei Interrogatory No. 10). PanOptis flew to China and gave a PowerPoint presentation to Huawei regarding its Optis Cellular and Optis Wireless patent portfolios. ████████████████████████████████

---

[8] *See, e.g.,* Dkt 77-1 (1673 Complaint) at 5.



### 2. PanOptis Files This Lawsuit Against Huawei For Patent Infringement and a Declaration It Complied With FRAND.

After three years of negotiations with Huawei with no meaningful progress, PanOptis filed this lawsuit on February 10, 2017, including claims for patent infringement and requesting a declaratory judgment that its global portfolio offers to Huawei are compliant with FRAND. [Dkt. 1] On May 19, 2017, Huawei answered PanOptis' Complaint and raised its FRAND affirmative defenses of breach of contract, actual or implied license, patent misuse, unclean hands, estoppel, and unenforceability. [Dkt. 39]

### 3. Huawei Proposes to Use Ericsson's LTE Rate as a Proxy For the FRAND Rate Huawei Owes PanOptis.

To calculate a FRAND rate that Huawei should pay to PanOptis to license the Cellular and Wireless portfolios, Huawei proposes that the parties use Ericsson's LTE FRAND rate for handsets as a proxy.





#### 4. The U.K. Court Determines a FRAND Rate For PanOptis Subsidiary in Litigation With Huawei.

Shortly after this lawsuit was filed, on April 5, 2017, the High Court of Justice Chancery Division in the United Kingdom issued its ruling in *Unwired Planet Int'l Ltd. v. Huawei Techs. Co. Ltd.*, determining a FRAND license rate for certain portfolios owned by PanOptis subsidiaries Unwired Planet, LLC (UP) and Unwired Planet International Limited (UPIL).[10] Much as Huawei has proposed for a FRAND license here, the U.K. court used the value of Ericsson's standard essential patent portfolio as a proxy for determining the value of the standard essential patents in the UP and UPIL portfolios.[11] But the U.K. court's analysis led to a substantially higher rate than Huawei had proposed.

The U.K. court determined a FRAND rate by starting with the rates in existing license agreements that either Unwired Planet, Huawei, or the court considered to be reasonably

---
[9] Leavitt Decl. ¶ 17, Ex. O (Wu Dep. at 277:9-278:25, Feb. 1, 2018).
[10] Leavitt Decl. ¶ 18, Ex. P (*Unwired Planet v. Huawei* decision).
[11] *See, e.g., id.* at ¶ 175.

comparable benchmarks for a license for Ericsson's standard essential patent portfolio. The U.K. court then scaled those rates by a factor equal to the strength of Unwired Planet's portfolio relative to the strength of Ericsson's portfolio.

After an analysis of the comparable licenses submitted by both parties, the court found that the FRAND rates for Ericsson's portfolio of standard essential patents were 0.8% for 4G and 0.67% for 2G and 3G.[12] The relative strength ratios reflected the number of patents in each portfolio determined to be "relevant" to the particular standard at issue. These were referred to as "actually standard essential patents," or ASEPs.

To determine a FRAND rate for a license to Unwired Planet's portfolio, the court calculated benchmark rates by applying the relative strength ratios to the 0.8% and 0.67% that the court determined to be FRAND rates for the Ericsson portfolio. To determine a rate in China, the court adjusted the benchmark rate downward by 50% to account for the fact that "rates are often lower in China than for the rest of the world" and adjusted for any differences in the numbers of ASEPs in the portfolio.[13] The court determined that the rate for major markets—*i.e.*, any non-China countries where Unwired Planet possessed three or more declared essential 4G patents or two or more declared essential 2G or 3G patents—should be a slightly adjusted version of the benchmark rate. Finally, the court found that the rates for the "other markets" would be the same as the China rates because China is where Huawei makes the products.[14]

In sum, among other rulings, the court determined the FRAND rate for Unwired Planet, based on six (6) actually standard essential patent families:[15]

---

[12] *Id.* at ¶¶ 464 and 465.
[13] *Id.* at ¶ 583-586.
[14] *Id.* at ¶ 807(12).
[15] *Id.* at ¶ 807(13).

