**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECH., LLC, ET AL.,** | |
| **Plaintiffs,** | **Civil Action No. 2:17-cv-123-JRG-RSP** |
| **v.** | |
| **HUAWEI TECHS. CO. LTD ET AL.,** | **JURY TRIAL REQUESTED** |
| **Defendants.** | |

**PLAINTIFFS' OPPOSITION TO HUAWEI'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   Introduction ............................................................................................................. 1

II.   Background .............................................................................................................. 3

    A.   The Parties' Breach of FRAND Contract Dispute ................................................ 3

    B.   The FRAND Commitment .................................................................................... 5

    C.   Huawei's Contradictory Positions Taken In United States Courts ........................ 7

    D.   Huawei's Contradictory Positions Taken In Courts Outside The U.S. ................. 10

III.   Argument and Authorities ..................................................................................... 11

    A.   Federal Question Jurisdiction ............................................................................. 11

    B.   Numerous Courts Have Made FRAND Determinations Regarding A
        Global Offer ...................................................................................................... 12

    C.   Huawei Should Be Judicially Estopped From Making the Arguments in its
        Motion .............................................................................................................. 13

    D.   Supplemental Jurisdiction Is Proper Under 28 U.S.C. § 1367 ............................ 17

        1.   Huawei cannot separate PanOptis' Declaratory Judgment claim
            into "U.S. Patents" and "Non-U.S. Patents" ................................................ 18

        2.   The question of breach of FRAND is part of the same "case or
            controversy" under 28 U.S.C. § 1367(a) ...................................................... 20

    E.   The Court Should Not Decline to Exercise Supplemental Jurisdiction
        Under 28 U.S.C. § 1367(c) ................................................................................ 21

        1.   There are no novel or complex issues of State or foreign law that
            warrant dismissing this claim under § 1367(c)(1). ...................................... 23

        2.   The FRAND claim does not "substantially predominate" over the
            original claims at issue under § 1367(c)(2) .................................................. 24

        3.   Huawei's "compelling reasons" are not exceptional circumstances
            that warrant declining supplemental jurisdiction under
            § 1367(c)(4). .............................................................................................. 25

        4.   Common law factors of convenience, judicial economy, fairness,
            and comity weigh against declining to exercise supplemental
            jurisdiction under § 1367(c). ....................................................................... 26

IV.   Conclusion ............................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Batiste v. Island Records Inc.*,
    179 F.3d 217 (5th Cir. 1999) .................................................................................2

*Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*,
    554 F.3d 595 (2009)..............................................................................................22

*CSIRO v. Cisco Sys., Inc.*,
    809 F. 3d 1295 (Fed. Cir. 2015)...........................................................................23

*Enoch v. Lampasas Cnty*,
    641 F.3d 155 (5th Cir. 2011) ................................................................................22

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)......................................................................20, 23

*Huawei Techs., Co, Ltd, et al. v. Samsung Elecs. Co, Ltd., et al.*,
    No. 3:16-cv-02787-WHO, 2018 WL 1784065 (N.D. Cal. Apr. 13, 2018).... passim

*Huawei Techs. Co. Ltd. v. Samsung Elecs. Co., Ltd.*,
    No. 16-cv-02787, Dkt. 1 (N.D. Cal. May 24, 2016).............................................4

*Huawei Techs. Co. Ltd. v. T-Mobile US Inc.*,
    No. 2:16-cv-00715-JRG-RSP, 2017 WL 957720 (E.D. Tex. Sept. 22, 2017)...............6, 9, 15

*Huawei v. T-Mobile*,
    Case No. 2:16-cv-00715, Dkt. 1 (E.D. Tex., July 5, 2016) ...................................19

*Kelly v. Allen Indep. Sch. Dist.*,
    No. 4:12-CV-00756, 2013 WL 12171754 (E.D. Tex. June 21, 2013)...................24

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
    211 F.3d 697 (2d Cir. 2000)................................................................................17

*Mendoza v. Murphy*,
    532 F.3d 342 (5th Cir. 2008) .........................................................2, 17, 22, 26

*Microsoft Corp. v. Motorola, Inc*.
    696 F.3d 872 (9th Cir. 2012) ......................................................................... passim

*Microsoft Corp. v. Motorola, Inc.*,
    No. 10-cv-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) .............3, 12, 23

*Palmer v. Hosp. Auth. of Randolph Cty.*,
    22 F.3d 1559 (11th Cir. 1994) ........................................................................17

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
    972 F.2d 580 (5th Cir. 1992) .........................................................................22

*Reed v. City of Arlington*,
    650 F.3d 571 (5th Cir. 2011) ....................................................................14, 16

*TCL Communication Technology Holdings, Ltd., et al. v. Telefonaktiebolaget LM Ericsson, et al.*,
    Case No. 14-cv-00341, 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ...................3, 7, 12, 23

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966).............................................................................17, 24, 25

*Unwired Planet International Ltd. v. Huawei Technologies Co. Ltd*,
    [2017] EWHC 2988 (Pat), Case No. HP-2014-000005 (Nov. 30, 2017) (public version) ...................................................................................................3, 5

**STATUTES**

28 U.S.C. § 1367.......................................................................................2, 17, 22

28 U.S.C. § 1367(a) .............................................................................17, 18, 20, 24

28 U.S.C. § 1367(c) ........................................................................................ passim

## I.      Introduction

Huawei fundamentally misapprehends the nature of the FRAND commitment and PanOptis' declaratory judgment action. The FRAND commitment at issue here is a *contractual* commitment between owners of essential patents and the European Telecommunications Standards Institute ("ETSI"). An implementer of the standard, such as Huawei, is a third party beneficiary of the FRAND contract and can enforce it via a suit for breach of contract.

Although Huawei attempts to portray the FRAND commitment as "a patent infringement dispute," this assertion is only partly true. Dkt. 145 ("Mot") at 3. While this case presents claims for infringement of PanOptis patents, it simultaneously presents a declaratory judgment claim that PanOptis has not breached the FRAND contract. Curiously, Huawei itself has previously taken the position in this Court (in its *T-Mobile* case), as well as other courts around the world, that breach of FRAND allegations sound in contract. Thus, Huawei's motion relies on a fundamentally incorrect straw man: that this Court cannot adjudicate FRAND as to non-US patents.

PanOptis agrees that the law is clear that a U.S. court cannot adjudicate infringement or validity of a non-U.S. patent. But PanOptis' declaratory judgment does not seek, and does not need to seek, such a ruling. Rather, PanOptis' declaratory judgment request sounds solely in contract and merely asks the Court to confirm that PanOptis has complied with its FRAND contract obligations. United States courts routinely adjudicate disputes under contracts that contemplate international performance, and this case is no different.

