# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, PANOPTIS PATENT MANAGEMENT, LLC, OPTIS CELLULAR TECHNOLOGY, LLC., § § § § § *Plaintiffs*, § § v. § § HUAWEI TECHNOLOGIES CO. LTD., § HUAWEI DEVICE USA, INC., HUAWEI § DEVICE CO. LTD., § § *Defendants*. § | Case No. 2:17-cv-00123-JRG-RSP |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION

This is a patent infringement lawsuit involving six patents that the plaintiffs (referred to as "PanOptis" for short) allege are infringed by Huawei. PanOptis bought the patents from Ericsson and Panasonic after they had declared them essential to the L.T.E., or Long-Term Evolution, cellular standard. PanOptis alleges that Huawei infringes these patents by making, selling, and importing phones and tablets that are compatible with the L.T.E. standard. Trial is scheduled to start August 20, 2018. This opinion includes orders and recommendations on the pretrial motions. The only pending motion not resolved herein is a motion that came later than the others, a motion to strike an opinion of a fact witness (ECF 188), which the court will hear and decide at the pretrial conference.

## DISCUSSION

The pending motions fall into three categories—motions to strike, motions for summary judgment, and a motion to dismiss. Aside from a motion to strike some relatively unimportant data

that was disclosed too late, and Huawei's motion to dismiss, the relief requested by the parties should be denied.

## Motions to Strike

*Madisetti's Android Video Codec Opinion (ECF 143)*

There are different ways of showing infringement of a standard essential patent. One could indirectly prove infringement by showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim. This indirect evidence approach may not require significant analysis of the accused product. However, it relies upon a necessary inference tying the product to the standard and the standard to the claim. The downside is that if the patent is not found to be essential to the standard, the link between the product and the patent breaks.[1]

Another way is the ordinary way of proving infringement, by comparing the claims to the accused product. This bypasses the indirect, necessary inference. The advantage is that a party can establish infringement even if the asserted claims of the patent are found to be nonessential to the standard.[2]

---

[1] *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("We agree that claims should be compared to the accused product to determine infringement. However, if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product. We accepted this approach in *Dynacore* where the court held a claim not infringed by comparing it to an industry standard rather than an accused product.")

[2] *Id.* at 1327-28 ("We acknowledge, however, that in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement. Or, as with the '952 patent, the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section. In these instances, it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes. In these cases, the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the

PanOptis' contentions do not expressly commit to either approach. At least with respect to the video codec limitation of the '238 patent, their infringement contentions cite mainly to the relevant H.264 standard. The contentions allege in places, for example, that the accused products include an "H.264 video codec," or a codec compliant with the H.264 standard. *See* ECF 143-2 at 12. For support, the contentions cite to sections of the H.264 standard rather than any specific hardware or software of the accused device. *See id.* at 13-33. In other places, the contentions point to features of the accused devices and emphasize that the accused devices include the Google Android operating system. *See id.* at 2. The contentions also include a table identifying the "encoder" as "Android 3.0+." *See id.* at 8-9.

The Court finds that the contentions do put Huawei on notice that the infringement theory relies upon the Android OS to satisfy some of the claim limitations. A video codec is hardware or software that compresses or decompresses digital video. PanOptis' contentions are clear enough that the video codec limitation is not satisfied by hardware—they identify "Android 3.0+" as the "encoder," ECF 143-2 at 8-9, and there are no signs of any responsible hardware. The Court is sympathetic to Huawei's complaint that there should have been greater specificity in the references to the Android OS, especially since it is publicly available and was produced early in the discovery process. This issue should have been nailed down during discovery. A conference with opposing counsel, or a discovery motion if necessary, could have avoided the surprise when the issue surfaced in Dr. Vijay Madisetti's expert report.

---

standard.").

Having said that, Huawei is not correct that the local rules require a citation to evidence in infringement contentions. Neither evidence nor expert testimony is required, but the *theory* of infringement must spelled out, and the theory must identify the part of the accused product that satisfies each claim element. *See Kroy IP Holdings, LLC v. AutoZone, Inc.*, No. 2:13-cv-888-WCB, 2014 WL 7463099, at *2 (E.D. Tex. Dec. 30, 2014) (Bryson, J., sitting by designation).

