**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECH., LLC, ET AL.,** | |
| **Plaintiffs,** | **CIVIL ACTION NO.** |
| **v.** | **2:17-cv-123-JRG-RSP** |
| **HUAWEI TECHNOLOGIES CO. LTD., ET AL.,** | **JURY TRIAL REQUESTED** |
| **Defendants.** | |

**PANOPTIS' OBJECTION TO THE MAGISTRATE JUDGE'S**
**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION, DKT. NO. 214**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................................1

II.     DISCUSSION ...........................................................................................................2

        A.      The Recommendation misunderstands the parties' FRAND dispute and PanOptis' declaratory-judgment claim.................................................2

        B.      The Fifth Circuit forbids the kind of analysis that the Recommendation engages in, but requires district courts to consider the seven *Trejo* factors. ...........................................................6

III.    CONCLUSION.........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*,
   149 F.3d 371 (5th Cir. 1998) ...........................................................................7

*Am. Bankers Life Assurance Co. of Fl. v. Overton*,
   128 F. App'x 399 (5th Cir. 2005) ...........................................................6, 7, 8

*Apple, Inc., v. Motorola Mobility*, Inc.,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) ...........................................................3

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   920 F. Supp. 2d 1116 (N.D. Cal. 2013) ...........................................................5

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)...........................3

*Employers Ins. of Wausau v. Burlington N. & Santa Fe Ry Co.*,
   336 F. Supp. 2d 637 (E.D. Tex. 2003)...........................................................6

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ...........................................................4

*Innovative Biodefense, Inc. v. VSP Techs., Inc.*,
   2017 U.S. Dist. LEXIS 176077 (S.D.N.Y. Oct. 24, 2017) ...........................................5

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   2011 WL 13152817 (N.D. Cal. July 14, 2011)...........................................................4

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ...........................................................3, 4, 5

*Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC*,
   No. 2:15-CV-351-JRG, 2018 WL 915125 (E.D. Tex. Feb. 15, 2018) ...........................3, 4

*Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*,
   2008 U.S. Dist. LEXIS 10603 (W.D. Tex. Feb. 13, 2008)...........................................5

*St. Paul Ins. Co. v. Trejo*,
   39 F.3d 585 (5th Cir. 1994) ...........................................................2, 6, 7, 8

*Stewart v. Screen Gems-Emi Music, Inc.*,
   81 F. Supp. 3d 938 (N.D. Cal. Mar. 2, 2015) ...........................................................5

ii

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
  No. 15-cv-2370-JVS, 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017)....................................3, 5

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*,
  996 F.2d 774 (5th Cir. 1993) .......................................................................................................8

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007).........................................................................................3, 4, 5, 8

*Vulcan Materials Co. v. City of Tehuacana*,
  238 F.3d 382 (5th Cir. 2001) ..................................................................................................7, 8

## STATUTES

28 U.S.C. § 1367..........................................................................................................................1, 5

28 U.S.C. § 1367(c) ...........................................................................................................................4

Declaratory Judgment Act ..........................................................................................................2, 6, 7, 8

## OTHER AUTHORITIES

Federal Rules of Civil Procedures 44.1 ...........................................................................................3

## I.      INTRODUCTION

The Magistrate Judge entered a Memorandum Opinion, Order, and Recommendation ("Recommendation") recommending, among other things, that the Court dismiss the "foreign part" of PanOptis' FRAND claim (Count IX), not because it lacks subject-matter jurisdiction (an issue the Recommendation does not decide), but *sua sponte* under the Court's discretion to dismiss claims for declaratory relief—an issue not briefed by the parties. This was in error because (1) there is no "foreign part" of PanOptis' claim for a declaration of FRAND compliance, as its offer to Huawei was a global offer, with no U.S.-only rate, that cannot be accepted on a country-by-country basis; (2) it suggests the extraordinary step of using discretion to *sua sponte* dismiss the "foreign" component of the FRAND claim without considering the Fifth Circuit's test for discretionary dismissals; and (3) it effectively endorsed a paradigm in which patent-owners like PanOptis must litigate FRAND on a country-by-country basis. PanOptis therefore objects to this part of the Recommendation. *See* Dkt. 214 at 14-16.

