THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **OPTIS WIRELESS TECH., LLC, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**HUAWEI TECHS. CO. LTD., ET AL.,**<br><br>Defendants. | No. 2:17-cv-123 JRG-RSP<br><br>JURY TRIAL REQUESTED |

**HUAWEI'S OBJECTION TO MAGISTRATE JUDGE PAYNE'S JULY 11, 2018
MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**

# **TABLE OF CONTENTS**

I.   THE RECOMMENDATION ERRS IN DEEMING MATERIAL A DISPUTE
     REGARDING THE MODULATION OPERATION ............................................................. 2

II.  THE RECOMMENDATION FAILS TO REJECT OR RESOLVE PRIOR TO
     TRIAL A DISPUTE ABOUT PANOPTIS' NEW CLAIM CONSTRUCTION ................... 3

III. CONCLUSION ....................................................................................................................... 4

For two related reasons, Huawei objects to the portion of Magistrate Judge Payne's July 11, 2018 Memorandum Opinion, Order, and Recommendation ("Recommendation"), Dkt. 214, that denies Huawei's motion for summary judgment of non-infringement of the '216 patent.

First, the Recommendation deems material a dispute "about where modulation occurs in the accused products." Dkt. 214 at 10. Regardless of where modulation occurs, however, it is undisputed that a channel interleaver in the accused products interleaves (i.e., reorders) the bits before they are forwarded to the receiver. Thus, the alleged ordering vector does *not* define the order in which bits are "forwarded to a receiver," as the claims require.

Second, the Recommendation leaves unresolved a claim construction dispute that has resulted from PanOptis' new interpretation of the "ordering vector" limitation. During the Markman process, PanOptis stated to the Court that the ordering vector limitation is "commonly understood" and "therefore needs no construction." Dkt. 94 at 10. Given this statement, Huawei in turn withdrew its request that the phrase be construed insofar as relevant to this motion. *See* Dkt. 89-2, Ex. B at 11; Dkt. 101 at 1 n.1; Dkt. 101-6. The parties thus seemed to agree that the plain and ordinary meaning of the limitation controls. In opposing summary judgment, however, PanOptis paid only lip service to that "plain and ordinary" meaning and, in effect, sought a new construction according to which the ordering vector defines only the order in which bits are sent to a modulating circuit—whether or not the ordering vector also defines the order in which bits are forwarded to a receiver. This eleventh-hour construction reads "and forwarded to a receiver" out of the claim and is thus irreconcilable with the plain and ordinary meaning of the claim.

The Court should decline to follow the Recommendation and instead grant summary judgment of non-infringement. Alternatively, the Court should resolve the parties' claim construction dispute before trial.

### I. THE RECOMMENDATION ERRS IN DEEMING MATERIAL A DISPUTE REGARDING THE MODULATION OPERATION

The Recommendation advises denying Huawei's summary judgment motion based on a dispute between the parties' experts about the location of modulation in the accused products. Dkt. 214 at 10. That dispute is immaterial. The claims require an "ordering vector defining an order in which bits forming the reordered mother code word are [1] to be modulated and [2] forwarded to a receiver." The Recommendation appears to focus on the experts' disagreement on the first requirement. But Huawei's summary judgment motion is about PanOptis' failure to establish the second requirement. According to PanOptis' infringement theory, "the reordered mother code word" is a series of bits stored in a virtual circular buffer. Dkt. 141 at 5 ¶ 3. It is undisputed that, after bits are selected from this buffer, they undergo several further processing steps before being transmitted to a receiver. *Id.* at 6 ¶ 5. One of these steps is channel interleaving, which changes the order in which bits are sent to subsequent processing steps and ultimately transmitted to a receiver. *Id.* at 8 ¶ 8. Indeed, PanOptis admits that "[t]he output of the channel interleaver"—not the alleged ordering vector—"determines the order in which data is ultimately transmitted to the receiver." Dkt. 166 at 6; *see also* Dkt. 182 at 4–5. Thus, regardless of where modulation takes place, the order of bits defined by the alleged ordering vector is **not** the order in which bits are forwarded to a receiver.

PanOptis' argument that data is forwarded to the receiver in the form of "symbols" instead of as bits is a red herring. It is immaterial in what *form* bits are forwarded to the receiver; what matters is the *order* in which the bits are forwarded to the receiver.[1] *See* '216 Patent, col. 5 ll.65-67 (teaching that, on the receiver end, the demodulated signal, i.e., the received series of bits, "corresponds to the subsequence of the reordered mother code word," confirming that the ordering

---

[1] Moreover, if bits are not forwarded to a receiver at all, again there cannot be any infringement because the claims require that an ordering vector define the order in which bits are forwarded to a receiver.

