**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECH., LLC, et al.,** | |
| **Plaintiffs,** | **Civil Action No.  2:17-cv-123-JRG-RSP** |
| **v.** | |
| **HUAWEI TECHS. CO. LTD., et al.,** | **JURY TRIAL REQUESTED** |
| **Defendants.** | |

**JOINT PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**TABLE OF CONTENTS**

I.      GENERAL INSTRUCTIONS ............................................................................1

        A.      General Introduction .................................................................1

        B.      Patent Introduction....................................................................2

II.     NATURE OF THE CASE ..............................................................................6

        A.      Claim Construction ....................................................................11

        B.      Infringement ..............................................................................12

        C.      Validity ......................................................................................13

        D.      Willfulness and Damages .........................................................14

        E.      FRAND .......................................................................................15

III.    EVIDENCE....................................................................................................17

        A.      Witnesses ...................................................................................17

        B.      Expert Witnesses.......................................................................18

        C.      Depositions ................................................................................19

        D.      Objection Procedure .................................................................20

IV.     JUROR'S DUTIES ........................................................................................21

V.      TRIAL PROCEDURE...................................................................................23

VI.     CONCLUSION..............................................................................................24

# I.     GENERAL INSTRUCTIONS[1]

## A.     General Introduction[2]

You have now been sworn in this case as the jury, and as the jury, you are the sole judges of the facts. And as such, you will determine what all the facts are in this case.

As the Judge, I will give you instructions on the law. I will decide any questions of law that arise during the trial. I will handle all matters related to evidence and procedure. And I will be responsible for maintaining the flow of the evidence through the trial process and maintaining the decorum of the courtroom.

At the end of the evidence, I will give you detailed instructions about the law that you are to apply in deciding this case, and I will give you a list of questions that you are then to answer. This list of questions is called the verdict form, and your answers to those questions will need to be unanimous answers. And those answers, together with the questions, will constitute the verdict in this case.

---

[1] The parties have indicated in brackets where a particular section is disputed. Plaintiffs' disputed proposals are set apart with brackets and highlighted in yellow. Defendants' disputed proposals are set apart with brackets and highlighted in blue.

[2] Transcript of Jury Trial at 6-7, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

## B.       Patent Introduction[3]

I want to briefly tell you what the case is about. This case involves a dispute regarding certain United States patents, as well as allegations by Huawei that PanOptis has breached its obligations under a contract.[4] I'm going to give you instructions with respect to the patent dispute first, followed by instructions with respect to Huawei's allegations of breach of contract.

I know that you have each seen the patent video that was shown during jury selection, but I want to give you some instructions now and on the record about a patent and how a patent is obtained.

The United States Constitution empowers the United States Government to enact patent laws and issue patents to protect inventions. The purpose of our patent system is to advance science and technology. The patent system achieves this by granting the owner of a patent, for the life of the patent, the right to prevent others from making, using, offering for sale, or selling the patented invention within the United States or from importing it into the United States without the patent-holder's permission. A valid United States patent gives the patent-holder this right for up to 20 years from the date the application for the patent was filed.

A patent is a form of property called intellectual property. And like all other forms of property, a patent can be bought or sold. A violation of the patent-holder's rights is called infringement. A patent-holder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court, and that is part of what we have in this case.

In the United States, patents are granted or denied by the United States Patent and Trademark Office, sometimes referred to as the PTO. The process of obtaining a patent is called

---

[3] Transcript of Jury Trial at 7-12, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

[4] Transcript of Trial at 6, Dkt. No. 419, *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Apr. 9, 2015);

patent prosecution. To obtain a patent, one must first file an application with the PTO. The United States Patent and Trademark Office or the PTO is an agency of the United States Government that employs trained and experienced examiners who review applications for patents.

The application that is filed with the PTO includes what is called a specification. The specification contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification ends or concludes with one or more numbered sentences. These numbered sentences are called the patent claims, and a patent's claims define the boundaries of its protection and give notice to the public of those boundaries.

Patent claims may exist in two different forms referred to as either independent claims or dependent claims.