| | 4G/LTE[16] | 3G/UMTS | 2G/GSM |
|---|---|---|---|
| Unwired Planet ASEPs | 6 | 2 | 1 |
| Major Markets | 0.052% | 0.032% | 0.064% |
| Other Markets | 0.026% | 0.016% | 0.016% |
| China | 0.026% | 0.016% | 0.016% |

Huawei has previously represented that it intended to be bound by the U.K. adjudication. Dkt. 76-1, Warren Decl. ¶ 6.[17]

### 5. Huawei Files Cases in China, Asserting Claims That Mirror PanOptis' Declaratory Judgment Claim Here.

On July 6, 2017, Huawei filed two Chinese actions against PanOptis and its affiliates alleging that the terms of the same global licensing offers from PanOptis to Huawei at issue in this case violated PanOptis' FRAND commitment. Dkt. 77-1, 77-2, Clark Decl., Ex. A (Complaint 1673) and Ex. B (Complaint 1674). Because Huawei filed these actions secretly, PanOptis did not learn of their pendency until September 1, 2017, when PanOptis received mailed copies of the complaints at its Texas addresses. Dkt. 76-1, Warren Decl., ¶ 7.

Huawei's first Chinese complaint, docket number 1673, alleges that the portfolio license terms PanOptis has offered to Huawei do not comply with FRAND and asserts, as a result, legal claims for breach of FRAND and antitrust violations. Dkt. 77, Clark Decl. ¶ 11. Huawei requests as relief a declaration that PanOptis has violated FRAND and claims associated damages of 99 million Chinese Yuan (approximately $15 million US). Dkt. 77-1, Clark Decl., Ex. A (Complaint 1673), at 2 (Prayer for Relief #1). The claims asserted in China mirror PanOptis' declaratory

---

[16] 4G multimode handsets comply with 4G, 3G, and 2G standards. 3G multimode handsets comply with 3G and 2G. *Id.* at ¶ 478.

[17] Huawei is currently appealing the ruling.

judgment claim here. And just like PanOptis' claim in this litigation, Huawei's claims in China seek a declaration relating to FRAND that is global in scope: the "relevant geographic markets include China and other markets within the jurisdictions in which the Plaintiffs require licenses for the standard-essential patents."[18]

### 6. PanOptis Revises Its Global FRAND Offer to Huawei in Light of the U.K. Court Ruling.

On September 29, 2017, PanOptis made a new global offer to Huawei for its standard essential patents in the Optis Cellular and Optis Wireless portfolios at issue in this case. Leavitt Decl. ¶ 5, Ex. D (POHW_00037974).



---

---

[18] *Id.* at 5.
[19] Ex. D (POHW_00037974) at 1, 11.

Despite Huawei's *own proposal* to use the value of Ericsson's patent portfolio as a proxy for the FRAND rate to which PanOptis is entitled, Huawei has resisted applying the rate as determined by the U.K. court to the remainder of the PanOptis portfolio—*i.e.*, the Optis Cellular and Wireless standard essential patent portfolios at issue in this case. Dkt. 76-1, Warren Decl., ¶ 6.

### B. PanOptis Introduces Undisputed Evidence Into the Record That PanOptis' Global Offers Comply With Its FRAND Commitment.

The heart of the parties' dispute is whether PanOptis' offers of a portfolio license to Huawei—the portfolio rate in particular—is in fact FRAND. PanOptis has introduced fact evidence and expert testimony into the record proving that PanOptis' global offers comply with its FRAND commitment. To do this, PanOptis has (i) proven the number of actually standard essential patent families in the portfolios at issue here through fact and expert testimony and (ii) offered unrebutted expert testimony from Dr. Michael Akemann, opining from an economic perspective that PanOptis' global licensing offers are FRAND.[20] Huawei has come forward with no expert testimony or other evidence to the contrary. Thus, there is no genuine dispute of material fact as to whether PanOptis' global licensing offers are FRAND.