As is customary in licensing, ███████████████████████████████████████ ████████████████████████, PanOptis' licensing offers to Huawei have been based on ████████████████. Huawei *agrees* the parties have a live dispute, which confers Article III

case or controversy jurisdiction, over whether PanOptis' offers to Huawei to license its global portfolios of standard essential patents are in breach of PanOptis' contractual FRAND commitments. This dispute also forms the basis of six of Huawei's affirmative defenses, which all require adjudicating whether PanOptis' global offer breached its contractual commitment.

Likewise incorrect is Huawei's argument that, if PanOptis' declaratory judgment is based solely on contract, there would be no federal subject matter jurisdiction. The Court has supplemental jurisdiction over the declaratory judgment action, which arises out of the same nucleus of common facts as the federal claims asserted by PanOptis. Federal subject matter jurisdiction exists. And Huawei has provided no reason this Court should decline to exercise supplemental jurisdiction under § 1367(c), particularly when Huawei waited until now to bring this motion, after the parties expended significant resources in fact and expert discovery litigating these issues. Every argument Huawei brings under § 1367(c) relies on the incorrect premise that deciding the contractual question necessarily implicates patent law (particularly foreign patent law). Huawei's wait-and-see approach also directly conflicts with Supreme Court and Fifth Circuit precedent on how the values of judicial economy, convenience, fairness, and comity should be weighed when evaluating § 1367(c)—factors that are tellingly absent from Huawei's motion. Huawei's motion comes far too late, asking the Court to dismiss a claim that has been pending for more than a year when trial is just a few months away. Huawei's delay is inexcusable, unfair to PanOptis, and a waste of judicial resources. *Batiste v. Island Records Inc.*, 179 F.3d 217, 228 (5th Cir. 1999) (holding a court abused discretion in dismissing a claim under § 1367 where the record was well-developed, gathering authority that dismissal on the eve of trial is not consistent with judicial economy or fairness); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (noting that "the common-law factors of judicial economy, convenience, fairness,

2

and comity" weighed in favor of retaining supplemental jurisdiction where "the case against Defendants had been pending for well over a year, the discovery deadline had passed, and the parties had fully briefed Defendants' motion for summary judgment" ).

## II.    Background

Count IX of PanOptis' Third Amended Complaint seeks a "declaratory judgment that [PanOptis] has complied with its obligations arising from declaring its patents essential to various standards, and any applicable laws, during their negotiations with Huawei concerning *a worldwide license* under the PanOptis standards essential patents." Dkt. 31 ¶ 185 (emphasis added). From the beginning—and on its face—PanOptis' declaratory judgment claim asked the Court to declare that PanOptis complied with its FRAND commitment as to the terms PanOptis has offered for "a worldwide license."

This is not an unusual declaratory judgment request. Numerous other courts have resolved similar claims,[1] and Huawei itself has brought such claims in both U.S. and Chinese courts, most recently in *Huawei v Samsung*, where Huawei itself asked for a declaration of FRAND compliance.[2]

### A.    The Parties' Breach of FRAND Contract Dispute

PanOptis owns several worldwide patent portfolios, including numerous patents essential to the 2G, 3G, and 4G telecommunications standards promulgated by ETSI. These standard essential patents ("SEPs") were issued by dozens of countries around the world. PanOptis acquired the asserted patents from four, renowned global-technology companies: Ericsson, headquartered in Sweden; Panasonic, headquartered in Japan; and LG and Samsung, both

---

[1] *E.g. TCL v. Ericsson*, Case No. 14-cv-00341, 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017); *Microsoft Corp. v. Motorola, Inc.*, No. 10-cv-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013); *Unwired v. Huawei*, [2017] EWHC 2988 (Pat), Case No. HP-2014-000005.
[2] *See, e.g., Huawei v. Samsung*, No. 16-cv-02787 (N.D. Cal.); Dkt. 77-1 (1673 Complaint).

headquartered in Korea. Each of these companies committed to license its SEPs on fair, reasonable and non-discriminatory ("FRAND") terms and conditions, a contractual commitment formed through declarations to ETSI. PanOptis acquired the patents subject to those contractual commitments to ETSI, which travel with the patents according to ETSI's IPR Policy. Dkt. 31 ¶¶19-28.

Huawei is a global telecommunications company selling devices that rely on PanOptis' standard essential patents to comply with the 2G, 3G, and 4G standards. Huawei is one of the top three sellers of mobile phones worldwide. Dkt. 148-06 (Huawei's Complaint for Breach of Contract, Declaratory Judgment, and Patent Infringement, *Huawei Techs. Co. Ltd. v. Samsung Elecs. Co., Ltd.,* No. 16-cv-02787, Dkt. 1 (N.D. Cal. May 24, 2016)) at ¶ 17. Huawei, like PanOptis, also owns patents it contends are essential to the 2G, 3G, and 4G standards. *Id.* at ¶ 33-34. ███████████████████████████████████████. *Id.* And, like virtually every other company in the industry, Huawei has contractually committed to ETSI that it will license its patents on FRAND terms and conditions to implementers of the standard. *Id.*

PanOptis and Huawei began negotiations over the patent portfolio at issue in this case nearly four years ago. Dkts. 147-1; 147-2. Huawei has acknowledged that it requires a license to PanOptis' SEPs but contends the royalty rate offered by PanOptis is too high, such that PanOptis' offers are a breach of its contractual FRAND commitment to ETSI. To resolve the dispute over whether PanOptis has violated its contractual FRAND obligations, PanOptis filed this lawsuit. This suit asserts claims for infringement of six PanOptis SEPs and also a claim for a declaratory judgment that the worldwide royalty rates PanOptis has offered to Huawei comply with PanOptis' FRAND obligations. Dkt. 31. PanOptis made its current licensing offer to Huawei on September 29, 2017. Dkt. 147-4. This offer covers patents essential to the 2G, 3G,

and 4G standards, and provides different running royalty rates for three categories: major market countries, China, and rest-of-world.

███████████████████████████████████

███████ which resolved a dispute between Unwired Planet (another PanOptis subsidiary) and Huawei. That case was filed in March 2014, and asserted five SEPs against Huawei (and other defendants). *Unwired Planet International Ltd. v. Huawei Technologies Co. Ltd*, [2017] EWHC 2988 (Pat), Case No. HP-2014-000005 (Nov. 30, 2017) (public version). Huawei raised affirmative defenses and counterclaims based on breaches of competition law and argued that Unwired Planet's offer was not FRAND. *Id*. ¶5. The Court conducted a series of technical patent trials, followed by a non-technical trial to adjudicate the question of whether Unwired Planet's offer complied with its FRAND commitment, and to set rates for a global license to Unwired Planet's portfolio that would create a license on FRAND terms and conditions. *Id*. ¶¶1-5, 17-24.

███████████████████████████████████

███████████████. Dkt. 147-4. PanOptis firmly believes that its offer, which is based on a neutral adjudication Huawei itself participated in, complies with its obligation to license its SEPs on FRAND terms and conditions. Huawei disagrees, contending that it is a third party beneficiary of PanOptis' contractual FRAND obligations to ETSI, and that PanOptis has breached those contractual obligations.