Raising the issue earlier could have confirmed for Huawei, if it was in doubt, that PanOptis was relying on direct evidence about the accused product. It is too late for relief now, because even if there was a discovery violation, it was substantially harmless. Huawei deposed Madisetti about his opinion, and Huawei's own expert included a response to it in his rebuttal report. Huawei argues that it had to hire an additional expert to review source code, but this expert did a number of other things that would have been done regardless of Madisetti's opinion. Huawei has had ample time to review the code. Because the prejudice is minimal and was avoidable, Huawei's motion to strike is denied.

*Madisetti's Video Decoding Simulation Data (ECF 144)*

Madisetti's opinion also includes some data that he gathered in response to Huawei's expert report. Huawei wants the court to strike this data because it was late. During discovery, PanOptis attempted to learn of any non-infringing alternative that Huawei might pursue through an interrogatory. Huawei deferred the issue for their rebuttal report, and PanOptis did not pursue it further.

The issue of non-infringing alternatives then came up in an unusual way. Despite the fact that alternatives did not appear to be an issue, Madisetti's opening report discusses a "hypothetical" non-infringing alternative, apparently designed to show how inferior one could be. This hypothetical prompted Huawei's expert, Dr. Dan Schonfeld, to run simulations showing that

Madisetti's analysis was flawed. Schonfeld's simulations in turn prompted Madisetti to obtain additional data. When Madisetti was deposed, he referred to this data over objection by Huawei's counsel. When the deposition was almost over, PanOptis' counsel, on redirect, introduced an exhibit showing Madisetti's additional data.

The rub with PanOptis' argument is that Madisetti's data had been compiled no later than May 7, the day before Huawei was scheduled to depose him. But PanOptis did not disclose the data beforehand and instead waited until the redirect examination of the deposition.

PanOptis' view is that Huawei's counsel opened the door by asking about "other alternatives" and "tests or simulations of any kind relating to any of the other alternatives," despite knowing that Madisetti's report only discussed one hypothetical alternative. ECF 159 at 3. PanOptis insists that it was proper to introduce the data during redirect because it is proper to cover cross-examination topics during redirect. *Id.* at 3-4 (citing *C.P. Intests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 699 (5th Cir. 2001)). However, the Court finds that Huawei never opened the door. When Huawei's counsel asked about "other alternatives," he was asking about other alternatives Madisetti might have considered in forming his original hypothetical. *Id.* at 3.

The additional data does not appear to be particularly important and there was no good reason for delaying its disclosure until the expert deposition was underway. Requiring Huawei to take another deposition at this point is enough prejudice to outweigh any need PanOptis has for the data. Finally, a continuance would not help because that would delay trial. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 537 (5th Cir. 2003) (affirming district court's refusal to grant continuance when it would "unnecessarily delay the trial"). For those reasons, Huawei's motion to strike Madisetti's additional data is granted.

Motions for Summary Judgment

Before addressing the merits of the summary judgment motions, a point about partial summary judgment in a complex patent case is worth discussing. Before the amendments to Rule 56 of the Federal Rules of Civil Procedure in 2010, courts all over the country disfavored motions for partial summary judgment, particularly in complex cases. *See, e.g.*, *Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 911 F. Supp. 104, 106 (S.D.N.Y. 1995) ("Motions for partial summary judgment are generally disfavored by this court because they lead to orders which are final, but which are unappealable until the entire matter has been adjudicated."). As the New York court put it, a "series of piecemeal motions for summary judgments would waste resources of both the parties and the court, contrary to the objectives of Fed. R. Civ. P. 1." *Tilcon Minerals, Inc. v. Orange and Rockland Utilities, Inc.*, 851 F. Supp. 529, 531 (S.D.N.Y.1994). That court's frustration would have no doubt reached the breaking point in a complex patent case, where there are sometimes half-a-dozen or more motions for partial summary judgment.