PanOptis owns a global portfolio of standard essential patents to which it has a single contractual commitment to license on fair, reasonable and non-discriminatory (FRAND) terms. That contract exists between PanOptis and the European Telecommunications Standards Institute (ETSI). Huawei seeks to enforce that promise as a third-party beneficiary. PanOptis has made offers to Huawei that cover its sales made anywhere in the world, and Huawei claimed that PanOptis' global offers were not FRAND, thus accusing PanOptis of breach of contract. PanOptis sought a declaratory judgment here that it had complied with the contract because its offers were FRAND. Yet, long after the close of both fact and expert discovery, Huawei moved to dismiss the "part" of PanOptis' claim that related to its foreign patents, arguing that the Court lacks supplemental jurisdiction. *See* 28 U.S.C. § 1367. This was a serious, and fatal, misnomer by Huawei, as there is no separate "part" of PanOptis' offer applicable to foreign countries—the offer does not permit Huawei to accept it for some countries and reject it for other countries.

Despite this, the Recommendation recommends that the Court dismiss the "foreign part" of PanOptis' FRAND claim, not because it lacks subject-matter jurisdiction (an issue the

Recommendation does not decide), but under the Court's discretionary power to dismiss claims for declaratory relief—an issue not briefed by the parties.

The error is that there is no "foreign part" of PanOptis' claim, as its offer to Huawei was a global integrated offer, with no U.S.-specific rate. In bifurcating PanOptis' claim and dismissing the "foreign" part, the Recommendation cites inapplicable law that precludes U.S. courts from deciding foreign patent-infringement claims. Those cases do not apply to *contract claims* like PanOptis' FRAND claim, and relying on them ignores the fact that U.S. courts have concluded that they *can* adjudicate whether an offer to license a global patent portfolio complies with FRAND or RAND in a single proceeding, and have done so. *See* § II.A.4, *infra*. And the Recommendation also ignores the reality of patent portfolio licensing in telecommunications, which typically involves a single integrated offer to license sales globally.

Even setting aside those defects, the Recommendation cannot stand because it ignores factors—the *Trejo* factors—that the Fifth Circuit says the Court *must* address before dismissing a claim under the Declaratory Judgment Act.

PanOptis has extensively briefed why the Court has supplemental jurisdiction over the entire FRAND claim. *See* Dkts. 160, 189. As the Recommendation does not decide supplemental jurisdiction, PanOptis does not rehash those arguments here but focuses on the grounds for the Recommendation.

## II.    DISCUSSION

### A.    The Recommendation misunderstands the parties' FRAND dispute and PanOptis' declaratory judgment claim.

1.    PanOptis made a single, integrated offer to Huawei to license it under PanOptis' global patent portfolio. Dkt. 147-4. PanOptis never made a U.S.-only offer to Huawei. So Huawei never had the ability to accept a U.S. part of PanOptis' offer, not just because there was never a U.S.-only part, but also because PanOptis presented the global integrated licensing terms as a single package. Thus, there was no "foreign part" of the PanOptis declaratory judgment claim. Instead, the declaratory judgment claim sought an adjudication that PanOptis had

complied with its sole ETSI contract, under which Huawei claims third-party beneficiary rights.

2. The Recommendation states that the parties' global FRAND dispute is "similar to a foreign infringement claim in that a US court would have to apply foreign law," and concludes that the reasoning of *Voda v. Cordis Corp.* applies to the "foreign part" of the dispute. Dkt. 214 at 15; *see* 476 F.3d 887 (Fed. Cir. 2007). PanOptis' declaratory judgment claim sounds in contract, not patent infringement. The FRAND commitment is a contractual commitment between PanOptis and ETSI. ETSI is not a sovereign; it is a private party organization. The contract is fully governed by the law of one country—France—not many individual countries. ETSI IPR Policy §12[1]; *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 15-cv-2370-JVS, 2017 WL 6611635, at *5 (C.D. Cal. Dec. 21, 2017). As PanOptis has explained, *see, e.g.*, Dkt. 160 at 18-19, its FRAND claim turns on *one* contract requiring it to offer its global portfolio on FRAND terms, not on individual contracts for each country where it owns patents, governed by the respective countries' laws. *Cf. Microsoft Corp.*, 696 F.3d at 884 (observing in context of RAND commitment that "the face of the contract makes clear that it encompasses not just U.S. patents, but all of Motorola's standard-essential patents worldwide"). That French law governs the contract is of no moment, because U.S. courts routinely apply the law of foreign countries to resolve disputes when required. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 WL 1672493, at *10 (N.D. Cal. May 14, 2012) (applying French contract law to FRAND claim under ETSI contract); *TCL v. Ericsson*, 2017 WL 6611635 at *5 (same); *Apple, Inc., v. Motorola Mobility*, Inc., 886 F. Supp. 2d 1061, 1081–1082 (W.D. Wis. 2012). Rule 44.1 exists for this very reason. Fed. R. Civ. P. 44.1.