2

vector defines the order in which bits are forwarded to the receiver). Because the order in which the bits are forwarded to the receiver (in whatever form) is not defined by what PanOptis identifies as the ordering vector, there is no infringement.

## II. THE RECOMMENDATION FAILS TO REJECT OR RESOLVE PRIOR TO TRIAL A DISPUTE ABOUT PANOPTIS' NEW CLAIM CONSTRUCTION

Despite insisting that its infringement theory flows from the plain and ordinary meaning of the "ordering vector" limitation, PanOptis is effectively advancing a new, broader, claim construction. According to this new construction, "[t]he ordering vector need not define the order in which bits are 'ultimately' modulated out of the modulating circuit," Dkt. 166 at 1, and need only "defin[e] the order in which bits are input into the modulating circuit for both modulating and forwarding," *id.* at 12. Huawei disputes PanOptis' new construction and believes that it cannot be reconciled with the plain and ordinary meaning of the claim limitation because it reads the words "and forwarded to a receiver" out of the claim. Dkt. 141 at 12 ("Dr. Madisetti's construction impermissibly departs from this plain and ordinary meaning."). The Court should reject this new construction and enter summary judgment of non-infringement. *See* Dkt. 141 at 12–13; Dkt. 182 at 2–4.

Alternatively, the Court should resolve this claim construction dispute prior to trial. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (holding that the Court must resolve fundamental disputes regarding meaning of claim terms); *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302-JRG, 2018 WL 3067727, at *4 (E.D. Tex. June 21, 2018) ("An analysis of Defendants' [summary judgment] motion from a perspective of claim construction is therefore necessary in order to resolve the parties' dispute."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-911-JRG, 2016 WL 4440255, at *3 (E.D. Tex. Aug. 23, 2016) (describing claim construction proceedings outside presence of jury after "it became clear to the Court [during trial] that a live claim construction dispute existed between the parties"), *aff'd*, 880 F.3d 1356 (Fed.

Cir. 2018); *CytoLogix Corp. v. Ventana Medical Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("The risk of confusing the jury is high when experts opine on claim construction before the jury even when . . . the district court makes clear to the jury that the district court's claim constructions control."). Specifically, the Court should reject PanOptis' reading of the claim and clarify for the jury that the ordering vector must define the "order in which bits forming the reordered mother code word are to be **[1]** modulated and **[2]** forwarded to a receiver."

### III. CONCLUSION

For the reasons set forth above and in Dkts. 141 and 182, Huawei respectfully requests that the Court decline to adopt the Recommendation as to Huawei's motion for summary judgment of non-infringement of the '216 patent and instead grant summary judgment in favor of Huawei.

| | |
|---|---|
| Dated: July 25, 2018 | By: /s/ *Robert T. Haslam* <br> Robert T. Haslam (rhaslam@cov.com) <br> *Lead Attorney* <br> Stanley Young (syoung@cov.com) <br> Anupam Sharma (asharma@cov.com) <br> Thomas E. Garten (tgarten@cov.com) <br> James Hovard (jhovard@cov.com) <br> **COVINGTON & BURLING LLP** <br> 333 Twin Dolphin Drive, Suite 700 <br> Redwood Shores, CA 94065-1418 <br> Telephone: (650) 632-4700 <br> Facsimile: (650) 632-4800 <br> <br> Gregory S. Nieberg (gneiberg@cov.com) <br> Heng Gong (hgong@cov.com) <br> **COVINGTON & BURLING LLP** <br> The New York Times Building <br> 620 Eighth Avenue <br> New York, NY 10018-1405 <br> Telephone: (212) 841-1000 <br> Facsimile: (212) 841-1010 <br> <br> Paul J. Wilson (pwilson@cov.com) <br> Ali Mojibi (amojibi@cov.com) <br> Christopher G. Higby (chigby@cov.com) <br> **COVINGTON & BURLING LLP** <br> One CityCenter <br> 850 Tenth Street, NW <br> Washington, DC 20001-4956 <br> Telephone: (202) 662-6000 <br> Facsimile: (202) 662-6291 <br> <br> Michael C. Smith (michaelsmith@siebman.com) <br> Texas Bar No. 18650410 <br> **SIEBMAN, BURG, PHILLIPS & SMITH, LLP** <br> 113 East Austin Street <br> Marshall, TX 75670 <br> Telephone: (903) 938-8900 <br> Facsimile: (972) 767-4620 <br> <br> *Attorneys for Defendants* <br> **HUAWEI DEVICE USA INC. AND HUAWEI DEVICE CO., LTD.** |

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail and the Court's CM/ECF system per Local Rule CV-5(a)(3) this 25th day of July, 2018.

/s/ *Robert T. Haslam*
Robert T. Haslam