An independent claim does not refer to any other claim of the patent. An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to one or more other claims, at least one of which is an independent claim, for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim or claims to which it refers, as well as the requirements within the dependent claim itself. The dependent claim adds its own requirements to the claim or claims to which it refers. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. A product or process

3

that meets all of the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

In examining a patent application, the examiner reviews certain information about the state of the technology that existed at the time the application was filed. The PTO searches for and reviews this type of information that is publicly available or that was submitted by the applicant. This type of information is called prior art.

The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you at a later time more specific instructions as to what constitutes prior art.

However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for the patent was filed.

A patent contains a list of certain prior art that the examiner has considered. The items on this list are called the cited references.

After the prior art search and the examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable.

The writing from the examiner is called an Office Action. If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims.

The applicant also has the chance or the opportunity to change or amend the claims or to submit new claims.

4

The papers generated during these communications back and forth between the examiner and the applicant are called the prosecution history, and this process between the examiner and the applicant may go back and forth for some time until the examiner is satisfied that the application meets the requirements for a patent. And in that case, the application issues as a United States patent.

Or in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued. Sometimes patents are issued after appeals within the Patent and Trademark Office or to a court.

The fact that the PTO grants a patent does not necessarily mean that the invention claimed in the patent, in fact, deserves the protection of a patent. While an issued United States patent is presumed valid under the law, a person accused of infringement has the right to argue in federal court that the claimed invention in a patent is invalid.

## II.     NATURE OF THE CASE[5]

To help you follow the evidence, I will give you a brief summary of the positions of the two parties.

As you know, the parties that bring the lawsuit are called the Plaintiffs. The Plaintiffs in this case are Optis Wireless Technology LLC, Optis Cellular Technology LLC, and PanOptis Patent Management LLC, which together will be referred to as either the Plaintiffs or PanOptis.

And as you know, the parties against whom a lawsuit is brought are called the Defendants. And the Defendants in this case are Huawei Device (Shenzhen) Co., Ltd. and Huawei Device USA, Inc., which together will be referred to as either the Defendants or Huawei.

As I told you during jury selection, this is a case of alleged patent infringement and breach of contract. For the patent infringement dispute, as I may have already mentioned, there are six separate United States patents that have been asserted in this case.

The first patent is U.S. Patent No. 7,769,238. And as you know, patents are commonly referred to by the last three digits of the patent number. So in this case Patent No. 7,769,238 will be referred to as the 238 patent. The second U.S. patent at issue in this case is United States Patent No. 6,604,216, which will be referred to as the 216 patent. The third U.S. patent at issue in this case is United States Patent No. 8,385,284, which will be referred to as the 284 patent. The fourth U.S. patent at issue in this case is United States Patent No. 8,208,569, which will be referred to as the 569 patent. The fifth U.S. patent at issue in this case is United States Patent No. 8,102,833, which will be referred to as the 833 patent. The sixth U.S. patent at issue in this case is United States Patent No. 8,437,293, which will be referred to as the 293 patent.

---

[5] Transcript of Jury Trial at 12-15, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

These patents may be referred to collectively at various times in the case as the patents-in-suit or as the asserted patents. These patents generally relate to cell phone technology.

The Plaintiffs, PanOptis, contend that the Defendants, Huawei, are willfully infringing certain claims of the patents-in-suit by importing, making, or selling products that include their patented technology. PanOptis also contends that it is entitled to money damages as a result of that infringement.

The Defendant, Huawei, denies that it is infringing any of the Plaintiffs' patents-in-suit and contend that the asserted claims of the patents-in-suit are invalid as being either anticipated or obvious in light of the prior art.

In addition to the parties' dispute over the six patents-in-suit, there is also a breach of contract claim.[6]  PanOptis owns more patents than the six asserted patents, and PanOptis contends that many of its patents are what we call "essential" to cellular standards like 2G, 3G, or 4G LTE.

You may have heard of "2G," "3G" or "4G" – these are common names for the cellular standards. In order for a mobile phone to operate on a wireless network, it must comply with technical requirements of a standard. Because all mobile phones and wireless networks use the same standardized technology all around the world, I can send an email from my mobile device in the United States to someone with a mobile device from a different manufacturer that lives in Australia. The email will arrive quickly and reliably almost 100% of the time.