### 1. PanOptis Has Proven the Number of Actually Standard Essential Patent Families at Issue Here.

During fact discovery, PanOptis produced claim charts to Huawei evidencing how certain declared essential patents in its Cellular and Wireless portfolios are actually standard essential patents, or ASEPs. Leavitt Decl. ¶ 6; *see also* Ex. B (PanOptis' response to Huawei Interrogatory No. 10). In addition to technical experts opining on the asserted SEPs, two technical experts, Dr. Alex Haimovich and Mr. James Warden, also assessed the number of actually standard essential

---

[20] PanOptis also offered unrebutted expert testimony from Professor Fauvarque-Cosson on the French contract law principles that are relevant to interpreting the FRAND commitment. Leavitt Decl. ¶ 13, Ex. K (Fauvarque-Cosson Report).

patent families contained within the Cellular and Wireless portfolios. Ex. F lists the ASEPs identified by these experts, and shows the number of ASEPs for each of the 2G, 3G, and 4G standards.[21] ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████ Further, Dr. Haimovich and Mr. Warden compared PanOptis' ASEPs to the three European patents that were deemed essential to the 4G standard in the U.K. Court. The experts concluded that PanOptis' ASEPs are at least as technically important as those patents. Leavitt Decl. ¶¶ 11-12, Ex. I (Haimovich Report) at ¶ 24; Ex. J (Warden Report) at ¶ 23.

> ### 2. PanOptis Has Offered Unrebutted Expert Testimony Showing That Its Global Offers Are FRAND.

PanOptis also has offered the unrebutted expert testimony of Dr. Michael Akemann. Leavitt Decl. ¶ 7, Ex. E (Akemann Report). Dr. Akemann assessed, from an economic perspective, whether PanOptis' global license offers comply with its FRAND commitment. Dr. Akemann considered numerous factors in reaching his conclusion, including (i) the number of PanOptis' actually standard essential patent families; (ii) the history of the parties' negotiations; (iii) Huawei's proposed approach to use Ericsson's LTE FRAND rate as a proxy; (iv) rates paid for licenses to PanOptis' Cellular and Wireless portfolios under similar terms; (v) rates paid for Ericsson's portfolio of standard essential patents; and (vi) FRAND rates for Ericsson's standard essential patents confirmed in litigation, such as the U.K. court. All of this analysis is unrebutted by Huawei.

---

[21] Leavitt Decl. ¶ 8, Ex. F (Akemann Report, Ex. 13b1).

To evaluate PanOptis' current offer in light of the FRAND rates for Ericsson's standard essential patents, Dr. Akemann began with the results of the assessment of the number of actually standard essential patent families contained within the Optis Cellular and Wireless portfolios. Ex. F (Akemann Report, Ex. 13b). Dr. Akemann then calculated the strength ratio compared to Ericsson's standard essential patent portfolio. To make this calculation, Dr. Akemann used estimates of the number of Ericsson's ASEPs produced by the court and by Huawei in *Unwired Planet*. *Id.* Dr. Akemann also used estimates of the number of Ericsson's ASEPs by a court in a recent case in the Central District of California to determine a FRAND rate for Ericsson's portfolio of SEPs. *See TCL Commc'ns Tech. Holding Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341, Dkt. 1802 (C.D. Cal. Dec. 21, 2017).[22] Dr. Akemann then applied the strength ratio to three calculations of Ericsson's portfolio rate: (1) the *Unwired Planet* court's determination of Ericsson's SEP portfolio rate; (2) the *TCL* court's later determination of Ericsson's SEP portfolio rate; and (3) the rate that Huawei pays to Ericsson under its "Global Patent License Agreement," with an effective date of November 20, 2014. Dr. Akemann performs a similar calculation to evaluate PanOptis' offered rates in China and Other Markets. The results of Dr. Akemann's calculations are depicted in Exs. G (Akemann Report, Ex. 13c1) and H (Akemann Report, Ex. 13c2). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Using Ericsson's portfolio rate as a proxy

---

[22] As Dr. Akemann notes, while both courts in *Unwired Planet* and *TCL Commc'ns* calculate a FRAND rate for Ericsson's SEP portfolio, Huawei fully participated in the *Unwired Planet* adjudication. And many of the Ericsson licenses considered by the court in *Unwired Planet* were entered into prior to the divestiture of Ericsson's patents to PanOptis, unlike the Ericsson licenses considered by the court in *TCL Commc'ns*.