## B.  The FRAND Commitment

ETSI requires that owners of essential patents make a commitment to grant licenses on FRAND terms and conditions. ETSI IPR Policy § 6.1.[3] The ETSI Policy and the resulting contractual commitments are governed by the laws of France. *Id*. § 12. Courts have found, and

---

[3]  Available at http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

Huawei agrees, that a contractual commitment to license patents on FRAND terms and conditions with ETSI creates third-party beneficiary rights for a potential licensee. *Huawei Techs. Co. Ltd. v. T-Mobile US Inc.,* No. 2:16-cv-00715-JRG-RSP, 2017 WL 957720 at *1 (E.D. Tex. Sept. 22, 2017) (recognizing that the ETSI contract creates third-party beneficiary rights for potential licensee and citing cases).

Portfolio licenses, where a global patent portfolio is licensed in a single agreement, are standard in the telecommunications industry.



These global licenses frequently have a single royalty rate, or sets of regional rates covering multiple countries.

[4] . *Id* at 37:14-38:19.

This industry practice is also reflected in the text of the ETSI IPR Policy. The relevant provision specifies that the FRAND "undertaking" shall apply equally to every member of a patent family absent a written exclusion. ETSI IPR Policy § 6.2. A "Patent Family" is in turn defined to mean all documents having a priority document in common—*i.e.*, patents spanning multiple jurisdictions. *Id.* § 15.13. Global companies that participate in standard-setting—such as Huawei, Ericsson, Panasonic, LG, and Samsung—commonly file patent applications around the

---

[4] *See, e.g.,* Woodin Decl., Ex. G (Huawei's MSJ) (*Huawei v. T-Mobile*) at 21 (arguing that "the standard practice of ETSI members overwhelmingly shows that portfolio licensing is the norm," and that, "because the very parties that agreed to be bound by the ETSI IPR policy routinely make portfolio offers, and do not typically negotiate on a patent-by-patent basis, the policy should be read in line with the ETSI members' understanding").

world for a single invention, and those related patent applications share the same priority

document and form a "patent family." *See, e.g., TCL v. Ericsson*, 2017 WL 6611635 at *15, fn

15 (explaining that "the FRAND commitment applies to all members of that patent family"").

Thus, the contract between an SEP holder and ETSI encompasses patents from a number of

jurisdictions (and is inherently global).[5]

### C.     Huawei's Contradictory Positions Taken In United States Courts

Over the past few years, Huawei has been involved in a number of FRAND-related cases

in United States courts. Huawei has taken positions in those cases that squarely contradict its

Motion. Whether Huawei is on the North or South side of the v is the only fact that reconciles

Huawei's contradictory positions here. When Huawei is plaintiff, on the North side of the v, it

takes the same positions that PanOptis is advocating in this case: that FRAND is a contract, and

that a single national court can adjudicate whether a licensing offer for a global portfolio

complies with the contractual FRAND obligation. Now that Huawei is defendant and appears on

the South side of the v, it argues to the contrary. Huawei forgets that legal principles do not

morph depending on which side of the v Huawei finds itself. The cases in which Huawei takes

positions regarding FRAND that are directly contrary to the arguments is asserts here are

discussed below.

*Huawei v. Samsung.* Huawei is presently engaged in a lawsuit with Samsung in the

Northern District of California. In its Original Complaint, Huawei asked the U.S. court to declare

that Huawei's offered rate to Samsung, which is a single, blended rate for a worldwide license to

Huawei's portfolio of SEPs, complies with FRAND. *Huawei Techs., Co, Ltd, et al. v. Samsung*

---

[5] This is analogous to the global contract the Ninth Circuit affirmed was created by RAND
commitments to the ITU, another standard-setting organization, in *Microsoft Corp. v. Motorola,
Inc*. 696 F.3d 872, 844 (9th Cir. 2012).

*Elecs. Co, Ltd.*, *et al.,* No. 3:16-cv-02787-WHO, 2018 WL 1784065, at *2-*3 (N.D. Cal. Apr.

13, 2018). Interestingly, Huawei filed a parallel case requesting the same adjudication in China.

Huawei's Chinese case (which will be discussed in detail below) went to trial first. Presumably

happy with the result in its Chinese case (which was an adjudication that Huawei complied with

FRAND as to its worldwide portfolio rate offer), Huawei has suggested that it will withdraw its

request for a global FRAND adjudication in its U.S. case. Woodin Decl., Ex. B (Opposition to

Samsung's Motion for Anti-Suit Injunction) (*Huawei v. Samsung*) at 9, fn 10. However, Huawei

has not amended its pleadings. And more importantly, by initially filing the U.S. case and

seeking a global declaration, Huawei acknowledges the power of a U.S. court to adjudicate

whether a licensing offer for a global portfolio complies with FRAND.

Indeed, throughout its dispute with Samsung in the Northern District of California,

Huawei has maintained that the "Court has the power to set worldwide FRAND rates for the

parties' portfolios," Woodin Decl., Ex. B (Opp. to Mot. for Anti-Suit Injunction) at 2. Huawei

has dismissed the notion that the "Chinese litigation somehow undercuts the jurisdiction of this

Court" and has insisted that a U.S. court's worldwide FRAND determination may "resolve the

contractual dispute between [the parties] (including in China)." *Id.* at 1. Huawei therefore

acknowledges that courts—including federal courts in the United States—have the power to

decide whether an SEP holder's offer for a global license to a portfolio of SEPs complies with

the SEP holder's FRAND obligation. *Id.* at 2; *see also id.* at 9, fn 10 (noting the Court has the

power to decide the global contract). That is precisely the issue presented here.

The Northern District of California Court agreed with Huawei. In deciding Samsung's

motion for anti-suit injunction, the court held that "[b]oth parties have presented me with a

breach of contract claim based on the other's alleged failure to abide by its commitments to

ETSI. And the availability of injunctive relief for each party's SEPs depends on the breach of contract claims." *Huawei v. Samsung*, 2018 WL 1784065 at *8. The court also dismissed Samsung's argument that "the breach of contract claims depend on evidence not before me," *id.* at 15, asking, "[h]ow am I to adjudicate whether those offers were FRAND, if that determination depends on valuation of global portfolios and can only be made subsequent to finding each patent valid and essential to the standard?" *Id.* at 14. As plaintiff, Huawei has thus successfully argued that federal courts can resolve this breach of contract issue apart from patent determinations.

    *Huawei v. T-Mobile.* Huawei has previously asserted a similar declaratory judgment claim in this Court against T-Mobile that it was in compliance with FRAND. *See Huawei Techs. Co. Ltd. v. T-Mobile USA Inc., et al.*, 2017 WL 957720, Case 2:16-cv-00715-JRG-RSP (E.D. Tex. Feb. 22, 2017) (denying T-Mobile's motion to dismiss Huawei's declaratory judgment claim for FRAND compliance).