The 2010 amendments to Rule 56 may be to blame for partial summary judgment's growing popularity. The first sentence was amended to specify that motions for partial summary judgment were no different from a case-dispositive motion. *See* Fed. R. Civ. P. 56(a) (2010 amendment italicized) ("A party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought."). This amendment was made "to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56, Advisory Committee Notes. The caption was also amended, "(a) Motion for Summary Judgment *or Partial Summary Judgment*." The italicized phrase was added "to describe disposition

of less than the whole action, whether or not the order grants all the relief requested by the motion." *Id.*

Perhaps a result of these amendments, partial summary judgment movants in patent cases apparently believe that if there is no genuine issue for trial on any sub-part of a large case, no matter how deep in the weeds it goes, the court is required to grant summary judgment on that issue. There have been motions for partial summary judgment on questions as detailed as whether one of many asserted claims is infringed under the doctrine of equivalents. Not even whether the claim is infringed—just whether it is infringed in a certain way.

Granting such motions when the rest of the case is proceeding to trial is inherently problematic. If, on appeal, it is determined that there was a genuine issue for the jury, the case would return for another trial. In some cases, partial summary judgment might require retrial of an entire case. Granting partial relief like this, when a trial is going to happen no matter what, does not promote "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. If there really is no genuine issue for trial, it should not be difficult to convince a jury, or the court on a post-trial motion.

The belief in partial summary judgment was also probably strengthened by another 2010 amendment to Rule 56—the change from "should" to "shall." From 1938 to 2007, the rule said that a court "shall" grant summary judgment when there is no genuine issue of material fact. Fed. R. Civ. P. 56, Advisory Committee Notes. In 2007, "shall" was changed to "should," then in 2010, it was changed back to "shall." Fed. R. Civ. P. 56, Advisory Committee Notes.

"Shall" was changed to "should" to recognize the "discretion to deny summary judgment [*even*] when it appears that there is no genuine issue as to any material fact." *Id.* (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-57 (1948)). The Committee Notes emphasized that this

7

discretion was supposed to be exercised sparingly, citing Rule 56(e)(2) and (d)(1) as two instances in which it might make sense. *See id.* But the *Kennedy* case cited in the Notes identifies another good reason to exercise caution with summary judgment in a large, complex case:

> No conclusion in such a case should prudently be rested on an indefinite factual foundation.
>
> * * *
>
> In addition to the welter of new contentions and statutory provisions we must pick our way among over a score of technical contracts, each amending some earlier one, without full background knowledge of the dealings of the parties.
>
> * * *
>
> We do not hold that in the form the controversy took in the District Court that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution . . . .
>
> We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide.

*Kennedy*, 334 U.S. at 255-57.

"Should" went back to "shall" in 2010, but the 2010 "shall" means the same thing it meant before 2007. It never meant that summary judgment *must* be granted when there is no genuine issue of material fact. The 2007 amendment was constrained by a style convention that altogether prohibited use of the word "shall." Fed. R. Civ. P. 56, Committee Notes. Between the two options considered in 2007—"must" or "should"—"should" won because of *Kennedy* discretion. *Id.* The

8

Rules Committee later decided that "should" "created an unacceptable risk of changing the summary-judgment standard." *Id.* "Restoring 'shall' avoid[ed] the unintended consequences of any other word." *Id.* *See* 10A Wright, Miller &Kane, Federal Practice and Procedure: Civil, § 2728 at 537.

Absent a substantive change in the law, though, the 2010 "shall" could not have meant anything different from the 1938-2007 "shall." The Rules Enabling Act authorizes the Supreme Court to "prescribe general rules for the district courts governing practice and procedure." *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 445 (1946). But the Rules cannot "abridge, enlarge, nor modify the substantive rights of any litigant." *Id.* Recognizing these limitations, the Committee explained that neither "must" nor "should" is "suitable in light of the case law on whether a district court has discretion to deny summary judgment when there appears to be no genuine dispute as to any material fact." Fed. R. Civ. P. 56, Committee Notes.