3. Breach of FRAND is not a claim for patent infringement. Nor is breach of FRAND an affirmative defense to patent infringement. *Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC,* No. 2:15-CV-351-JRG, 2018 WL 915125, at *6 (E.D. Tex. Feb. 15, 2018) (J. Gilstrap) (noting that a "breach of FRAND" does not in and of itself constitute an

---

[1] Available at https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

affirmative defense of patent misuse); *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 916 (N.D. Ill. 2013) ("The parties have not cited, however, and the court has not found, any cases suggesting that the existence of a [F]RAND commitment provides a complete defense against an infringement lawsuit. Instead, most cases merely limit a patent holder's remedy to collecting a [F]RAND royalty...."). Huawei acknowledges as much, as it cloaks its affirmative defenses in recognized defenses—like patent misuse, equitable estoppel, promissory estoppel, and unclean hands—for which the alleged breach of FRAND is but one aspect. These defenses require proof of other elements in addition to breach of FRAND: for example, patent misuse requires that the patentee's conduct "broadens the physical or temporal scope of the patent grant" and "has anticompetitive effects." *Saint Lawrence*, 2018 WL 915125 at *6.

The Court can decide whether PanOptis' offer to Huawei complies with FRAND without making any determinations of foreign patent law. PanOptis does not request the Court determine whether any foreign patent is valid or infringed, and neither party seeks adjudication of any defenses to a foreign patent. As a result, PanOptis' breach of FRAND declaratory judgment claim does not trigger the concerns raised in *Voda*, in which the Federal Circuit held that district courts ordinarily should decline jurisdiction over foreign *patent infringement* claims under 28 U.S.C. § 1367(c). 476 F.3d at 897. The court rooted its analysis in a patent's unique status as a right granted by a foreign sovereign: "Permitting our district courts to exercise jurisdiction over infringement claims based on foreign patents in this case would require us to define the legal boundaries of a property right granted by another sovereign and then determine whether there has been a trespass to that right." *Id*. at 900. But *Voda* does not apply to breach of contract claims, which represent a specific agreement between parties—not a grant of right by a sovereign. The other case cited by the Recommendation also does not apply to contract cases: *Lotes Co. v. Hon Hai Precision Indus. Co.*, 2011 WL 13152817, at *4 (N.D. Cal. July 14, 2011) (declining jurisdiction to rule on the non-infringement of foreign patents).

4.     The Ninth Circuit in *Microsoft* <u>expressly rejected the argument made by Huawei here</u>, finding that a party may "freely agree to reservations or limitations on rights that it would

have under foreign patent law (or any other rights that it may have under foreign law) in a contract enforceable in U.S. courts." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012). "When that contract is enforced by a U.S. court, the U.S. court is not enforcing [foreign] patent law but, rather, the private law of the contract between the parties." *Id.* (emphasis added). Other courts have reached similar conclusions. *TCL v. Ericsson*, 2017 WL 6611635 at *5; *Apple v. Samsung, Ltd.*, 920 F. Supp. 2d 1116, 1141-42 (N.D. Cal. 2013) (denying motion for a  new trial, noting the jury considered testimony as to whether Samsung's global portfolio offer met Samsung's FRAND licensing obligations). PanOptis is unable to locate any case where a court has held that enforcing FRAND contracts requires the same kind of validity or infringement analysis found in a patent case. PanOptis was similarly unable to locate a case holding that breach of a FRAND obligation implicates the concerns raised in *Voda*.

And many other U.S. courts have adjudicated whether contracts that contemplate international performance have been breached. Typically, a single country's law governs whether an international contract has been breached, not a patchwork of laws for each country in which performance might occur. *See, e.g., Stewart v. Screen Gems-Emi Music, Inc.*, 81 F. Supp. 3d 938 (N.D. Cal. Mar. 2, 2015) (adjudicating contract claim arising out of worldwide assignment); *Innovative Biodefense, Inc. v. VSP Techs., Inc.*, 2017 U.S. Dist. LEXIS 176077 (S.D.N.Y. Oct. 24, 2017) (adjudicating breach of contract claim arising out of international patent sublicense agreement); *Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC,* 2008 U.S. Dist. LEXIS 10603 (W.D. Tex. Feb. 13, 2008) (adjudicating breach of contract claim arising out of worldwide licensing agreement). This is not surprising; *Voda*, itself, recognizes that "§ 1367 supplemental jurisdiction appears to include foreign law claims." *See* 476 F.3d at 894.