The cellular standards are developed by a standard setting organization called ETSI, which stands for European Telecommunications Standards Institute. ETSI members have created

---

[6] Adapted from Transcript of Trial at 13-14, Dkt. No. 419, *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Apr. 9, 2015).

the technical framework that makes up the 2G, 3G, and 4G cellular standards. A patent whose use is required in order to comply with the standards is referred to as an "essential patent." Since the cellular standards contain lots of different technologies, there are many essential patents for the 2G, 3G, and 4G standards.

FRAND is shorthand for fair, reasonable, and non-discriminatory. An ETSI member who commits to license its standard essential patents on FRAND terms is entering into a binding contract with ETSI called the FRAND commitment. Companies who want to license the ETSI member's standard essential patents are third-party beneficiaries of that contract.

The Plaintiff in this case, PanOptis, owns standard essential patents it acquired from Ericsson, Panasonic, and LG. PanOptis, like the prior owners of the standard essential patents has entered into a FRAND commitment with ETSI to license those standard essential patents on FRAND terms. Huawei is a third-party beneficiary of that contract. [**Plaintiff's Proposal:** Over the past several years, PanOptis and Huawei have negotiated for a license covering all of PanOptis' patents that are essential to the cellular standards. PanOptis has made offers to Huawei to license its standard essential patents. PanOptis believes its offers are FRAND, and Huawei disagrees. You will be asked to decide.][7][8]

---

[7] [**Defendants' Objection:** Count IX involves a declaration and not any monetary relief. Count IX is an equitable claim and should be tried to the Court, not the jury. *See Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC*, No. 2:15-CV-351-JRG, 2018 WL 915125, at *1 (E.D. Tex. Feb. 15, 2018) (resolving defendant's FRAND issues after a jury trial and through post-trial briefing); *Genband US LLC v. Metaswitch Networks Ltd.*, 211 F. Supp. 3d 858, 885 (E.D. Tex. 2016) (resolving FRAND issues after jury trial), vacated and remanded on other grounds, 861 F.3d 1378 (Fed. Cir. 2017); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649–50 (7th Cir. 2002) ("The nature of the underlying dispute here is breach of contract, but a plaintiff who is seeking equitable relief and not damages cannot wrest an entitlement to a jury trial by the facile expedient of attaching a claim for declaratory judgment.")].

Now, I know that there are several new words and concepts that you have been introduced to, and the Court is going to define and further explain many of these words and concepts as we go forward. The attorneys are likely going to discuss them in their opening statements. Also, the witnesses are going to assist you through their testimony in understanding these words. So do not feel overwhelmed at this stage. It will come together as we go through this trial, I assure you.

One of your jobs in this case is to decide whether or not the asserted claims of the six asserted patents have been infringed and whether they are invalid. If you decide that any claim of the patents-in-suit has been infringed by the Defendant and is not invalid, then you will need to decide whether or not the infringement by the Defendant has been willful. You will also then need to decide what amount of money damages should be awarded to the Plaintiff as compensation for that infringement.

---

[8] [**Plaintiffs' Position:** Count IX is a claim under the declaratory judgment act, which is by its nature neither legal nor equitable.  *See* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2313 (2d ed.1995); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *James v. Pennsylvania Gen. Ins. Co.*, 349 F.2d 228, 230 (D.C. Cir. 1965) ("The right to jury trial in a declaratory judgment action depends, therefore, on whether the action is simply the counterpart of a suit in equity- that is, whether an action in equity could be maintained if declaratory judgment were unavailable- or whether the action is merely an inverted lawsuit."); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649–50 (7th Cir. 2002) (accord, citing *James*, above). And Count IX anticipated a breach of contract action—a lawsuit for legal damages—by Huawei, and is therefore not, as Huawei's insists, equitable.  Therefore, it should be tried to the jury. Moreover, there are overlapping issues between Count IX and the patent damages issues (indisputably jury issues) that will be tried.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470 (1962).]