(*i.e.,* using Huawei's approach), Dr. Akemann irrefutably supports that PanOptis' current offer to Huawei is consistent with FRAND principles.

## C. Huawei Relies on PanOptis' ASEPs and Major Market Rate to Opine on Reasonable Royalty Damages.

The only evidence Huawei has introduced in this case *supports* PanOptis' request for summary judgment—Huawei relies on (i) PanOptis' determination of the number of actually standard essential patent families in its Optis Cellular and Optis Wireless portfolios and (ii) PanOptis' September 2017 ▮▮▮▮▮▮▮▮▮▮▮▮ for 4G to calculate the reasonable royalty for each of the patents asserted in PanOptis' patent infringement claims.

In rebuttal of PanOptis' affirmative expert opinion on the reasonable royalty damages owed to PanOptis for Huawei's infringement of the asserted patents, Huawei submits the expert report of Dr. Stephen Becker. Leavitt Decl. ¶ 14, Ex. L (Becker Report). Dr. Becker notes that he is "not opining to a worldwide FRAND rate for the entire Optis portfolio." *Id.* at 43, n.245. Nevertheless, two assumptions underlying Dr. Becker's report inextricably tie his reasonable royalty opinions for the asserted patents to the FRAND nature of PanOptis' global license offers.



*First*, Dr. Becker adopts PanOptis' evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Leavitt Decl. ¶ 15, Ex. M (Becker Report, Ex. 5). To determine a reasonable royalty for the asserted standard essential patents, Dr. Becker starts with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to arrive at his ultimate reasonable royalty opinion.

*Second*, Dr. Becker relies on PanOptis' ▮▮▮▮▮▮▮▮▮▮▮▮ that it offered to Huawei in September 2018 to calculate a reasonable royalty. *See, e.g., id.* In fact, Dr. Becker's calculation of the reasonable royalty for each of the asserted patents is entirely dependent upon

PanOptis' ███████████—it is the ceiling for each of his calculations. Dr. Becker's reasonable royalty analysis thus supports the contention that PanOptis' ███████████ ██████ is FRAND. Huawei has presented no evidence to show otherwise.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is also appropriate where the parties do not dispute material facts that might affect the outcome of an action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials," but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

## V. ARGUMENT

### A. Huawei Bears the Burden of Proof on the FRAND Issues Raised in the Declaratory Judgment Claim and the Related Affirmative Defenses.

PanOptis' request for declaratory relief negating Huawei's breach of FRAND claims does not shift the burden of proof from Huawei to PanOptis. Huawei bears the burden to prove

breach of contract in this litigation. *Singh v. Bajwa*, No. 3:08-cv-383, 2008 U.S. Dist. LEXIS 63413, *5-6 (N.D. Tex. Aug. 19, 2008) (holding that the party asserting breach of contract bears the burden of proof on the matter, regardless of "the position of the parties on the docket as plaintiff or defendant"); *see also TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson, et al.*, No. 8:14-cv-341, Dkt. 1074 (C.D. Cal. Aug. 17, 2016) ("Even if Ericsson has made affirmative allegations that it has *not* breached a contract and made affirmative allegations that its offers to TCL *are* FRAND, that fact does not alter the burden of proof in this case.") (emphasis in original); *Safeco Ins. v. City of White House*, 191 F.3d 675, 683 (6th Cir. 1999) (remanding for new trial when the jury interrogatories put the burden of proof on the party seeking a declaratory judgment of no breach of contract).

Huawei asserts FRAND affirmative defenses related to breach of contract, actual or implied license, patent misuse, unclean hands, estoppel, and unenforceability. [Dkt. 39 at 31-32] For each affirmative defense, Huawei bears the burden of proof. *See, e.g., Crescent Towing & Salvage Co. v. M/V ANAX*, 40 F.3d 741 (5th Cir. 1994).

### B. Summary Judgment Is Appropriate Because Huawei Alleges Breach of FRAND, But Has Adduced No Evidence to Support Its Claim.