    Huawei's allegations in *T-Mobile* contradict other Huawei assertions that are the predicate for its Motion here, as shown below—namely, that PanOptis' declaratory judgment claim sounds in contract and is not a patent dispute.[6] In *T-Mobile*, Huawei repeatedly urged that its ***contractual*** claim "requires no infringement contentions, no validity contentions, no Markman hearing." Woodin Decl., Ex. C (Huawei's Mot. for FRAND-related CMC) (*Huawei v. T-Mobile*) at 4. In fact, in *T-Mobile*, Huawei championed the idea that courts can and should decide FRAND claims apart from infringement determinations. *Id*. While doing so, Huawei also

---

[6] Huawei also contended that because it asserted infrastructure patents against T-Mobile, and T-Mobile's network is exclusively located in the United States, that its suit against T-Mobile was not actually a request for a global adjudication. Such an argument is not relevant to the facts underlying this dispute given Huawei's global presence. As evidenced in *Huawei v. Samsung*, when faced with a licensee with global sales, Huawei firmly believes a global adjudication is both necessary and proper.

noted that its four patent infringement actions and declaratory judgment action "all involve significant overlapping evidence," *id.* at 1, and all "arise out of the same set of operative facts." *Id.* at 2. This is in direct contradiction to Huawei's predicate assertions for the present Motion.

### D.   Huawei's Contradictory Positions Taken In Courts Outside The U.S.

*Huawei v. PanOptis* (Shenzhen Intermediate People's Court). On July 6, 2017, Huawei filed claims against PanOptis and its affiliates in China seeking "[e]ntry of judgment declaring that the licensing terms of the essential patents declared to comply with the 2G, 3G, and 4G standards …violate the fair, reasonable, and nondiscriminatory principle (hereinafter referred to as 'FRAND' principle)." Dkt. 77-1 (1673 Complaint). Huawei asserts claims in China that mirror PanOptis' declaratory judgment claim here. And Huawei's claims in China are not limited to PanOptis' Chinese standard essential patents: Huawei's complaint provides that the "relevant geographic markets include China and other markets within the jurisdictions in which the Plaintiffs require licenses for the standard-essential patents." *Id.* at 5.

*Huawei v. Samsung* (Shenzhen Intermediate People's Court, No.816, 840 of 2016). In May 2016, Huawei filed 11 separate actions in China against Samsung, ten of which it filed in the Intermediate People's Court of Shenzhen—two of which have gone to trial. *Huawei v. Samsung*, 2018 WL 1784065, at *2-*3. The Shenzhen Court issued orders on January 11, 2018 finding infringement and enjoining future infringement. *Id.* Huawei successfully argued that its behavior "complied with FRAND principles" and that six pre-suit global offers to Samsung "were made within the reasonable range according to the strength of SEPs owned by Huawei." *Id.* *3. Huawei has thus acknowledged—and successfully argued—that a single court can determine the contractual breach question, while evaluating a global offer.

### III.     Argument and Authorities

### A.     Federal Question Jurisdiction

Huawei argues that federal question jurisdiction does not exist over PanOptis' claim and seeks to limit the declaration of FRAND compliance to only U.S. patents. This is nonsensical because PanOptis made offers to license its worldwide portfolio. Dkt. 147-4. The current offer to be adjudicated has ████████████████████████████ *Id*. Not only is PanOptis' offer not broken out country-by-country, Huawei has professed to needing a license in every jurisdiction in which PanOptis has standard essential patents. Dkt. 77-1 (1673 Complaint) at 5. Thus, the only offer to adjudicate is a worldwide offer.

In addition to PanOptis' declaratory judgment claim requesting an adjudication that PanOptis has not breached a contract regarding offers for a ***worldwide license***, Huawei put PanOptis' compliance with the FRAND commitment directly at issue in its affirmative defenses. Huawei's breach of contract assertion against PanOptis relates to a worldwide contract with ETSI, and a worldwide license offer to Huawei. *TCL v. Ericsson*, *Microsoft v. Motorola*, *Huawei v. Samsung*, and *Huawei v. T-Mobile* show that federal district courts have the power to adjudicate the global breach of contract claim created by the FRAND commitment. This is unsurprising; courts around the world routinely decide breach of contract claims.

No court has held that there is no federal question jurisdiction over an affirmative declaratory judgment claim for FRAND compliance, and the Court need not do so here. Supplemental jurisdiction provides authority for it to adjudicate PanOptis' claim.

Huawei's alternative to this Court deciding PanOptis' claim is for PanOptis to seek an adjudication of FRAND compliance by filing separate suits in every country in which it owns patents, starting with FRAND compliance as to only U.S. patents here. This would require

PanOptis to bring at least ▇ lawsuits in ▇ countries—and ultimately require those ▇ courts to determine whether the *same* offer breaches the *same* contract based on the *same* facts. In addition to being an unnecessary waste of judicial resources, such a hold-out friendly policy would render relief virtually unobtainable to PanOptis.

### B.   Numerous Courts Have Made FRAND Determinations Regarding A Global Offer

Numerous courts around the world determined compliance with the global FRAND contract, by adjudicating a global rate or evaluating a global offer.

In the federal district court for the Central District of California, for example, TCL sued against Ericsson, alleging breach of contract and seeking declaratory judgment of breach of contract. *TCL Communications Technology Holdings, Ltd. et al. v. Telefonaktiebolaget LM Ericsson et al.,* Case No. 8:14-cv-341-JVS-DFMx. The *TCL* court evaluated Ericsson's global offers and, upon finding them inconsistent with the FRAND commitment, determined FRAND rates for a worldwide license. 2017 WL 6611635 at *54 (C.D. Cal. Dec. 21, 2017). Huawei, too, has brought declaratory judgment actions for FRAND compliance—and strenuously advocated that adjudicating a global offer is appropriate. See Section II.C, *supra* (discussing *Huawei v. T-Mobile* and *Huawei v. Samsung*). Courts have also adjudicated this question in the context of "RAND" licensing commitments made to other standard-setting organizations. *E.g., Microsoft Corp. v. Motorola, Inc.,* No. C10-1823JLR, 2013 WL 2111217, at *2 (W.D. Wash. Apr. 25, 2013) (determining a RAND royalty range after evaluating a worldwide license offer from Motorola).

Courts outside the United States have adjudicated whether parties have breached the global FRAND contract. As discussed above, in the *Unwired Planet v. Huawei* case, a United Kingdom court adjudicated a global offer for FRAND compliance and determined global

FRAND rates. [2017] EWHC 2988 (Pat), Case No. HP-2014-000005. The European Commission, for its part, has issued a lengthy opinion titled "Setting out the EU approach to Standard Essential Patents" and listed as a principle of SEP licensing: "For products with a global circulation, SEP licences granted on a worldwide basis may contribute to a more efficient approach and therefore can be compatible with FRAND." Woodin Decl., Ex. I at 8.