There was no substantive change in the law that eliminated *Kennedy* discretion. The so-called "*Celotex* trilogy" is widely criticized by proponents of the Seventh Amendment as causing to the erosion of civil jury trials in this country. *See* Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 310 (2013). Even aside from these criticisms, it is clear that the trilogy did not overturn *Kennedy*. One case in the trilogy says that trial courts should act "with caution in granting summary judgment" and that trial courts may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To support that last statement, the Court cited *Kennedy*. *Id.* The drafters agree. *See* Fed. R. Civ. P. 56, Advisory Committee Notes.

Motions for partial summary judgment are of course permitted. But in complex cases, they should be "conducive to the conservation of judicial resources and of benefits to the parties." *Bruschini*, 911 F. Supp. at 106. This will rarely be the case when the result of partial relief is cutting an hour or two from a one-week trial. The modest benefit is outweighed by the high risk of error, not to mention the intrusion on the Constitutional right to a jury trial if it turns out there were genuine issues of fact. *See Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART, 2016 WL 7234757, at *1 (E.D. Ky. Dec. 13, 2016) (Thapar, J.) ("In baseball, ties go to the runner. In summary judgment, ties go to the plaintiff. Why? Because civil litigants have a right to a jury trial.").

*Infringement of the '216 Patent (ECF 141)*

Huawei's motion for partial summary judgment of noninfringement of the '216 patent (one of six patents asserted) is one of those motions that is amenable to cautious, *Kennedy* discretion. The question raised by the motion is complex. It is whether the accused products contain an "ordering vector defining an order in which bits forming the reordered mother code word are to be modulated and forwarded to a receiver." *See, e.g.*, ECF 166.

While the Court has concluded that there is a genuine issue of material fact precluding summary judgment on this issue, it should suffice to say that the experts have meaningfully disagreed about where modulation occurs in the accused products. This alone renders partial summary judgment inappropriate.

*PanOptis' FRAND Claim (ECF 146)*

PanOptis' motion for summary judgment on the FRAND claim should also be denied. The motion asks the court to declare, as a matter of law, that PanOptis' global FRAND offer was *fair*, *reasonable*, and *nondiscriminatory*. *See Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 912

(N.D. Ill. 2012) (Posner, J., siting by designation) ("the word 'fair' adds nothing to 'reasonable' and 'nondiscriminatory'"), *rev'd on other grounds*, 757 F.3d 1286 (Fed. Cir. 2014). When the legal question uses words like this, summary judgment is hard to win. *See Worldwide Equip. of TN, Inc. v. United States*, No. CV 14-108-ART, 2016 WL 3574395, at *1 (E.D. Ky. June 23, 2016) (Thapar, J.) ("It's difficult to win summary judgment when the legal question presented uses nebulous adjectives like 'specialty' and 'substantially.'").

Trial needs to occur to resolve a number of factual questions. These include whether PanOptis' offers made during negotiations, as well as its damages claim, are consistent with the FRAND obligation. There is also a genuine dispute about whether the asserted patents are essential to the L.T.E. standard.

*Damages (ECF 142)*

Huawei's motion for partial summary judgment on damages presents the question whether PanOptis provided Huawei sufficient notice of infringement before the lawsuit was filed.

A patentee or licensee who sells a patented article must give infringers notice of infringement before damages can be recovered. 35 U.S.C. § 287(a). An infringer has constructive notice if the patentee marks the article with the patent number. *Id.* Actual notice must come from "an affirmative act on the part of the patentee which informs the defendant of his infringement." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

Huawei argues that PanOptis is not entitled to damages for any infringement of the '216 and '293 patents before February 10, 2017, and March 21, 2017, respectively, when the parties agree actual notice was given. ECF 142. PanOptis and its licensees sold products covered by these two patents, but the products were not marked. *Id.* at 6. Thus, damages cannot be recovered prior to actual notice.