5.      Artificially constraining a dispute to one country's patents distorts the economics of FRAND licensing. PanOptis' offers contain no US-only rates, but propose three categories of rates: major markets (which include the US), China, and the rest of the world. The Court cannot simply pull out a US-only rate from the offers Huawei allege violate FRAND, as the implicit rate for US patents is bundled with the other rates in the offers. How is the jury to assess such a

buried—and potentially obscured—rate? Even viewing the offer at the "category" level ignores economic reality, as what a patentee would accept for one category may depend, in part, on what it can get for the others. Again, the question presented by PanOptis' claim is whether its global offer is FRAND, and the offer's components were never intended to be viewed in isolation.

The parties have acted accordingly here. The evidence developed in discovery supports that PanOptis' global offers comply with its FRAND obligation. PanOptis' expert has not calculated a rate for only US patents. And even if PanOptis' expert included US patents in his analysis, that part cannot simply be pulled out and repurposed. With discovery closed and trial imminent, it is difficult to see how the parties might prepare the case as restricted by the Recommendation. Moreover, the parties will present the global FRAND dispute anyway, as Huawei's counsel has made clear on the record that Huawei's FRAND-related affirmative defenses require evaluating PanOptis' global offer. *See* Dkt. No. 103 at 46:22-25 ("Yes, it is the case that we're going to be talking in this case about PanOptis' worldwide offer…. That is going to be an issue with respect to whether there's a FRAND defense to the patents in this case."). So the Recommendation would not save time or simplify the issues at trial.

**B.**    **The Fifth Circuit forbids the kind of analysis that the Recommendation engages in, but requires district courts to consider the seven *Trejo* factors.**

1.    The Recommendation also cannot stand under Fifth Circuit precedent, as it ignores factors courts *must* address in dismissing a declaratory judgment claim. Although the Declaratory Judgment Act gives courts discretion to dismiss a claim for declaratory relief, that "discretion is not wholly unfettered." *Am. Bankers Life Assurance Co. of Fl. v. Overton*, 128 F. App'x 399, 401 (5th Cir. 2005); *accord Employers Ins. of Wausau v. Burlington N. & Santa Fe Ry Co.*, 336 F. Supp. 2d 637, 640 (E.D. Tex. 2003). The factors "that must be considered *on the record* before a discretionary, nonmerits dismissal of a declaratory judgment action occurs are:

1) whether there is a pending state action in which [the] controversy may be fully litigated,
2) whether the plaintiff sued in anticipation of a lawsuit filed by the defendant,
3) whether the plaintiff engaged in forum shopping in bringing the suit,
4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in

time or to change forums exist,

5) whether the federal court is a convenient forum for the parties and witnesses,

6) whether retaining the lawsuit in federal court would serve [] judicial economy, and

7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending."

*Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994)) (emphasis original) (cleaned up).

PanOptis never briefed the *Trejo* factors because *Huawei never urged discretionary dismissal under the Declaratory Judgment Act*. The Recommendation acknowledges as much, observing that "[t]he parties devoted their briefing to supplemental jurisdiction but lost sight of the fact that PanOptis wants a declaratory judgment." Dkt. 214 at 15-16. PanOptis is aware of no instance in which a court of appeals has sustained a *sua sponte* dismissal under the Declaratory Judgment Act. *Cf. Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373-74 (5th Cir. 1998) (reversing district court's sua sponte discretionary dismissal under the Declaratory Judgment Act). And that makes sense: How could the Court analyze the *Trejo* factors as required by the Fifth Circuit when neither side has briefed them?

The Fifth Circuit has routinely held that district courts abuse their discretion when they dismiss declaratory judgment claims without expressly addressing these "*Trejo* factors." In *Vulcan*, for example, Vulcan challenged an ordinance interfering with its mining operations. *See* 238 F.3d at 384. It also sought a declaratory judgment that the ordinance did not apply to its operations. *Id*. The district court dismissed the constitutional claims and then declined jurisdiction over the declaratory judgment claim, observing that it "involved a determination of state law and/or causes of action which the Court declines to review as there are no remaining federal claims." *Id*. at 389 (internal quotation marks omitted). But because "the district court did not attempt to provide even a cursory analysis of the pertinent facts and law," the Fifth Circuit held that it had abused its discretion in dismissing the claim. *Id*. at 390 (internal quotation marks omitted); *see also Overton*, 128 F. App'x at 402-03 (holding that district court abused its

discretion in dismissing a declaratory judgment claim "when it failed to consider the seven *Trejo* factors *on the record*," and its "terse analysis considered only the first factor").