[**Plaintiff's Proposal:** Finally, another one of your jobs is to decide whether or not PanOptis has breached its contractual obligation to license its essential patents on FRAND terms.][9,10]

---

[9] [**Plaintiffs' Position**: Transcript of Trial at 14, Dkt. No. 419, *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Apr. 9, 2015); *see also* fn. 7, above.]
[10] [**Defendants' Objection:** *See* fn. 7 *supra*.]

## A.        Claim Construction[11]

It is my job to handle issues related to evidence and procedure, to give you instructions on the law, and to oversee the conduct of the trial.

In determining the law, it is my job to determine the meanings of any of the claim language from within the asserted patents that needs interpretation. You should understand that I have already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings of the terms that I give you and apply and use those meanings when you decide whether any particular claim has been infringed or is invalid.

And you will be given a document in a few moments that includes the interpretation of certain claim language that the Court has already put forward and adopted.

For any claim term for which I have not provided you with the definition, you should apply the plain and ordinary meaning of that term. If I have provided you with a construction or definition, however, you are to apply my construction, my definition to those terms throughout the case.

However, my interpretation of any of the language of the claims should not be taken by you as an indication that I have a personal opinion or any opinion at all regarding issues such as infringement or invalidity.

Those issues are issues for you, the jury, alone to decide. I will provide you with more detailed instructions on the meanings of the claims before you retire to deliberate and reach your verdict.

---

[11] Transcript of Jury Trial at 15-16, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

**B.     Infringement[12]**

In deciding the issues that are before you, you will be asked to consider certain specific legal rules, and I will give you an overview of those rules now. And then at the conclusion of the case, I will give you more detailed instructions.

The first issue that you are asked to decide is whether the Defendant, Huawei, has infringed any of the asserted claims of the patents. Infringement is assessed on a claim-by-claim basis.

And PanOptis, the Plaintiff, must show by a preponderance of the evidence that a claim has been infringed. Therefore, there may be infringement as to one claim but no infringement as to another claim.

Also, there are a few different ways that a patent can be infringed. I will explain the requirements for each of these types of infringement to you at the conclusion of the case.

But in general, a Defendant may infringe the asserted patents by making, using, selling, or offering for sale in the United States or importing into the United States a product meeting all of the requirements of a claim of an asserted patent.

I will provide you with more detailed instructions on the requirements of infringement at the conclusion of the case.

---

[12] Transcript of Jury Trial at 17-18, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

## C.     Validity[13]

The second issue that you will be asked to decide is whether the asserted patents are invalid. Invalidity is a defense to infringement. Therefore, even though the United States Patent and Trademark Office or the PTO has allowed the asserted claims, and even though a patent is presumed to be valid under the law, you, the jury, must decide whether those claims are invalid after hearing all of the evidence presented during this case.

You may find a patent claim to be invalid for a number of reasons, including because it claims subject matter that is not new or because it is obvious. For a patent to be invalid because it is not new, the Defendants must show by clear and convincing evidence that all of the elements of a claim are sufficiently described in a single previously printed publication or patent. We call those items prior art. If a claim is not new, it is said to have been anticipated.

Another way that a claim can be found to be invalid is if it has been or it may have been obvious. Even though a claim is not anticipated, because every element of the claim is not shown or sufficiently described in a single prior art reference, a claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of the technology of the patent at the relevant time.

**[Defendants Proposal:** A patent may also be invalid if it is not directed to a patentable subject matter, i.e., if it is directed toward an abstract idea and claims no more than conventional means to implement.**]**

You will need to consider a number of questions in deciding whether the invention claimed in the asserted patents is obvious. And I will provide you with more detailed instructions on these questions at the conclusion of the trial.

---

[13] Transcript of Jury Trial at 18-19, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

### D.      Willfulness and Damages[14]

If you decide that any claim of the patents-in-suit has been infringed and is not invalid, then you will need to decide whether Defendants' infringement has been willful.

You will also need to decide then what amount of money damages should be awarded to the Plaintiff, PanOptis, to compensate it for the infringement. A damage award must be adequate to compensate the patent-holder for the infringement. And in no event may a damage award be less than what the patent-holder would have received had it been paid a reasonable royalty for the use of its patent.