PanOptis moves for summary judgment on claims for which there is no genuine dispute of material fact. *See, e.g., BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("At the summary judgment stage, the court can properly narrow the individual factual issues for trial by identifying the material disputes of fact that continue to exist."); *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-cv-497-TJW-CE, 2011 WL 3625036, at *26 (E.D. Tex. Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013) ("The Court's partial summary judgment order narrowed the issues at trial to only those that were in dispute and was proper.").

Huawei alleges that PanOptis' offers violate FRAND. As set forth above, however, Huawei has adduced no expert testimony or other credible evidence suggesting that PanOptis' offers to Huawei are not FRAND. Not one of Huawei's experts in this case has opined on PanOptis' global offers. Nor has any fact or expert witness addressed or rebutted PanOptis' evidence of the number of actually standard essential patent families in the Optis Cellular and Optis Wireless portfolios. And because Huawei has not put forth evidence that PanOptis' global offers are unfair, unreasonable, or discriminatory, those offers cannot serve as the basis for a finding that PanOptis violated its FRAND commitment in relation to Huawei.

Huawei's own record evidence *supports* the conclusion that PanOptis' global offers to Huawei are FRAND. Huawei's economic expert, Dr. Becker, relies on PanOptis' offered ████ ████████████████████ in opining on the reasonable royalty for each of the asserted patents. Further, Dr. Becker relies on PanOptis' expert determination of the number of actually standard essential patent families in the Optis Cellular and Optis Wireless portfolios.

The Court, therefore, should grant summary judgment in PanOptis' favor.

### C. PanOptis' Declaratory Judgment Claim Does Not Require Adjudicating Essentiality, Infringement, Or Validity of Individual Patents.

PanOptis seeks relief in the form of a judicial declaration as to whether PanOptis has satisfied its FRAND commitment in relation to Huawei. The parties have a singular disagreement over value. This is not several hundred discreet disputes over essentiality, validity, and infringement in regard to each of PanOptis' essential patents. As the Ninth Circuit recognized, the question of whether a patent owner has made a FRAND offer, like the question of what constitutes a FRAND royalty, can be decided without adjudicating infringement, validity, and essentiality of individual patents. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015) (affirming the district court's determination of a RAND range where the

district court did not adjudicate whether the declared patents were actually essential); *see also Nokia Corp. v. Qualcomm, Inc.*, No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383, at *5 (D. Del. 2006) (citing *United Techs. Corp. v. Chrome Alloy Gas Turbine Corp.*, 105 F. Supp. 2d 346, 358 (D. Del. 2000)) (explaining that a determination of patent enforceability "is not necessary to the interpretation of the parties' contractual obligations for declared-essential patents.").

Huawei would improperly ignore the FRAND declaratory judgment claim raised in this case while simultaneously asking the Chinese court, in its later-filed action, to resolve its mirror-image FRAND declaratory judgment claim covering all of the worldwide "jurisdictions in which the Plaintiffs require licenses for the standard-essential patents."[23] Indeed, Huawei has suggested that this Court lacks jurisdiction to declare that PanOptis has complied with its FRAND obligations as to any patents other than the patents Huawei is accused of infringing.[24] But this is contrary to Huawei's position in every other case in which these claims arise.

Huawei recognizes that this Court has the power to perform a global FRAND adjudication; this is the position it took in its case against T-Mobile. *Huawei Techs. v. T-Mobile US, Inc.*, Case No. 2:16-cv-715, Dkt. No. 1 at ¶¶ 81-86 (E.D. Tex. Jul. 5, 2016). When facing a motion to dismiss that claim for declaratory relief against T-Mobile, Huawei emphasized that this Court was the proper forum for such a dispute. *Id.* at Dkt. 17. And Huawei similarly points out in the Northern District of California—where it is seeking *identical relief* for Samsung's alleged breach of its FRAND commitment based on a cross license of Huawei's and Samsung's *global patent portfolios*—that its own argument here "confuses the Court's authority to determine FRAND royalty rates in the context of a contractual dispute with its authority to