The People's Intermediate Court in Shenzhen, China has also adjudicated compliance with the FRAND commitment vis-à-vis a global offer, in the recently-decided *Huawei v. Samsung* case. There, the Court considered whether Huawei's worldwide offers and negotiation conduct complied with its contractual commitment to ETSI, and in turn whether Samsung's conduct complied with its mirror image contractual commitment. The Court determined that Huawei's worldwide offers fell into the reasonable range, and were not in breach of Huawei's contractual commitment, and enjoined Samsung after finding that Samsung infringed certain asserted SEPs (in addition to breaching the FRAND contract with its negotiation conduct). *Huawei v. Samsung,* 2018 WL 1784065 at *3.

On May 15, 2018, the Guangdong High People's Court in China issued guidelines for deciding cases involving SEPs, also recognizing the possibility of global FRAND determinations. Woodin Decl., Ex. J. These guidelines provide explicitly that a court can make a judicial determination exceeding the "territory scope of the court," if the other party does not object or if the objection is unreasonable. *Id*. ¶16.

### C.    Huawei Should Be Judicially Estopped From Making the Arguments in its Motion

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (citing 18 James Wm. Moore et al.,

Moore's Federal Practice § 134.30 at 63 (3d ed.2011)). In the Fifth Circuit, in assessing whether judicial estoppel should apply, courts examine whether the following elements are present: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* (gathering authority).

In bringing this motion, Huawei has taken positions inconsistent with those taken in other district courts, including in front of this Court. Huawei now argues that (1) PanOptis' claim implicates U.S. and foreign patent law infringement, validity, and damages law, and (2) PanOptis' claim is therefore not solely a single contractual question. Specifically, Huawei splits PanOptis' single contractual claim into "U.S. Patents" and "Non-U.S. Patents," and argues:

- The FRAND question "involves a determination as to whether the royalty offered comports with the issuing country's standards for setting royalties" and "[w]here two different country's [sic] patent laws are at issue, the issues are *not* the same." Mot. at 7-8.

- Novel questions of law exist because there are issues of "foreign law" and "require[] a determination as to whether the royalty rate offered meets the FRAND obligation as defined by the various relevant foreign jurisdictions." Mot. at 9.

- There is precedent from the Federal Circuit, *Voda v. Cordis Corp.*, that Courts should decline to decide issues of foreign law (Mot. at 10-11), and that courts should not exercise jurisdiction over foreign patent claims. Mot. at 12.

Huawei should be estopped from making the above arguments because they directly contradict arguments Huawei has made, and prevailed on, previously. Specifically, Huawei should be estopped from arguing that patent law (and foreign patent law in particular) is implicated by PanOptis' request for a declaration that it has complied with FRAND, and that PanOptis' claim asks anything but a single breach of contract question.

***First***, Huawei filed a declaratory judgment action for FRAND compliance in this Court against T-Mobile, *Huawei v. T-Mobile*, Case 2:16-cv-00715-JRG-RSP (E.D. Tex.), arguing that

a FRAND compliance determination does not involve adjudications of infringement or

calculation of individual royalties. In that case, T-Mobile moved to dismiss, and Huawei

responded, arguing that:

- "T-Mobile's discussion of this case's impact on its infringement of Huawei's patents, or on its obligation to pay a royalty to Huawei, misses the mark. . . But Huawei's Complaint does not ask the Court to find that Huawei is entitled to royalties from T-Mobile, nor does it ask the Court to order T-Mobile to pay any such royalties. Instead, the issue is whether Huawei's offer to T-Mobile complied with its FRAND obligation and resolution of that question would also establish the futility of T-Mobile's threatened contract allegations based thereon." Woodin Decl., Ex. E (MTD Opp. at 8).

- "T-Mobile wrongly focuses on Huawei's patent infringement allegations in other cases, rather than T-Mobile's contractual allegations against Huawei in this case." Woodin Decl. Ex, E (MTD Opp. 12).

The Court denied T-Mobile's motion to dismiss, agreeing with Huawei that the declaratory

judgment claim was contractual in nature. *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, 2017

WL 957720 (E.D. Tex. Feb. 22, 2017) ("T-Mobile's statements regarding Huawei's breach of

FRAND commitments, coupled with the absence of an unequivocal statement indicating that T-

Mobile would not pursue a breach of contract action, reasonably demonstrate T-Mobile's intent

to pursue such an action.") (Report and Recommendation adopted, March 9, 2017). Huawei

therefore prevailed on its argument that its claim for declaratory judgment was contractual in

nature and ***did not require*** adjudication of patent law issues.

 ***Second***, Huawei successfully argued in its case against Samsung pending in the Northern

District of California that a declaratory judgment claim that Huawei had complied with FRAND

did not implicate national patent law, and in fact, called such an assertion an "extreme position":

- "Samsung [] takes the extreme position that the Court cannot resolve the impasse without adjudicating infringement, validity, and enforceability of the relatively few patents asserted in this litigation, as well as of the hundreds or thousands of other SEPs in the companies' portfolios. That is incorrect as a matter of law and at odds with recently developed jurisprudence in this area." Woodin Decl., Ex. D (Huawei's Mot. to Bifurcate) at 1.

15

- "Samsung's argument is based on a false premise – that a 'jury must first determine the disputed questions of patent validity, infringement enforceability, and essentiality to the relevant standards before even reaching the FRAND issues.' Dkt. 67 at 6. While those issues might be disputed in the context of infringement of the asserted SEPs, their resolution is not a prerequisite to adjudicating the parties' FRAND claims, which are based on contractual obligations to grant licenses to the hundreds or thousands of SEPs of each side and do not seek redress for patent infringement." Woodin Decl., Ex D. (Huawei's Mot to Bifurcate) at 2.

- "[] Huawei believes that the Court has the power to set worldwide rates given the global scope of the parties' patents subject to underlying FRAND commitments, the parties' prior negotiations, and the parties' global sales of standard compliant products, *see Microsoft II*, 696 F.3d at 885 ("[I]t is clear that there is a contract, that it is enforceable by Microsoft, and that it encompasses not just U.S. patents but also the patents at issue in the German suit.")…" Woodin Decl., Ex. B (Opp. to Mot. for Anti-Suit Injunction) at 9, fn 10.

While the court denied Huawei's motion for bifurcation (and granted Samsung's motion for anti-suit injunction), the court agreed with Huawei on the points upon which this estoppel request is based. The court noted that, under Samsung's logic, there would be no way for the court to decide the ***global*** breach of contract question before it, and ultimately held Samsung was judicially estopped from arguing that such a determination would depend on issues not before the court—such as foreign patent law. *Huawei v. Samsung,* 2018 WL 1784065 at *8-*9.