PanOptis argues that actual notice was provided as early as May 13, 2015. The parties began negotiating a global license to PanOptis' patent portfolios in early 2014. On April 2 of that year, PanOptis informed Huawei of their recent patent acquisition. ECF 167-2. The letter said that the patents "read on various mobile telecommunications and infrastructure technologies . . . ." *Id.* Licensing negotiations continued, and on May 13 of the following year, PanOptis gave Huawei a spreadsheet listing the patents, including the '216 and '293 patents, and the spreadsheet correlated the patents to a cellular standard. ECF 167-7 at 9, 37.

The parties' negotiations and correspondence are enough to preclude summary judgment. It is true that actual notice "requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted*, 24 F.3d at 187. And there is no evidence that PanOptis' correspondence with Huawei identified a specific infringing product or device. But "the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). "Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *Id.*

PanOptis' letter and accompanying spreadsheet identified the '216 and '293 patents and their corresponding cellular standards. ECF 167-7 at 9, 37. Huawei argues that this letter and spreadsheet cannot qualify as actual notice "with no indication of the products or even product lines to which the listed patents are applicable and no accusation of infringement." ECF 183 at 2. But the spreadsheet did correlate the patents to the applicable cellular standard, and PanOptis'

April 2014 letter identified "mobile telecommunications and infrastructure technologies" that practiced cellular standards. ECF 167-2.

An accusation of infringement can come in "numerous possible variations in form and content." *SRI*, 127 F.3d at 1470. A reasonable jury might conclude that by identifying the class of devices in the April 2014 letter and the patents and their corresponding cellular standards, PanOptis gave actual notice.

Huawei argues that the court in *Fujitsu Ltd. v. Netgear, Inc.*, saw things differently. *See* No. 07-CV-710-BBC, 2009 WL 3047616, at *8-*9 (W.D. Wis. Sept. 18, 2009), *aff'd in part, rev'd in part*, 620 F.3d 1321 (Fed. Cir. 2010). The patentee in *Fujitsu* sent the defendants letters identifying a group of patents and offering a license. *Id.* at *9. But the letters "failed to identify any specific products that allegedly infringed specific patents." *Id.* Such a failure, the court reasoned, would make defendants "responsible for examining hundreds of products and several dozen patents," which places the potentially infringing party in "an untenable position" of either turning down the license and facing an infringement suit or paying for the license without an adequate understanding of what it covers. *Id.* Thus, the court granted summary judgment limiting damages.

The point made in *Fujitsu* is a good one, but the facts are different here. First, *Fujitsu* may present a different circumstance involving a standard with "many sections that permit wireless devices to function in several ways and still comply with the standard." *Id.* The cellular standards at issue here may be just as complex, but it is hard to tell because Huawei, as movant, has not provided enough detail about them.

Second, the plaintiff in *Fujitsu* appealed, and although the Federal Circuit did not address the actual notice point, it did find genuine issues of material fact precluding summary judgment of

no induced infringement. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1332 (Fed. Cir. 2010). Induced infringement requires that a defendant "induced the infringing acts and knew or should have known that its actions would induce actual infringement." *Id.* at 1331. The licensing letters in *Fujitsu*, which identified the patent-in-suit and standard-compliant products, may have been enough to put the defendant on notice of inducement. *Id.* at 1332. Knowledge for inducement and actual notice for damages are different; the latter focuses on the patentee's affirmative act and the former on the infringer's intent. But a fair takeaway is that if genuine issues of material fact precluded judgment on the inducement claim in *Fujitsu*, genuine issues of material fact preclude partial summary judgment on damages here.

## Huawei's Motion to Dismiss Count IX of the Complaint

PanOptis seeks a declaratory judgment that it "has complied with its obligations arising from declaring its patents essential to various standards, and any applicable laws, during their negotiations with Huawei concerning a worldwide license under the PanOptis standards essential patents." Comp. ¶ 185. In addition to raising issues about United States patents and United States FRAND law, Huawei points out that the declaratory judgment claim implicates foreign patents and foreign FRAND law. ECF 145. Huawei asks the court to dismiss the foreign part of PanOptis' claim, particularly since foreign courts are presently dealing with foreign counterparts to this case.