2.    The Recommendation does not acknowledge, much less "consider[] *on the record*"—any of the *Trejo* factors. Instead, it proclaims that "under the Declaratory Judgment Act, the foreign part of PanOptis' claim should be dismissed for the reasons explained in *Voda*." *See* Dkt. 214 at 16. This analysis is deficient under Fifth Circuit precedent for two reasons.

First, "the reasons explained in *Voda*" are distinct from the *Trejo* factors that the Court must consider. To repeat, *Voda's* holding was that federal courts should decline supplemental jurisdiction over foreign patent-infringement claims. *See* 476 F.3d at 898. The factors that the Court considered in reaching that conclusion differ materially from the *Trejo* factors. Central to the *Voda* analysis, for example, were international treaties and comity among nations, *see* 476 F.3d at 898-903—factors absent from the *Trejo* framework. Yet *Voda* did not consider *Trejo* factors like the pendency of a state court action that would resolve the entire controversy, anticipatory suits, and whether the action requires construction of a state court's decree.

Second, even indulging the fiction that "the reasons explained in *Voda*" track the *Trejo* factors, the Recommendation provides no analysis of those "reasons." Instead, it merely states that federal courts should not adjudicate foreign patents, notes that "[t]he Court of Appeals explained why in *Voda*," and concludes that PanOptis' claim should be dismissed for the same (unidentified) reasons. *See* Dkt. 214 at 15-16. The Recommendation does not discuss *any* factors. It would fare no better had it instead invoked "the reasons explained in *Trejo*." The Fifth Circuit has repeatedly held that dismissal of a declaratory judgment claim is improper when a district court "does not even provide a cursory analysis" of the relevant factors. *See Vulcan*, 238 F.3d at 390 (internal quotation marks omitted); *accord Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774, 778 (5th Cir. 1993); *Overton*, 128 F. App'x at 402-03.

### III.    CONCLUSION

PanOptis requests that the Court sustain its objection to the Recommendation and deny Huawei's motion to dismiss PanOptis' declaratory judgment claim for non-US patents.

Dated: July 25, 2018                              /s/ *Kevin L. Burgess*
                                                  Kevin L. Burgess – Lead Counsel
                                                  Texas State Bar No. 24006927
                                                  kburgess@McKoolSmith.com
                                                  Steve J. Pollinger
                                                  Texas State Bar No. 24011919
                                                  spollinger@McKoolSmith.com
                                                  Scott L. Cole
                                                  Texas State Bar No. 00790481
                                                  scole@McKoolSmith.com
                                                  Lindsay M. Leavitt
                                                  Texas State Bar No. 24049544
                                                  lleavitt@McKoolSmith.com
                                                  Kevin P. Hess
                                                  Texas State Bar No. 24087717
                                                  khess@McKoolSmith.com
                                                  Christine M. Woodin
                                                  Texas State Bar No. 24100051
                                                  cwoodin@McKoolSmith.com
                                                  **MCKOOL SMITH, P.C.**
                                                  300 W. 6th Street Suite 1700
                                                  Austin, TX 78701
                                                  Telephone: (512) 692-8700
                                                  Facsimile: (512) 692-8744

                                                  Samuel F. Baxter
                                                  Texas State Bar No. 1938000
                                                  sbaxter@McKoolSmith.com
                                                  Jennifer Truelove
                                                  Texas State Bar No. 24012906
                                                  jtruelove@McKoolSmith.com
                                                  **MCKOOL SMITH, P.C.**
                                                  104 E. Houston Street, Suite 300
                                                  Marshall, TX 75670
                                                  Telephone: (903) 923-9000
                                                  Facsimile: (903) 923-9099

                                                  Marcus L. Rabinowitz
                                                  Texas State Bar No. 24098293
                                                  mrabinowitz@McKoolSmith.com
                                                  **MCKOOL SMITH, P.C.**
                                                  300 Crescent Court, Suite 1500
                                                  Dallas, TX 75201
                                                  Telephone: (214) 978-4000
                                                  Facsimile: (214) 978-4044

9

Eric S. Tautfest
Texas Bar No. 24028534
etautfest@grayreed.com
Jared Hoggan
Texas Bar No. 24065435
jhoggan@grayreed.com
David T. DeZern
Texas Bar No. 24059677
ddezern@grayreed.com
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
David Lisch
Texas Bar No. 24077179
dlish@grayreed.com
**GRAY REED & MCGRAW, LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY,
LLC, OPTIS CELLULAR
TECHNOLOGY, LLC, AND PANOPTIS
PATENT MANAGEMENT, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 25, 2018.

/s/ *Kevin L. Burgess*

11