However, the damages you award, if any, are meant to compensate the patent-holder, and they are not meant to punish the Defendant. You may not include in any damages award an additional amount as a fine or a penalty above what is necessary to fully compensate the patent-holder for the infringement.

Moreover, damages cannot be speculative, and PanOptis must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.

I will give you more detailed instructions on the calculation of damages for the Defendants' alleged infringement of the patents-in-suit at the conclusion of the trial, including by giving you specific instructions with regard to the calculation of a reasonable royalty.

However, the fact that I am instructing you on damages does not mean that PanOptis is or is not entitled to recover damages.

---

[14] Transcript of Jury Trial at 19-20, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

### E.    [==Plaintiff's Proposal==: FRAND[15]

Now in addition to the patent infringement action, you will be asked to decide a breach of contract claim.

Huawei accuses PanOptis of breaching contractual obligations that have arisen from its commitments to ETSI. PanOptis owns a number of standard essential patents and has a contract with ETSI to license its standard essential patents on fair, reasonable, and non-discriminatory terms and conditions. As I previously mentioned, this is often referred to as FRAND terms and conditions.

PanOptis believes its offers are FRAND, and Huawei disagrees. You will be asked to evaluate whether PanOptis' offer for a license to its standard essential patents was FRAND. And, in doing so, you will decide whether PanOptis has complied with its contractual obligations to ETSI.][16]

---

[15] Adapted from Transcript of Trial at 14, Dkt. No. 419, *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Apr. 9, 2015). [==Plaintiffs' Position:== Count IX is a claim under the declaratory judgment act, which is by its nature neither legal nor equitable.  *See* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2313 (2d ed.1995); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *James v. Pennsylvania Gen. Ins. Co.*, 349 F.2d 228, 230 (D.C. Cir. 1965) ("The right to jury trial in a declaratory judgment action depends, therefore, on whether the action is simply the counterpart of a suit in equity- that is, whether an action in equity could be maintained if declaratory judgment were unavailable- or whether the action is merely an inverted lawsuit."); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649–50 (7th Cir. 2002) (accord, citing *James*, above). And Count IX anticipated a breach of contract action—a lawsuit for legal damages—by Huawei, and is therefore not, as Huawei's insists, equitable.  Therefore, it should be tried to the jury. Moreover, there are overlapping issues between Count IX and the patent damages issues (indisputably jury issues) that will be tried.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470 (1962).]

[16] [==Defendants' Objection:== Count IX involves a declaration and not any monetary relief. Count IX is an equitable claim and should be tried to the Court, not the jury. *See Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC*, No. 2:15-CV-351-JRG, 2018 WL 915125, at *1 (E.D. Tex. Feb. 15, 2018) (resolving defendant's FRAND issues after a jury trial and through post-trial briefing); *Genband US LLC v. Metaswitch Networks Ltd.*, 211 F. Supp. 3d 858, 885 (E.D. Tex. 2016) (resolving FRAND issues after jury trial), vacated and remanded on other

grounds, 861 F.3d 1378 (Fed. Cir. 2017); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649–50 (7th Cir. 2002) ("The nature of the underlying dispute here is breach of contract, but a plaintiff who is seeking equitable relief and not damages cannot wrest an entitlement to a jury trial by the facile expedient of attaching a claim for declaratory judgment.")].

### III.    EVIDENCE

#### A.      Witnesses[17]

You are going to be hearing from a number of witnesses over the course of this trial. I want you to keep an open mind while you are listening to the evidence, and it is important that you not decide any of the facts until you have heard all of the evidence. So while the witnesses are testifying, it is important that you keep in mind that you will have to decide the degree of credibility and the degree of believability to allocate to each of the witnesses and their testimony over the course of the trial. You should be thinking and asking yourselves questions like these:

- Does the witness impress you as being truthful?

- Does he or she have a reason not to tell the truth?

- Does he or she have any personal interest in the outcome of the case?

- Does the witness seem to have a good memory?

- Did he or she have an opportunity and ability to observe accurately the things they have testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- And, of course, does the witness's testimony differ from the testimony of any other witness?