---

[23] Ex. 77-1 (1673 Chinese Complaint) at 5.
[24] "This Court lacks jurisdiction to declare that PanOptis has complied with its FRAND obligations as to its *Chinese* patents by offering such a global license." [Dkt. 92 at 3]

determine damages for patent infringement."[25] There, Huawei acknowledges that questions relating to global FRAND offers, such as those raised by the declaratory judgment claim and affirmative defenses pled in this case, can be resolved without "deciding patent validity, infringement, enforceability, or essentiality" of any patent not otherwise at issue in the case.[26] And Huawei is correct on this point: "While some (not all) of the prior cases in which courts have determined FRAND rates have proceeded by consent, that is immaterial to whether the Court has the power to do it. Jurisdiction cannot be conferred by consent, and the fact that courts have undertaken such determinations is precedent for their power to do so."[27]

PanOptis is not seeking damages for infringement of any patent that is not asserted in this case. PanOptis simply seeks damages for Huawei's infringement of the asserted patents, and—importantly—PanOptis seeks resolution of the underlying FRAND dispute that generated this litigation, and that is squarely raised in the declaratory judgment claim and FRAND-related affirmative defenses asserted in the pleadings. The undisputed material facts entitle PanOptis to summary judgment in its favor on this claim and these asserted defenses.

---

[25] Huawei's Brief in Support of its Request to Bifurcate or Phase Trials, *Huawei Techs. Co. Ltd. v. Samsung Elecs. Co., Ltd.,* No. 16-cv-02787, Dkt. 84 (N.D. Cal. Sept. 20, 2016). In the Northern District of California, Huawei filed an action against Samsung asserting infringement of eleven of its SEPs, and alleging that Samsung breached "its commitment to enter into a SEP cross-license with [Huawei] on FRAND terms and condition." Leavitt Decl. ¶ 16, Ex. N (Huawei's Complaint for Breach of Contract, Declaratory Judgment, and Patent Infringement, *Huawei Techs. Co. Ltd. v. Samsung Elecs. Co., Ltd.,* No. 16-cv-02787, Dkt. 1 (N.D. Cal. May 24, 2016)) at ¶¶ 1, 4. Huawei also asks the court to set the terms and conditions for a global FRAND cross license under the parties' respective worldwide portfolios of essential 3G and 4G patents, and to enjoin Samsung from "seeking injunctive relief against Huawei (including affiliates) in any jurisdiction with respect to any alleged infringement of any patent essential to 3GPP standards." *Id.* at Prayer for Relief, E.

[26] *Id.* at 2.

[27] *Id.* at 4.

## VI. CONCLUSION

For the foregoing reasons, PanOptis respectfully requests that the Court grant summary judgment and declare that PanOptis' global license offers to Huawei comply with its FRAND commitment, and that the Court grant summary judgment in PanOptis' favor as to Huawei's Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Affirmative Defenses.

Dated: May 14, 2018

*/s/ Kevin L. Burgess*

Kevin L. Burgess – Lead Counsel
Texas State Bar No. 24006927
kburgess@McKoolSmith.com
Steve J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
Scott L. Cole
Texas State Bar No. 00790481
scole@McKoolSmith.com
Lindsay M. Leavitt
Texas State Bar No. 24049544
lleavitt@McKoolSmith.com
Kevin P. Hess
Texas State Bar No. 24087717
khess@McKoolSmith.com
Christine M. Woodin
Texas State Bar No. 24100051
cwoodin@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
Jonathan Powers
Texas State Bar No. 24098277
jpowers@mckoolsmith.com

Marcus L. Rabinowitz
Texas State Bar No. 24098293
mrabinowitz@McKoolSmith.com
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Eric S. Tautfest
Texas Bar No. 24028534
etautfest@grayreed.com
Jared Hoggan
Texas Bar No. 24065435
jhoggan@grayreed.com
David T. DeZern
Texas Bar No. 24059677
ddezern@grayreed.com
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
David Lisch
Texas Bar No. 24077179
dlisch@grayreed.com
**GRAY REED & MCGRAW, LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY,
LLC, PANOPTIS PATENT
MANAGEMENT, LLC, AND OPTIS
CELLULAR TECHNOLOGY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on May 14, 2018.

*/s/ Kevin L. Burgess*
Kevin L. Burgess

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned case, this motion and the exhibits thereto contain confidential information. Accordingly, this document is to be filed under seal.

*/s/ Kevin L. Burgess*
Kevin L. Burgess

McKool 1364328v1