Having previously argued (1) that a FRAND declaratory judgment claim is **contractual** in nature, and properly decided **by a single court**, and (2) that an adjudication of FRAND compliance **does not implicate** issues of patent law (in the form of either U.S. patent law or foreign patent law), Huawei should be judicially estopped from taking a contrary position now. In both cases, Huawei prevailed on these issues, and Huawei's arguments here are plainly inconsistent with the positions it took previously. *Reed v. City of Arlington*, 650 F.3d at 573–74.

Since these arguments form the entire basis of Huawei's Motion that (1) supplemental jurisdiction is not proper; (2) this Court should decline to exercise supplemental jurisdiction; and (3) PanOptis' claim can and should be unilaterally split into separate causes of action because of

underlying patent law issues, the application of judicial estoppel to these issues would moot Huawei's Motion to Dismiss.

### D.    Supplemental Jurisdiction Is Proper Under 28 U.S.C. § 1367

Where district courts have original jurisdiction, they "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. §1367(a). Contrary to Huawei's suggestion, the supplemental jurisdiction statute need not be specifically pled. *Mendoza*, 532 F.3d at 346 (It is "well settled that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute") (quoting *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir.1980)).

To satisfy the relatedness requirement of 28 U.S.C. § 1367(a), "[t]he state and federal claims must derive from a common nucleus of operative fact . . . such that [it] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). In other words, if they are "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Importantly, this analysis revolves around whether claims involve the same **facts**; of course, different claims necessarily implicate different law. Generally, claims arise out of a common nucleus of operative fact when they "involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (a sufficient relationship will be found if "the facts underlying the federal and state claims

17

substantially overlap[] . . . or where presentation of the federal claim necessarily b[rings] the facts underlying the state claim before the court").

Huawei argues that there is no supplemental jurisdiction under §1367(a) because PanOptis' FRAND claim and the patent infringement causes of action do not arise out of the same "case or controversy." Huawei's position is belied by its own affirmative defenses—which nearly all raise breach of FRAND—and is entirely premised on separating PanOptis' single cause of action into many, attempting to force PanOptis to litigate country-by-country. But PanOptis' claim is in fact based on a **single contractual commitment** and a **worldwide offer**, and it implicates the same common nucleus of facts as PanOptis' infringement claims. In addition, both PanOptis' and Huawei's damages case for the asserted U.S. SEPs rely on the global FRAND rate for PanOptis' patent families, which is then extrapolated to the United States patents at issue here. Supplemental jurisdiction is therefore proper.

### 1.   Huawei cannot separate PanOptis' Declaratory Judgment claim into "U.S. Patents" and "Non-U.S. Patents"

Huawei's entire argument is premised on the fact that it can rewrite PanOptis' declaratory judgment claim regarding *a worldwide license* into a claim regarding breach only as to PanOptis' U.S. patents. Dkt. 145 at 6-7. Huawei does not contest that breach of the FRAND contract implicates the same nucleus of common facts as the other claims in the case. Nor could it, since Huawei has pled breach of FRAND as a basis for its *affirmative defenses* to patent infringement. To decide Huawei's affirmative defense, the Court will need to evaluate the very same set of facts that PanOptis' declaratory judgment claim implicates.

Instead of arguing that PanOptis' claim, as it exists, implicates a different set of facts, Huawei's brief constructs a straw man, and argues that there is no common nucleus of fact between "the non-U.S. patent FRAND claim and the U.S. patent claims asserted in this case"

18

because different countries' patent laws are not the same issues. Dkt. 145 at 7-8 (citing *Stein Associates, Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984)). But there is no "non-U.S. patent FRAND claim" in this case: there are patent infringement claims (Counts I-VII) and a claim for declaratory judgment that PanOptis complied with its contractual obligations in its negotiations with Huawei over a worldwide license (Count IX).

Specifically, PanOptis' claim poses a single question—whether PanOptis' global portfolio offer breached its contractual FRAND commitment. *Huawei v. T-Mobile*, Case No. 2:16-cv-00715, Dkt. 1 (E.D. Tex., July 5, 2016) (Huawei's Complaint requesting a declaratory judgment as to FRAND compliance); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012) (in the context of a global RAND commitment, noting that: "the face of the contract makes clear that it encompasses not just U.S. patents, but all of Motorola's standard-essential patents worldwide. When that contract is enforced by a U.S. court, the U.S. court is not enforcing German patent law but, rather, the private law of the contract between the parties."). To answer this question—and resolve both PanOptis' claim and Huawei's mirror-image defenses—the Court must evaluate the worldwide license PanOptis actually offered, not a hypothetical U.S.-only license PanOptis never offered. Huawei's attempt to force PanOptis to litigate FRAND compliance patent-by-patent or country-by-county has no basis in the language of the contract.

This Court should decline to entertain Huawei's attempt to split PanOptis' claim into over ██ separate claims,[7] and evaluate whether it has supplemental jurisdiction over the claim as pled, not as reimagined by Huawei.

---

[7] PanOptis owns standard essential patents in at least ██ countries. Woodin Decl., Ex. H (Akemann Ex. 13b2).

**2.     The question of breach of FRAND is part of the same "case or controversy" under 28 U.S.C. § 1367(a)**

PanOptis' declaratory judgment claim asks the Court to determine that PanOptis has complied with its contractual commitment in the parties' negotiations over a worldwide license. Huawei does not seriously dispute that the breach of FRAND claims are part of the same "case or controversy." Nor could it; six of Huawei's affirmative defenses require adjudication of the very same issue, and Huawei has previously argued to this court that patent infringement cases and a declaratory judgment claim for FRAND compliance "arise from the same set of operative facts." Woodin Decl., Ex. C (Huawei's Mot. for a FRAND-related CMC). The question of whether PanOptis' global offers comply with its FRAND commitment is inextricably tied to the facts and evidence that will be presented at trial.

The nucleus of common fact involves at least the parties' negotiations over a license to PanOptis' portfolio of standard essential patents, Huawei's use of technology claimed in PanOptis' standard essential patents, PanOptis' standard essential patents, and PanOptis' prior licenses. PanOptis' claim therefore implicates facts and witnesses that overlap with the facts and witnesses implicated by PanOptis' claims for patent infringement damages: testimony from Huawei licensing professionals that negotiated with PanOptis and handle Huawei's in-bound and out-bound patent licensing, testimony from PanOptis witnesses who license PanOptis patents and ensure PanOptis complies with its contractual commitments, evidence from the parties' negotiation history, PanOptis' other standard essential license agreements, and testimony from various experts from each of the parties.  And under Federal Circuit precedent, damages for infringement of SEPs *must comply* with a party's FRAND or RAND contractual commitment— meaning that patent damages will necessarily require consideration of the same facts and evidence as PanOptis' declaratory judgment claim. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d

20

1201, 1235 (Fed. Cir. 2014) (holding that a jury must be instructed with respect to RAND).