The parties dispute only whether supplemental jurisdiction exists over the foreign declaratory judgment claim. *See* 28 U.S.C. § 1367. The parties are not diverse—Huawei USA and PanOptis both reside in Texas. And the FRAND declaratory judgment claim seeks a judgment that PanOptis has not breached its FRAND obligation to a third-party beneficiary (Huawei) of PanOptis' agreement with the standard-setting organization. As such, the claim is not a federal

one. *See Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 362-65 (Fed. Cir. 2006). The only basis then for jurisdiction is § 1367.

If the motion did not involve a declaratory judgment claim, and instead was whether supplemental jurisdiction could be exercised to resolve a claim by Huawei that PanOptis breached its FRAND obligations (a breach of contract claim, in other words), then the foreign part of Huawei's claim would be dismissed under § 1367. Huawei's claim would require the court to decide whether PanOptis breached a foreign FRAND obligation with respect to a foreign patent. It would be similar to a foreign infringement claim in that a United States court would have to apply foreign law. Courts in other countries apply their own law governing FRAND compliance and royalty rate determinations, and this law, like foreign infringement law, can be very different from United States law. *See* ECF 145 at 9 n.4.

Federal Circuit precedent led another court to say that "it is almost always an abuse of discretion" to assume supplemental jurisdiction over a foreign patent infringement claim. *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 589 F. Supp. 2d 84, 91 (D. Me. 2008). The Court of Appeals explained why in *Voda v. Cordis Corporation*, 476 F.3d 887, 897-905 (Fed. Cir. 2007). It is hard to see how the reasoning in *Voda* would not apply to a hypothetical breach of contract claim. The only United States district court that seems to have thought otherwise, at least in a case lacking diversity jurisdiction, did not really address the issue because jurisdiction was not raised. All that was said was, "[t]he facts requisite to federal jurisdiction are admitted." *See TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370, 2017 WL 6611635, at *54 (C.D. Cal. Dec. 21, 2017).

The question raised by Huawei's motion is easier because it deals with declaratory relief. The parties devoted their briefing to supplemental jurisdiction but lost sight of the fact that

PanOptis wants a declaratory judgment. "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (Scalia, J.) (quoting 28 U.S.C. § 2201(a)) (emphasis in original). The text of the Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)) (other citations omitted). There is no need to decide whether supplemental jurisdiction under § 1367 exists. At least under the Declaratory Judgment Act, the foreign part of PanOptis' claim should be dismissed for the reasons explained in *Voda*, even if jurisdiction *could* be exercised. *See* 476 F.3d at 897-905. *See also*, *Lotes, Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 2011 WL 13152617, at *4 (N.D. Cal. 2011).

PanOptis' arguments are less about what the law is and more about fairness. One argument is that foreign courts are increasingly making global FRAND determinations, and it would be unfair if United States courts did not follow that trend. Or, it would be unfair to require PanOptis to litigate their FRAND disputes all over the world. But at least some of the foreign courts PanOptis calls attention to are not courts of limited jurisdiction like this one is. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Another argument is that Huawei has asked this court for the very same declaration PanOptis is seeking, and as a result, Huawei is estopped from disputing jurisdiction. But a party cannot confer subject-matter jurisdiction on a federal court through estoppel. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court." *Id.* The motion to dismiss should therefore be granted.

**ORDER AND RECOMMENDATION**

It is ORDERED:

(1) Huawei's motion to strike Madisetti's infringement report (**ECF 143**) is denied.

(2) Huawei's motion to strike Madisetti's video decoding simulation data (**ECF 144**) is granted.

It is further RECOMMENDED:[3]

(1) Huawei's motion for partial summary judgment on the '216 patent (**ECF 141**), the motion to limit damages (**ECF 142**), and PanOptis' motion on the FRAND claim (**ECF 146**), should all be denied.

(2) Huawei's motion to dismiss Count IX of the complaint (**ECF 145**) should be granted as to the non-U.S. patents.

**SIGNED this 11th day of July, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[3] A party's failure to file written objections to the recommendations contained in this report within fourteen days after being served with a copy precludes that party from de novo review by the district judge of those recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).