- And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you are listening to each witness.

---

[17] Transcript of Jury Trial at 20-21, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

## B.    Expert Witnesses[18]

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that particular field -- we call them an expert witness -- is permitted to testify to the jury about his or her opinions on technical matters.

However, you are not required to accept an expert's or any other witness's opinions at all. It is up to you to decide whether you believe what an expert witness tells you, whether you believe they are correct or incorrect, and whether or not you want to believe what they say or give any weight to what they say.

I anticipate that there will be expert testimony given in this case in support of each side of this case. But it will be up to you to listen to each expert witness, and when they give their qualifications and give you an opinion and explain the basis for it, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight.

Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

---

[18] Transcript of Jury Trial at 21-22, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

### C.      Depositions[19]

During the course of the trial, it is possible that there will be testimony from one or more witnesses that are going to be presented to you through what is called a deposition. In trials like this, it is very tough, if not impossible, to get every witness here at the same time in open court.

So before the trial, the lawyers for both sides take the depositions of the witnesses. In a deposition, the witness is present, a court reporter is there, the witness is placed under oath, and sworn to tell the truth as if they were personally in court. And then the parties for each side ask the witness questions. Those questions and the witness's answers are then recorded.

Portions of those questions and answers, often made as video recordings, may be played back to you as a part of this trial so that you can see the witness and hear their testimony. This deposition testimony is entitled to the same consideration and, insofar as possible, is to be judged as to the credibility, weight, and otherwise considered by the jury in the same way as if the witness had been present and given their testimony from the witness stand in open court.

---

[19] Transcript of Jury Trial at 22-23, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

### D.        Objection Procedure[20]

During the course of the trial, it is possible that the lawyers from time to time will make objections. And when they do, I will make rulings on those objections. It is the duty of an attorney for each side to object when the other side offers testimony or other evidence that the attorney believes is not proper under the Federal Rules of Civil Procedure and the Local Rules of this Court, or the Federal Rules of Evidence.

Upon allowing the testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect to give to that testimony. Again, that is your job as the jury. You are the sole judges of the credibility of the witnesses and you decide the weight and what effect to give to the evidence.

With respect to exhibits, the parties in this case have already argued any objections to exhibits under the Rules of Evidence and the other rules of the Court, and I have heard the arguments, considered them, and ruled on the admissibility of the exhibits in this case. Because of that process, when an exhibit is shown to you during the trial, you can understand that it is already been ruled upon by the Court as being admissible and proper. And if the Court had ruled it inadmissible, you will not see it.

However, it is still possible that over the course of the trial, objections may arise. If I sustain an objection to a question addressed to a witness, then you, the jury, must disregard the question entirely, and you may draw no inference from the wording of it or speculate about what the witness would have said if I had allowed the witness to answer the question.

On the other hand, if I overrule an objection to a question asked of a witness, then you should consider the question and the answer just as if no objection had been made.

---

[20] Transcript of Jury Trial at 23-25, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

## IV.  JUROR'S DUTIES[21]

The court reporter in front of me is taking down everything that is said in the courtroom. And that is done so that there will be a transcript that can be used in the case there is an appeal to a higher court at a later date of this case. However, that transcript of what has been said during the trial is not going to be available to you to use during your deliberations. So you are going to have to rely on your memories of the evidence in this case.

In a moment, each of you are going to be given a juror notebook. You will find in the back of that notebook a blank legal pad that you can use to take notes on. It is up to each of you to decide whether or not you want to take notes over the course of the trial. And if you do, how detailed you want those notes to be.

But remember, if you choose to take notes, those notes are for your personal use. And you are still going to have to rely on your memory of the evidence, and that is why you should pay close attention to the testimony of each and every witness.

A juror should not abandon their own recollection because somebody else's notes indicate something differently. Notes are to refresh your recollection, and that is the only reason you should be keeping them during the course of the trial.

At this time, I am going to ask our Court Security Officer to pass out the juror notebooks to each of the members of the jury at this time.  In these notebooks, you will see that you each have a copy of the six asserted patents that we have talked about. You will also find that you have pages for each of the witnesses that may be called in the case. And on each of those pages for each witness, you will find a photograph, a head and shoulders' photograph of the witness

---

[21] Transcript of Jury Trial at 26-28, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

with their name underneath to help you recall and identify who has given the testimony you have heard throughout the course of the trial.