Absent from Huawei's motion is any mention of its FRAND affirmative defenses to PanOptis' claims of patent infringement. Huawei's affirmative defenses implicate the very same evidence as PanOptis' declaratory judgment claim, because the question presented by PanOptis' claim and Huawei's defenses is the same: whether PanOptis' offer for global portfolio licenses breached its FRAND obligations. There is no credible argument that *different* evidence or *different* witnesses apply to Huawei's affirmative defenses regarding FRAND. As Huawei has already acknowledged, deciding these affirmative defenses will *necessarily* require evaluating PanOptis' latest "worldwide" offer:

> Yes, it is the case that we're going to be talking in this case about PanOptis's worldwide offer. That's the only offer they've made. They made a worldwide offer. That is going to be an issue with respect to whether there's a FRAND defense to the patents in this case.

Oct. 17, 2017 Hrg'g Tr. 46:22-25, Dkt. 103. Determining this issue is exactly what PanOptis' declaratory judgment requests.

Importantly, the record in this case is complete—fact and expert discovery is closed, and summary judgment motions are pending. The factual record for trial, including for disposition of PanOptis' declaratory judgment claim, is fully developed. Yet Huawei's motion presents nothing more than the conclusory statement that different witnesses and different evidence apply to non-existent "non-U.S." FRAND claims. If PanOptis were forced to litigate its FRAND dispute on a country-by-country basis, all around the world, the courts would be evaluating the *same* global offers from PanOptis at issue here, hearing from the *same* witnesses from PanOptis and Huawei that have testified in this case, and deciding the *same* breach of contract question.

### E.    The Court Should Not Decline to Exercise Supplemental Jurisdiction Under 28 U.S.C. § 1367(c)

Huawei argues that the Court should decline to exercise supplemental jurisdiction,

because adjudicating the FRAND claim would not be a good expenditure of judicial resources. But Huawei provides no persuasive reason to do so under the factors provided in § 1367(c), which, along with the common law equity factors, weigh ***against*** declining to exercise supplemental jurisdiction.

Section 1367 authorizes a court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, if there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Courts evaluate the statutory factors of 28 U.S.C. § 1367(c), as well as the common law factors of judicial economy, convenience, fairness, and comity, in evaluating whether to exercise supplemental jurisdiction. *Mendoza*, 532 F.3d at 346. The statutory factors and common law factors are weighed and considered together. *Enoch v. Lampasas Cnty*, 641 F.3d 155, 160 (5th Cir. 2011). No specific factor, though, is dispositive. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992). For example, in considering the common law factors, federal district courts routinely exercise jurisdiction over claims, even after federal claims have been ***dismissed***, *c.f.* § 1367(c), when a significant amount of judicial resources has been expended. *E.g.*, *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (2009) (gathering authority).

Huawei's argument under § 1367(c) is entirely premised on the incorrect notion that deciding whether PanOptis breached its contract requires adjudications of foreign patent law. This Court should decline Huawei's invitation, because Huawei provides no reason for the Court to decline to exercise supplemental jurisdiction under § 1367(c), and fairness, judicial economy,

comity, and convenience weigh in favor of exercising jurisdiction over PanOptis' declaratory judgment claim.

> **1.      There are no novel or complex issues of State or foreign law that warrant dismissing this claim under § 1367(c)(1).**

Huawei argues there are novel or complex issues of foreign law, citing inapposite precedent related to the determination of infringement and validity of foreign patents. This authority provides no reason for this Court to decline to exercise supplemental jurisdiction under § 1367(c)(1), because PanOptis' claim does not raise novel issue, it raises the exact same issue as Huawei's affirmative defenses to PanOptis' patent infringement claims.

Unlike the *Voda* case cited by Huawei, PanOptis' declaratory judgment claim requires adjudication of PanOptis' global offer—just as Huawei's affirmative defenses of breach of FRAND require adjudication of PanOptis' global offer. PanOptis' claim does not require adjudicating infringement or validity of foreign patents. It requires determining whether PanOptis has breached a contract with its offer for a worldwide license. *See Microsoft*, 696 F.3d at 884-885 (noting that: "When [the RAND contract] is enforced by a U.S. court, the U.S. court is not enforcing German patent law but, rather, the private law of the contract between the parties."). Huawei agrees, and has previously argued that no foreign issues of patent law are implicated, when it had brought a similar claim. [8]

Even assuming that these FRAND issues are novel or complex, Huawei provides no justification a Texas State Court, instead of this Court, should consider them. There is a growing body of law on FRAND and RAND issues in the United States—from *TCL v. Ericsson* to

---

[8] In California, Huawei rejected Samsung's argument that "the Court cannot determine a FRAND royalty rate without first adjudicating the infringement and validity issues for all the thousands of patent at issue," noting it was "tantamount to simply saying that the Court lacks the power to set a FRAND rate – a proposition rejected by numerous courts." Ex. F (Huawei's CMC Proposal) (*Huawei v. Samsung*) at 6; *see also* Section III.D, *infra*.

*Microsoft v. Motorola*, to Federal Circuit precedent such as *CSIRO v. Cisco* and *Ericsson v. D-Link*.[9] A court needs to have jurisdiction to decide whether a party has breached this global contract, and the complex issues involved in this case provide no reason why **this Court** is less suited than a state or foreign court.

### 2.     The FRAND claim does not "substantially predominate" over the original claims at issue under § 1367(c)(2).

Huawei next argues that PanOptis' FRAND claim will "substantially predominate" the original claims, again citing the inapposite *Voda* case. Huawei is incorrect because, again, PanOptis' declaratory judgment claim implicates the very same facts, evidence, and determinations that make up the patent infringement claims and associated defenses. A state law claim may substantially predominate the federal claim in terms of proof, scope of issues raised, or relief sought. *Gibbs*, 383 U.S. at 726. "[T]he process of determining whether state law claims 'substantially predominate' over their federal counterparts is far from an exact science." *Inge*, 2016 WL 4920288, at *6. Courts have looked to the number of federal claims versus the number of state law claims and compared the total amount of damages asserted for each. *Id.* (*citing Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *6 (W.D. Tex. Mar. 2, 2010)). "A state law claim substantially predominates where the state claim constitutes the real body of the case, to which the federal claim is only an appendage." *Kelly v. Allen Indep. Sch. Dist.*, No. 4:12-CV-00756, 2013 WL 12171754, at *2 (E.D. Tex. June 21, 2013), *report and recommendation adopted,* No. 4:12CV756, 2013 WL 12171755 (E.D. Tex. July 21, 2013).