You will also find, as I have mentioned, that there is a legal pad in there to take notes on, and you should each find a pen to use in the front pocket of those notebooks. Whenever we leave at the end of each day during the trial, I am going to ask you to take those notebooks and leave them on the table in the jury room. Also, I am going to ask that you either have them in your possession in the jury box, as you do now, or that you leave them in the jury room. They do not need to be anywhere else.

There may be short recesses during the course of the trial where I will tell you, you may just leave your notebooks closed and in your chairs. And if I do that, that will be all right. But unless I tell you otherwise, they should either be in your personal possession, or they should be in the jury room on the table and nowhere else.

## V.      TRIAL PROCEDURE[22]

In a moment, we will get to the lawyers' opening statements. Those opening statements are designed to give you a roadmap of what each side expects to offer by way of evidence. And you should remember throughout this trial that what the lawyers say to you is not evidence. The evidence is the sworn testimony that you will hear, whether it is deposition testimony or testimony from witnesses who are here present in court, and any exhibits that are admitted in the case. That is the evidence.

What the lawyers tell you is what their impressions of the evidence are. They have the duty of trying to point out to you what they believe the evidence is. But just remember, what they tell you is not the evidence.

After the opening statements, the Plaintiffs have the opportunity to put on its witnesses and evidence. Then the Defendants have the opportunity to put on their evidence. And, finally, the Plaintiffs have the opportunity to offer any rebuttal evidence that they have.

After you have heard all of the evidence, I will give you written instructions on the law that we have talked about, and you will get a copy of those instructions in writing so you can take them back to the jury room with you and consult them during your deliberations.

After the instructions, the lawyers will give you their closing arguments, which are designed to point out to you what they believe they have proved through the course of the evidence. And then you will have the opportunity to deliberate and reach a verdict.

---

[22] Transcript of Jury Trial at 97-99, Dkt. No. 395, *Ericsson Inc. v. TCL Communication Technology Holdings, LTD*, 2:15-cv-11-RSP (E.D. Tex. Dec. 8, 2017).

## VI.   CONCLUSION[23]

With those instructions to the jury, we are now going to hear the Plaintiffs' opening statement, followed by the Defendants' opening statement.

---

[23] Transcript of Jury Trial at 6-30, Dkt. No. 46, *St. Lawrence Commc'ns, Inc. v. Motorola Mobility LLC*, 2:15-cv-351-JRG-RSP (E.D. Tex. April 5, 2017).

July 26, 2018

/s/ Kevin L. Burgess

Kevin L. Burgess – Lead Counsel
Texas State Bar No. 24006927
kburgess@McKoolSmith.com
Steve J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
Scott L. Cole
Texas State Bar No. 00790481
scole@McKoolSmith.com
Lindsay M. Leavitt
Texas State Bar No. 24049544
lleavitt@McKoolSmith.com
Kevin P. Hess
Texas State Bar No. 24087717
khess@McKoolSmith.com
Christine M. Woodin
Texas State Bar No. 24100051
cwoodin@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
Jonathan Powers
Texas State Bar No. 24098277

25

jpowers@mckoolsmith.com
Marcus L. Rabinowitz
Texas State Bar No. 24098293
mrabinowitz@McKoolSmith.com
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Eric S. Tautfest
Texas Bar No. 24028534
etautfest@grayreed.com
Jared Hoggan
Texas Bar No. 24065435
jhoggan@grayreed.com
David T. DeZern
Texas Bar No. 24059677
ddezern@grayreed.com
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
David Lisch
Texas Bar No. 24077179
dlisch@grayreed.com
**GRAY REED & McGRAW, LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY,
LLC, PANOPTIS PATENT
MANAGEMENT, LLC, AND OPTIS
CELLULAR TECHNOLOGY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record by electronic means on July 26, 2018.

*/s/ Kevin L. Burgess*
_____
Kevin L. Burgess