The claim here does not "substantially predominate" for the very same reason that supplemental jurisdiction exists under § 1367(a). In addition to implicating similar facts to

---

[9] *TCL v. Ericsson*, 2017 WL 6611635; *Microsoft v. Motorola* , 2013 WL 2111217; *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014); *CSIRO v. Cisco Sys., Inc.*, 809 F. 3d 1295 (Fed. Cir. 2015).

infringement damages and willful infringement, the facts necessary to prove Huawei's affirmative defenses to PanOptis' infringement claims are the **very same facts** that are needed to decide PanOptis' declaratory judgment claim. Far from substantially predominating, the breach of contract question is central to the parties' dispute, and declining to exercise supplemental jurisdiction would require the parties to litigate the same facts in a different forum. *E.g.*, *Gibbs*, 383 U.S. at 725 (noting that courts should consider whether "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding"); *Kelly*, 2013 WL 12171754 at *3 (exercising supplemental jurisdiction where the same facts were implicated in both federal and state claims).

### 3.    Huawei's "compelling reasons" are not exceptional circumstances that warrant declining supplemental jurisdiction under § 1367(c)(4).

Huawei finally argues that there are "compelling reasons" that are "exceptional circumstances" to warrant declining supplemental jurisdiction under § 1367(c)(4). Huawei provides two reasons: the presence of patent actions in China and Germany, and the ETSI contract. Neither is persuasive.

*First*, Huawei's entire body of authority rests on the premise that PanOptis' declaratory judgment requires adjudicating foreign patent claims. Not so. PanOptis has not asked this court to apply foreign patent law and adjudicate infringement, validity, or damages; PanOptis has asked for a declaratory judgment that it has not breached a contract. This Court should not decline to exercise supplemental jurisdiction over PanOptis' first-filed FRAND claim in this case because other cases involve claims or defenses that touch on similar issues. Indeed, Huawei suggested, and this Court agreed, that the cases could proceed in parallel. Dkt. 137.

*Second*, Huawei points to the ETSI contract, which notes that disputes over intellectual property should be decided by the "national court<u>s</u>." But ETSI does not specify which court, and

25

the contractual commitment is *by rule* a commitment made on behalf of every related patent—spanning jurisdictions. *See supra*, II.B. PanOptis' declarations, which form the contract, thus encompass both U.S. and non-U.S. patents. *E.g. Microsoft*, 696 F.3d at 885 (noting that the RAND contract encompasses both U.S. and non-U.S. patents). PanOptis' offer, which forms the basis for the parties' dispute over the contract, likewise encompasses both U.S. and non-U.S. patents. Whether the worldwide offer complied with the worldwide contract forms the basis of the parties' controversy, and PanOptis is entitled to have a "national court" adjudicate that dispute—and PanOptis, the plaintiff in this first-filed case, chose this one.

### 4.    Common law factors of convenience, judicial economy, fairness, and comity weigh against declining to exercise supplemental jurisdiction under § 1367(c).

Courts evaluate the statutory factors of 28 U.S.C. § 1367(c), as well as the common law factors of judicial economy, convenience, fairness, and comity, in evaluating whether to exercise supplemental jurisdiction. *Mendoza,* 532 F.3d at 346 (citations omitted). Here, each of these factors weighs ***against*** declining to exercise supplemental jurisdiction.

<u>Judicial Economy and convenience</u>. This case is set for trial in less than three months. Fact discovery is complete, expert discovery is complete, and this motion will be completely briefed with several motions to strike. Summary judgment briefing will be completed soon after. The late stage of the case particularly weighs in favor of exercising jurisdiction here, where Huawei waited nearly a year to bring this motion after answering and waited over seven months after first suggesting it might make such a motion at a hearing. During that time, the parties have conducted extensive discovery, including depositions in Hong Kong, expert reports, and expert depositions, making Huawei's choice of timing not just inconvenient, but unfair.

This Court is familiar with the case, the parties, and these issues, and it would not serve

interests of judicial economy or convenience for PanOptis to have to bring this claim in another court.

Fairness and comity. This is the first-filed case on the issue of FRAND compliance between the parties. Huawei's late-filed motion seeks to shift this case to China, where Huawei would prefer to litigate these issues.[10] But this is a global contract between *PanOptis* and ETSI, and PanOptis brought this case in this Court, to decide whether PanOptis breached its global contract vis-à-vis its offers for a ***worldwide license*** to Huawei.

Huawei's invitation to split PanOptis' cause of action into "U.S. Patents" and "non-U.S. Patents" invites the Court to divide the parties' single contractual dispute into more than ■ separate causes of action and force PanOptis to litigate all over the world. Yet Huawei itself has taken the position in other cases that a single court can, and should, decide this question of breach. The Court should decline Huawei's invitation to render such relief virtually inaccessible to PanOptis by declining to exercise supplemental jurisdiction under § 1367(c).

Considerations of fairness and comity also weigh in favor of exercising supplemental jurisdiction over PanOptis' claim.

## IV.   Conclusion

Because supplemental jurisdiction is proper, Huawei has provided no persuasive reason this Court should decline to exercise supplemental jurisdiction, and in any event should be estopped from making these arguments, Huawei's motion to dismiss should be denied in its entirety.

---

[10] Huawei represents to this Court that the China actions only relate to Chinese patents. Dkt. 137 at 2. Yet, as further addressed above and in PanOptis' pending motion for summary judgment (Dkt. 146 at 2), the plain language of Huawei's complaint shows that the Chinese case concerns *all* jurisdictions in which PanOptis owns standard essential patents.

27

Dated:  May 29, 2018

/s/ Kevin L. Burgess

Kevin L. Burgess – Lead Counsel
Texas State Bar No. 24006927
kburgess@McKoolSmith.com
Steve J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
Scott L. Cole
Texas State Bar No. 00790481
scole@McKoolSmith.com
Lindsay M. Leavitt
Texas State Bar No. 24049544
lleavitt@McKoolSmith.com
Kevin P. Hess
Texas State Bar No. 24087717
khess@McKoolSmith.com
Christine M. Woodin
Texas State Bar No. 24100051
cwoodin@McKoolSmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
MCKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
Jonathan Powers
Texas State Bar No. 24098277

28

jpowers@mckoolsmith.com
Marcus L. Rabinowitz
Texas State Bar No. 24098293
mrabinowitz@McKoolSmith.com
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Eric S. Tautfest
Texas Bar No. 24028534
etautfest@grayreed.com
Jared Hoggan
Texas Bar No. 24065435
jhoggan@grayreed.com
David T. DeZern
Texas Bar No. 24059677
ddezern@grayreed.com
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
David Lisch
Texas Bar No. 24077179
dlisch@grayreed.com
**GRAY REED & MCGRAW, LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY,
LLC, PANOPTIS PATENT
MANAGEMENT, LLC, AND OPTIS
CELLULAR TECHNOLOGY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on May 29, 2018.

*/s/ Kevin L. Burgess*

Kevin L. Burgess

## <u>CERTIFICATE OF AUTHORIZATION TO SEAL</u>

I hereby certify that pursuant to the protective order in the above-captioned case, this motion and the exhibits thereto contain confidential information. Accordingly, this document is to be filed under seal.

*/s/ Kevin L. Burgess*

Kevin L. Burgess