**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, PANOPTIS PATENT MANAGEMENT, LLC,  OPTIS CELLULAR TECHNOLOGY, LLC., | § § § § | Case No. 2:17-cv-00123-JRG-RSP |
| *Plaintiffs*, | § § § | |
| v. | § § | |
| HUAWEI TECHNOLOGIES CO. LTD., HUAWEI DEVICE USA, INC., HUAWEI DEVICE CO. LTD., | § § § § | |
| *Defendants*. | § | |

## <u>PRETRIAL ORDER</u>

This patent infringement lawsuit is scheduled for trial before Judge Gilstrap on August 20, 2018. A pretrial conference was held on July 27, 2018. In accordance with FRCP 16(d)-(e), the following pretrial order controls the scope and schedule of the action going forward. This order may be modified "only to prevent manifest injustice." FRCP 16(e).

### <u>Table of Contents</u>

I.     Counsel Roster ........................................................................................................ 2

II.    Jurisdiction ............................................................................................................. 3

III.   Nature of the Lawsuit ............................................................................................. 3

IV.    Contentions of the Parties, Stipulations, and Uncontested Facts ......................... 3

V.     PanOptis's Motion to Strike Zhang's Declaration (ECF 188) ........................... 14

VI.    Motions *in Limine* ................................................................................................ 15

VII.   Exhibits ................................................................................................................. 19

VIII.  Jury Trial Procedure ............................................................................................. 19

IX.    Bench Trial Procedure .......................................................................................... 21

## I.    Counsel Roster

### A.  PanOptis's Counsel

1.  From McKool Smith, P.C.:

- Kevin L. Burgess (Lead)
- Steve J. Pollinger
- Scott L. Cole
- Lindsay M. Leavitt
- Kevin P. Hess
- Christine M. Woodin
- Marcus L. Rabinowitz
- Samuel F. Baxter
- Jennifer Truelove
- Theodore Stevenson, III

2.  From Gray Reed & McGraw LLP:

- Eric S. Tautfest
- Jared Hoggan
- David T. DeZern
- M. Jill Bindler
- David Lisch

### B.  Huawei's Counsel

1.  From Covington & Burling LLP:

- Robert T. Haslam (Lead)
- Stanley Young
- Anupam Sharma
- Thomas E. Garten
- Tess A. Hamilton
- James Hovard
- Gregory S. Nieberg
- Heng Gong
- Paul J. Wilson
- Ali Mojibi
- Christopher G. Higby

2.  From Siebman, Burg, Phillips & Smith, LLP:

- Michael C. Smith

## II.   Jurisdiction

Except for the dispute concerning Count IX of PanOptis's complaint, the court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367.

## III.   Nature of the Lawsuit

This is an action for patent infringement and declaratory judgment of no breach of FRAND. PanOptis asserts that Huawei infringes claims from U.S. Patent Nos. 7,769,238 ("the '238 patent"), 6,604,216 ("the '216 patent"), 8,385,284 ("the '284 patent"), 8,208,569 ("the '569 patent"), 8,102,833 ("the '833 patent"), and 8,437,293 ("the '293 patent"). PanOptis seeks at least a reasonable royalty for Huawei's infringement. PanOptis additionally seeks a declaratory judgment that it has complied with its contractual commitment to the European Telecommunications Standards Institute ("ETSI") arising from its licensing declarations to ETSI, and any applicable laws, during its negotiations with Huawei concerning a worldwide license to the standard essential patents in the Optis Wireless and Optis Cellular portfolios. (PanOptis' declaratory judgment claim is the subject of a Report and Recommendation by Magistrate Judge Payne that Huawei's motion to dismiss as to non-U.S. patents be granted. Dkt. 214 at 14-16.)

## IV.   Contentions of the Parties, Stipulations, and Uncontested Facts

### A.  PanOptis's Contentions

Plaintiffs Optis Wireless Technology, LLC, Optis Cellular Technology, LLC, and PanOptis Patent Management, LLC (collectively, "PanOptis") own and have the right to enforce patents in two relevant portfolios, the Optis Wireless portfolio and the Optis Cellular portfolio. The Optis Wireless portfolio includes patents from Telefonaktiebolaget LM Ericsson ("Ericsson") and Panasonic Corporation ("Panasonic"), and the Optis Cellular portfolio includes patents from Ericsson and LG Electronics Inc. ("LG"). The relevant portfolios include numerous patents essential to the 2G, 3G, and 4G telecommunications standards promulgated by ETSI ("standard essential patents"). Ericsson, Panasonic, LG, and PanOptis have committed to license the standard essential patents on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions, a contractual commitment formed through declarations to ETSI. PanOptis and Huawei began negotiations over the two relevant portfolios nearly four years ago. Huawei has acknowledged that it requires a license to PanOptis' standard essential patents but contends that the royalty rate offered by PanOptis is too high, such that PanOptis' offers are in breach of its contractual FRAND commitment to ETSI. PanOptis contends that it has complied with its FRAND obligations and has offered Huawei a FRAND license to its standard essential patents.

In this case, PanOptis asserts claims from 6 patents from its portfolios against Huawei. Specifically, PanOptis contends that Huawei infringes the following asserted claims from the patents-in-suit:

- Claim 1 of the '238 patent;
- Claims 1, 3, 11, 12, 20 of the '216 patent;
- Claims 1, 4, and 11 of the '284 patent; and

- Claims 11, 16, and 17 of the '569 patent;
- Claims 8 and 13 of the '833 patent;
- Claims 14, 20, 21, and 22 of the '293 patent.

The '216, '284, '569, '833, and '293 patents have been declared essential by their owners to the LTE standard, and PanOptis contends that these patents, and additional patents from its portfolio, are actually essential to the LTE standard. The '238 patent has not been declared essential to any standard. PanOptis seeks at least a reasonable royalty from Huawei for its infringement of these six patents. PanOptis also contends that Huawei's infringement in this case is willful, warranting enhanced damages under 35 U.S.C. § 284 and attorneys' fees under 35 U.S.C. § 285. PanOptis also contends that each of Huawei's asserted defenses and counterclaims lack merit.

PanOptis further contends that it has complied with its contractual commitments to ETSI. PanOptis contends that it is entitled to a declaratory judgment that it has complied with its obligations arising from its licensing declarations to ETSI, ETSI's IPR Policy, and any applicable laws during its negotiations with Huawei concerning a worldwide license to the standard essential patents in the Optis Wireless and Optis Cellular portfolios. PanOptis contends that its most recent offer to Huawei complies with its obligations to ETSI, and if executed, would result in a license on FRAND terms and conditions.

PanOptis contends that Huawei should pay reasonable royalty damages to compensate PanOptis for its infringement, as well as enhanced damages and attorneys' fees. PanOptis further contends that it is entitled to declaratory judgment that it has complied with its FRAND obligations.

## B.  Huawei's Contentions

Huawei denies that its accused products literally infringe any of the asserted claims of the asserted claims of the patents-in-suit. Huawei further denies that its accused products infringe any of the asserted claims of the patents-in-suit under the doctrine of equivalents. Finally, Huawei denies that it has contributorily infringed the patents-in-suit, and Huawei denies that it has induced infringement of the patents-in-suit. Huawei denies that the patents-in-suit, as well as additional patents from PanOptis' portfolio, are essential to the LTE standards.

Huawei disputes and opposes PanOptis' claims for reasonable royalty damages, enhanced damages, and attorneys' fees.  PanOptis' claim for attorneys' fees pursuant to 35 U.S.C. § 285 lacks merit. Huawei contends that PanOptis' purported claims for relief are limited due to failure to comply with the marking and notice requirements of 35 U.S.C. § 287(a).

Huawei contends that the asserted patents are invalid.  Specifically, Huawei contends that the asserted claims of the patents-in-suit are invalid for being anticipated or obvious in view of the prior art under 35 U.S.C. §§ 102 and/or 103. Huawei further contends that certain claims of the '293 patent are invalid under 35 U.S.C. § 101.

Huawei disputes that PanOptis has complied with its FRAND obligations or that it has offered Huawei a FRAND license to its declared standard-essential patents. Huawei disputes that

PanOptis has complied with its contractual commitments to ETSI and does not believe that PanOptis is entitled to a declaratory judgment1 that it has complied with its obligations arising from its licensing declarations to ETSI, ETSI's IPR Policy, or any applicable laws during its negotiations with Huawei concerning a worldwide license under the PanOptis declared standard-essential patents. Huawei does not agree that PanOptis' most recent offer to Huawei complies with PanOptis' obligations to ETSI, and if executed, would result in a license on FRAND terms and conditions.

Huawei contends that PanOptis in its complaint alleged that Huawei's LTE products infringed U.S. Patent 7,940,851 (the '851 patent) and alleged that the '851 patent was declared to be essential to the LTE Standard. Huawei contends that PanOptis now no longer asserts the '851 patent in this case.

### C.  Stipulations and Uncontested Facts

1.  Subject matter jurisdiction is proper in this Court as to PanOptis' patent claims.

2.  The parties do not contest that the Court has personal jurisdiction over the parties for the purposes of this litigation.

3.  The parties agree that venue is proper for this litigation in the United States District Court for the Eastern District of Texas, Marshall Division.

4.  PanOptis owns all rights necessary to bring this action for the six patents-in-suit. Trial exhibits PX 0001 through PX 0006 are accurate copies of the patents-in-suit.

5.  Plaintiff Optis Wireless Technology, LLC ("Optis Wireless") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 7160 Dallas Parkway, Suite 250, Plano, TX 75024.

6.  Plaintiff Optis Cellular Technology, LLC ("Optis Cellular") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 7160 Dallas Parkway, Suite 250, Plano, TX 75024.

7.  Plaintiff PanOptis Patent Management, LLC ("PPM") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 7160 Dallas Parkway, Suite 250, Plano, TX 75024.

8.  Huawei Device USA, Inc. ("Huawei Device") is a corporation organized under the laws of Texas, having its principal place of business at 5700 Tennyson Parkway, Suite 500, Plano, Texas 75024.

9.  Huawei Device Co. Ltd., now known as Huawei Device (Shenzhen) Co., Ltd. ("Huawei Device China") is a corporation organized under the laws of China, having a principal place of business at Bantian, Longgang District, Shenzhen, and People's Republic of China.

10. The accused products for the asserted claims of the '216, '284, '569, '833, and '293 patents ("Asserted LTE Patents") are:

| Accused LTE Products |
| --- |
| Ascend Mate2 |
| Ascend XT |
| GX8 / G7 Plus |
| Honor 5X |
| Honor 6X |
| Honor 8 |
| Nexus 6P |
| P8 Lite |
| Pronto |
| Raven |
| Sensa |
| SnapTo (Vision 3 LTE) |
| Union |
| Vitria |
| Honor 7X |
| Ascend XT2 |
| Elate |
| Mate 10 Pro |
| Mate 10 Porsche Design |
| Mate SE |
| MediaPad T1 8.0 Pro |
| MediaPad T1 10.0 |

11. The accused products for the Asserted LTE Patents implement the sections of the LTE standard, set forth in Release 8 of the 36 series of 3GPP technical specifications, that are specifically cited and replicated in the claim chart exhibits of PanOptis' January 24, 2018 P.R. 3-1 and 3-2 Disclosure of Asserted Claims and Infringement Contentions for U.S. Patent Nos. 6,604,216, 8,385,284, 8,208,569, 8,102,833, and 8,437,293, including:

- 3GPP TS 36.211 V.8.9.0 (2009-12) at § 6.2.
- 3GPP TS 36.211 V.8.9.0 (2009-12) at § 6.3.
- 3GPP TS 36.211 V.8.9.0 (2009-12) at § 6.8.
- 3GPP TS 36.212 V.8.8.0 (2009-12) at § 5.1.3.
- 3GPP TS 36.212 V.8.8.0 (2009-12) at § 5.1.4.
- 3GPP TS 36.212 V.8.8.0 (2009-12) at § 5.2.

12. The accused products for the asserted claim of the '238 patent are:

| '238 Accused Products |
| --- |
| Ascend Mate2 |
| Ascend XT |
| GX8 / G7 Plus |
| Honor 5X |
| Honor 6X |

| Honor 8 |
| Magna |
| Magna |
| Nexus 6P |
| P8 Lite |
| Pronto |
| Raven |
| Sensa |
| SnapTo (Vision 3 LTE) |
| Union |
| Vitria |
| Honor 7X |
| Ascend XT2 |
| Elate |
| Mate 10 Pro |
| Mate 10 Porsche Design |
| Mate SE |
| MediaPad T1 8.0 |
| MediaPad T1 8.0 Pro |
| MediaPad T1 10.0 |
| MediaPad M2 |
| MediaPad M3 |
| MediaPad M3 Lite 8 |
| MediaPad M3 Lite 10 |
| MediaPad T3 7 |
| MediaPad T3 8 |
| MediaPad T3 10 |

13. The accused products for the '238 patent implement the following sections of the ITU-T Recommendation H.264 that are specifically cited and replicated in the claim chart exhibits of PanOptis' January 24, 2018 P.R. 3-1 and 3-2 Disclosure of Asserted Claims and Infringement Contentions for U.S. Patent No. 7,769,238.

- ITU-T H.264 (10/2016) at § 0.6.4
- ITU-T H.264 (10/2016) at § 3.134
- ITU-T H.264 (10/2016) at § 3.159
- ITU-T H.264 (10/2016) at § 3.73
- ITU-T H.264 (10/2016) at § 7.4.5.3.2
- ITU-T H.264 (10/2016) at § 8.3
- ITU-T H.264 (10/2016) at § 8.4
- ITU-T H.264 (10/2016) at § 8.5
- ITU-T H.264 (10/2016) at § 8.5.1
- ITU-T H.264 (10/2016) at § 8.5.2
- ITU-T H.264 (10/2016) at § 8.5.3
- ITU-T H.264 (10/2016) at § 8.5..4

- ITU-T H.264 (10/2016) at § 8.5.10
- ITU-T H.264 (10/2016) at § 8.5.12
- ITU-T H.264 (10/2016) at § 8.5.12.1
- ITU-T H.264 (10/2016) at § 8.5.12.2
- ITU-T H.264 (10/2016) at § 8.5.13
- ITU-T H.264 (10/2016) at § 8.5.13.1
- ITU-T H.264 (10/2016) at § 8.5.13.2
- ITU-T H.264 (10/2016) at § 9.2
- ITU-T H.264 (10/2016) at § 9.2.1

14. Ericsson, LG, and Panasonic are the predecessors-in-interest to the patents that make up the Optis Wireless and Optis Cellular portfolios.

15. PanOptis, and the predecessors-in-interest, have submitted IPR licensing declarations to ETSI which stipulate that the patent owner is prepared to grant licenses under its standard essential patents consistent with Clause 6.1 of the ETSI's IPR Policy.

16. PanOptis initiated its licensing efforts with Huawei in April 2014. The parties have been unable to agree on what the fair, reasonable and non-discriminatory license terms for PanOptis should be.

17. The priority date of the asserted claims of the '238 patent is April 15, 2002.

18. The priority date of the asserted claims of the '216 patent is December 1, 1999.

19. The priority date of the asserted claims of the '284 patent is December 20, 2007.

20. The priority date of the asserted claims of the '569 patent is June 12, 2003.

21. The priority date of the asserted claims of the '833 patent is November 13, 2007.

22. The priority date of the asserted claims of the '293 patent is June 19, 2007.

23. U.S. Provisional Application No. 60/367,032 of Bjontegaard and Lillevold was filed at the United States Patent and Trademark Office ("USPTO") on March 22, 2002.

24. U.S. Patent No. 7,099,387 to Bjontegaard and Lillevold, entitled "Context-adaptive VLC video transform coefficients encoding/decoding methods and apparatuses," was issued on August 29, 2006.

25. U.S. Patent No. 7,099,387 to Bjontegaard and Lillevold claims priority to U.S. Provisional Application No. 60/367,032.

26. U.S. Patent No. 6,690,307 to Karczewicz, entitled "Adaptive variable length coding of digital video," was issued on February 10, 2004.

27. U.S. Provisional Application No. 60/341,674 of Srinivasan, Lee, Lin, Hsu, and Holcomb was filed at the USPTO on December 17, 2001.

28. U.S. Patent No. 7,263,232 to Srinivasan, entitled "Spatial extrapolation of pixel values in intraframe video coding and decoding," was issued on August 28, 2007.

29. U.S. Patent No. 7,263,232 to Srinivasan claims priority to U.S. Patent Application Serial No. 10/322,171 and U.S. Provisional Application No. 60/341,674.

30. U.S. Provisional Application No. 60/106,802 of Balachandran, Ejzak, and Nanda was filed at the USPTO on November 3, 1998.

31. U.S. Patent No. 6,895,057 to Balachandran, Ejzak, and Nanda, entitled "System and method for wireless communication supporting link adaptation and incremental redundancy," was issued on May 17, 2005.

32. U.S. Patent Application No. 09/348,958 of Moulsley was filed on July 7, 1999.

33. U.S. Patent No. 6,671,851 to Moulsley, entitled "Coding device and communication system using the same," was issued on December 30, 2003.

34. U.S. Patent Application Publication No. 2006/0227789 of Döttling and Raaf was published on October 12, 2006.

35. U.S. Patent No. 7,808,955 to Döttling and Raaf, entitled "Method for transmitting control data between a base station and a mobile station," was issued on October 5, 2010.

36. U.S. Patent Application No. 10/331,839 of Kim et al. was filed on December 30, 2002.

37. U.S. Patent No. 7,426,201 to Kim et al., entitled "Apparatus and method for transmitting/receiving a high speed-shared control channel in a high speed downlink packet access communication system," was issued on September 16, 2008.

38. U.S. Patent Application No. 10/811,229 of Virtanen and Malkamäki was filed on March 26, 2004.

39. U.S. Patent No. 7,388,848 to Virtanen and Malkamäki, entitled "Method and apparatus for transport format signaling with HARQ," was issued on June 17, 2008.

40. U.S. Patent Application No. 12/162,592 of Löhr and Seidel was filed on October 2, 2008 and claims priority to a foreign application PCT/EP2006/010521 filed November 2, 2006.

41. U.S. Patent No. 8,576,784 to Löhr and Seidel, entitled "Uplink resource allocation in a mobile communication system," was issued on November 5, 2013.

42. U.S. Provisional Application No. 60/776,345 of Zhang was filed at the USPTO on February 24, 2006.

43. U.S. Patent No. 8,477,695 to Zhang, "Wireless communication method and apparatus for selecting between transmission of short-version and full-version uplink scheduling requests," was issued on July 2, 2013.

44. U.S. Patent Application No. 09/539,224 of Wallace, Walton, and Jalali was filed at the USPTO on March 30, 2000.

45. U.S. Patent No. 6,473,467 to Wallace, Walton, and Jalali, entitled "Method and apparatus for measuring reporting channel state information in a high efficiency, high performance communications system," was issued on October 29, 2002.

46. U.S. Patent Application No. 08/405,625 of Ishikawa and Seki was filed at the USPTO on March 15, 1995.

47. U.S. Patent No. 5,646,935 to Ishikawa and Seki, entitled "Hierarchical quadrature frequency multiplex signal format and apparatus for transmission and reception thereof," was issued on July 8, 1997.

48. U.S. Provisional Application No. 60/942,843 of Papasakellariou and Cho was filed at the USPTO on June 8, 2007.

49. U.S. Patent No. 8,331,328 to Papasakellariou and Cho, entitled "Control and data signaling in SC-FDMA communication systems," was issued on December 11, 2012.

50. U.S. Patent Application Publication No. 2006/0262871 of Cho, Lee, Kwon, and Cho was published on November 23, 2006.

51. With regard to the '293 patent, the following non-patent documents are prior art "printed publications" pursuant to pre-AIA 35 U.S.C. § 102:  DX 057, DX 060, DX 081, DX 083.  It is agreed that each one of these documents was disseminated or otherwise made available to the public, including persons interested and ordinarily skilled in the subject matter or art, before the priority date for the '293 patent.

52. With regard to the '833 patent, the following non-patent documents are prior art "printed publications" pursuant to pre-AIA 35 U.S.C. § 102:  DX 271, DX 280. It is agreed that each one of these documents was disseminated or otherwise made available to the public, including persons interested and ordinarily skilled in the subject matter or art, before the priority date for the '833 patent.

53. With regard to the '238 patent, the following non-patent documents are prior art "printed publications" pursuant to pre-AIA 35 U.S.C. § 102:  DX 190, DX 191, DX 197, DX 198, DX 199, DX 200, DX 201, DX 202, DX 203, DX 204, DX 205, DX 206, DX 207, DX 213, DX 214, DX 215, DX 216, DX 220.  It is agreed that each one of these documents was disseminated or otherwise made available to the public, including persons interested and ordinarily skilled in the subject matter or art, before the priority date for the '238 patent.

54. With regard to the '216 patent, DX 033 is a prior art "printed publication" pursuant to pre-AIA 35 U.S.C. § 102. It is agreed that DX 033 was disseminated or otherwise made available to the public, including persons interested and ordinarily skilled in the subject matter or art, before the priority date for the '216 patent.

### D.  Contested Issues of Fact and Law

PanOptis's Contested Issues of Fact and Law

(a)      Whether Huawei has directly infringed the asserted claims of the patents-in-suit in connection with the manufacture, sale, offer for sale, use, and/or importation into the U.S. of the accused products.

(b)      Whether Huawei has indirectly infringed the asserted claims of the patents-in-suit by contributorily infringing or inducing infringement of the patents in suit.

(c)      Whether Huawei infringes, under the doctrine of equivalents, the asserted claims of the patents-in-suit under one or more of 35 U.S.C. §§ 271(a), 271(b), or 271(c).

(d)      Whether there is clear and convincing evidence that the asserted claims of the patents-in-suit are invalid as anticipated and/or obvious.

(e)      Whether Huawei has articulated any legally cognizable affirmative defense, and if so whether it can meet its burden of proving that any bar PanOptis' recovery (in whole or in part).

(f)      Whether Huawei's infringement is willful and whether Huawei's conduct merits enhanced damages pursuant to 35 U.S.C. § 284 and an award of attorneys' fees pursuant to 35 U.S.C. § 285.

(g)      If liability is found, the amount of damages to which PanOptis is entitled for a reasonable royalty, including an accounting and/or supplemental damages for any damages not addressed at trial and any post-trial damages, as well as costs, pre-judgment interest, and post-judgment interest.

(h)      If PanOptis is entitled to enhanced damages, the amount of such enhancement.

(i)      Whether Huawei has established by a preponderance of the evidence that PanOptis did not comply with its obligations under PanOptis' contract with ETSI during its negotiations with Huawei concerning a worldwide license under the PanOptis standard essential patents.

Huawei's Contested Issues of Fact and Law

(a)      Whether PanOptis has proved by a preponderance of the evidence that Huawei literally infringes the asserted claims of the patents-in-suit under one or more of 35 U.S.C. §§ 271(a), 271(b), or 271(c).

(b)      Whether PanOptis has proved by a preponderance of the evidence that Huawei infringes, under the doctrine of equivalents, the asserted claims of the patents-in-suit under one or more of 35 U.S.C. §§ 271(a), 271(b), or 271(c).

(c)      Whether Huawei has proved by clear and convincing evidence that one or more of the asserted claims of the patents-in-suit are invalid under 35 U.S.C. §§ 102 and/or 103.

(d)     Whether Huawei has proved by clear and convincing evidence that one or more of the asserted claims of the '293 patent are invalid under 35 U.S.C. § 101.

(e)     Whether Huawei has proved by a preponderance of the evidence that PanOptis is not entitled to damages for the '216 patent prior to February 10, 2017.

(f)     Whether Huawei has proved by a preponderance of the evidence that PanOptis is not entitled to damages for the '293 patent prior to March 21, 2017.

(g)     Whether PanOptis has proved by a preponderance of the evidence that Huawei willfully infringed each of the patents-in-suit.

(h)     Whether PanOptis has proved by a preponderance of the evidence that it is entitled to damages to compensate it for Huawei's purported infringement, and if so, the dollar amount of damages adequate to compensate for the infringement of each of the patents-in-suit.

(i)     Whether PanOptis has proved by a preponderance of the evidence that it is entitled to enhanced damages under 35 U.S.C. § 284.

(j)     Whether PanOptis has proved by a preponderance of the evidence that it is entitled to pre- and post-judgment interest.

(k)     Whether PanOptis has proved by a preponderance of the evidence that this case is an exceptional case under 35 U.S.C. § 285.

(l)     U.S. Patent 7,940,851, asserted earlier by PanOptis in this case and declared to be essential to the LTE standard, is not infringed by Huawei and is not essential to that standard.

(m)     Whether PanOptis has established by a preponderance of the evidence that PanOptis did comply with its obligations under PanOptis' contract with ETSI during its negotiations with Huawei concerning a license for its U.S. declared standard-essential patents.

### E.  Witnesses

PanOptis's Witnesses

| | Witness | Will Call | May Call | Live or By Deposition |
|---|---|---|---|---|
| 1. | Ray Warren, Director of Licensing for PanOptis Patent Management, LLC c/o GRAY REED & MCGRAW  LLP | X | | Live |
| 2. | Vijay Madisetti, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | X | | Live |
| 3. | Richard Gitlin, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | X | | Live |

| | Witness | Will Call | May Call | Live or By Deposition |
|---|---|---|---|---|
| 4. | James Womack, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | X | | Live |
| 5. | Michael Akemann, PanOptis' damages expert c/o GRAY REED & MCGRAW LLP | X | | Live |
| 6. | Alex Haimovich, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | X | | Live |
| 7. | James Warden, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | X | | Live |
| 8. | Trevor Smedley, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | | X | Live |
| 9. | Iain Richardson, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | | X | Live |
| 10. | Aaron Striegel, PanOptis' technical expert c/o GRAY REED & MCGRAW LLP | | X | Live |
| 11. | Bénédicte Fauvarque-Cosson, PanOptis' French law expert c/o GRAY REED & MCGRAW LLP | | X | Live |
| 12. | Dae Won Lee, Inventor '833 Patent c/o Jason Choy Wilmer Hale | | X | By deposition |
| 13. | Ji Li c/o Covington & Burling LLP | | X | By deposition |
| 14. | Li Jie c/o Covington & Burling LLP | | X | By deposition |
| 15. | Wen Wu c/o Covington & Burling LLP | | X | By deposition |
| 16. | Zhu Liu c/o Covington & Burling LLP | | X | By deposition |
| 17. | Xuxin Cheng c/o Covington & Burling LLP | | X | By deposition |

Huawei's Witnesses

| | Witness | Will Call | May Call | May, but Probably Will Not Call |
|---|---|---|---|---|
| . | Becker, Stephen L. | X | | |
| 2. | Bims, Harry V. | X | | |
| 3. | Frappier, Mark | X | | |
| 4. | Hassoun, Marwan | X | | |
| 5. | Schonfeld, Dan | X | | |
| 6. | Wells, Jonathan | X | | |
| 7. | Wen, Wu (Wayne) | X | | |
| 8. | Zhang, Xiaowu (Emil) | X | | |

### F.  Exhibits

For PanOptis Exhibits, see Appendix E to the Proposed Pretrial Order (ECF 225-5). For Hauwei exhibits, see Appendix F (ECF 225-6).

### G.  Management Conference Limitations

Subject to any limitations set forth below in Trial Procedures, the parties will be bound by their agreements concerning exchanges of demonstratives, exhibits, witness lists, and objections. *See* ECF 225 at 20.

## V.    PanOptis's Motion to Strike Zhang's Declaration (ECF 188)

For the reasons explained at the pretrial conference, the motion is granted-in-part. Zhang is not permitted to offer untimely expert opinion about the fairness of PanOptis's global licensing offer, i.e., opinion not related to his or Huawei's mental impressions. Zhang may testify about Huawei's state of mind during negotiations and what he or any other decision makers thought about PanOptis's offers. This fact testimony was disclosed timely; Huawei's answer to Interrogatory No. 6 was adequate, and Zhang was properly identified in accordance with FRCP 26.

## VI.    Motions *in Limine*

Before referring to the subject matter of a granted motion *in limine* in front of the jury, a party must approach the bench.

### A.  Joint Motions *in Limine* (ECF 208)

The parties agree on the following motions *in limine*, which are reproduced below vertabim from the parties' joint motion. Each of these motions is <u>granted-by-agreement</u>.

1.   The parties shall be precluded from making statements that are inconsistent with the Federal Judicial Center's patent video, and from praising or criticizing the performance, reliability, or credibility of the USPTO or the examiners that work at the USPTO. The parties are not precluded from introducing evidence that a particular prior art reference was or was not considered during prosecution of an asserted patent. The parties are also not precluded from arguing that an asserted claim is valid or invalid, or from making statements that are consistent with the Federal Judicial Center's patent video. PanOptis is not precluded from explaining that "a patent shall be presumed valid," from explaining that "the PTO is presumed to have done its job correctly," or from praising or lauding the USPTO in a manner consistent with the presumption of validity.

2.   The parties shall be precluded from raising any attorney argument, evidence, testimony, insinuation, reference, or assertions that patent examiners are overworked, prone to error, not bright, lazy, or biased toward allowing patents to issue (to meet some quota or otherwise). This limine does not foreclose comments consistent with the patent video shown by this Court, and further does not prevent Huawei from making generalizations that the examiner was in error or overlooked evidence, commenting on general matters regarding invalidity, or commenting on the relative worth of some patents.

3.   The parties shall be precluded from raising any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding any petitions for, or outcome of, inter partes review (IPR) proceedings, including any decisions to institute or not institute review. The parties are not precluded from presenting evidence or arguments regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements "made to the Patent Office," without identifying the existence of IPR proceedings. If a pending IPR petition is instituted for trial or denied institution, prior to or during the course of the trial, the party wishing to present attorney arguments, evidence, testimony, or reference the IPR petition shall approach the bench and advise the Court prior to such presentation.

4.   The parties shall be precluded from raising any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding the use of jury studies, jury consultants, focus group studies, mock trial teams, or shadow juries.

5.   The parties shall be precluded from raising any attorney argument, evidence, testimony, insinuation, reference, or assertions that the U.S. trial system favors any particular party because of its size, legal budget, or legal team.

6.   The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding the parties' claim construction positions and should

not expressly refer to any portion of the Court's Claim Construction Order in this case that is not an actual construction adopted by the Court.

7. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding concerning the filing, contents, and rulings of any Motions in Limine (other than objections based on such rulings).

8. The parties shall not make or offer any reference, in whole or in part, to any discussion among counsel or discussion before the Court during a Bench conference or during any hearing outside the presence of the jury.

9. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding any prior jury verdicts of infringement, non-infringement, validity, invalidity, or damages awards regarding PanOptis or Huawei.

10. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions as to the location of where a counsel from an opposing party practices, and the location or size of opposing counsel's law firm. This stipulation shall not prevent an attorney conducting voir dire from identifying where an attorney is from for the purposes of conducting voir dire.

11. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding any attorney-fee compensation structure.

12. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding the amount of legal fees and expenses that the parties have incurred in this litigation. This *limine* does not foreclose discussion or questions pertaining to expert billing rates and totals.

13. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions regarding a witness' choice to testify in his or her native or chosen language.

14. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions that implies a relationship between Huawei and the Chinese government or the Chinese military.

15. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions referencing the military background of Mr. Ren Zhenfei, the CEO and founder of Huawei.

16. The parties shall not present any evidence, testimony, or argument regarding any claim that Chinese companies and their products in general, or Huawei and its products in particular, pose a threat to U.S. national security or to the privacy or personal information of the users of those products.

17. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions to the "win/loss" record of the parties' counsel and expert witnesses, what percentage of the time the juries agreed with an attorney or an expert witness in other cases.

18. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions implying that PanOptis is a "patent troll," "patent pirate,"

"troll," "shell company," "litigation shop," "lawsuit factory," "litigious," "shakedown artist," "extortionist," "toll collector," or other pejorative terms, or otherwise disparaging PanOptis' business model by implying PanOptis plays the litigation lottery, engages in litigation based licensing, or is in the business of filing lawsuits. Huawei is NOT precluded from referring to PanOptis as a "NPE" or "non-practicing entity" that acquires patents through various means, asserts those patents through licensing and litigation, or other factual discussion of PanOptis' business model.

19. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions as to the possible consequences of a verdict in any parties' favor, including the possible issuance of an injunction, an award of enhanced damages, an award of attorney's fees, or arguments that a verdict would result in (1) consumers paying more for devices; (2) the economy being negatively impacted; (3) an injunction or the method of use no longer being available for use; or (4) firings or layoffs.

20. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions referencing pre- or post-judgment interest.

21. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions concerning God or Jesus, or the religious beliefs, political convictions, race, ethnicity, native language, or sexual orientation of the parties, witnesses or counsel.

22. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, assertion, or reference to the fact that a party's expert has been previously retained by an opposing law firm.

23. The parties shall not make or offer any attorney argument, evidence, testimony, insinuation, assertion, or reference to allegations against or litigation involving principals of either party in their personal capacities.

24. No argument, evidence, testimony, or reference pertaining to Qualcomm being liable for infringement instead of Huawei.

25. No argument, evidence, testimony, or reference to Huawei having a license to any of the patents owned by PanOptis (defined as Optis Cellular and Optis Wireless) because of LG/Qualcomm license.

26. No argument, evidence, testimony, or suggestion that implies any nefarious purpose behind PanOptis' corporate structure.

27. No evidence, testimony, or argument referencing Congressional reports or letters or any government investigation concerning any Huawei entity, and no evidence, testimony or argument insinuating that any Huawei entity does not respect intellectual property.

28. PanOptis shall not make or offer any attorney argument, evidence, testimony, insinuation, reference, or assertions that the royalties for the patents-in-suit should equal any of the parties' proposed royalties for a portfolio license.

29. No argument, evidence, testimony, or suggestion concerning the personal net worth, assets, or investments of any owner (direct or indirect), shareholder, director, officer or employee of PanOptis other than any ownership in PanOptis and its related companies.

30. No argument, evidence, testimony, or suggestion concerning the personal net worth, assets, or investments of any owner (direct or indirect), shareholder, director, officer or employee of Huawei other than any ownership in Huawei and its related companies.

\* \* \*

For the reasons explained during the pretrial conference, the disputed motions *in limine* are resolved as follows.

### B.  PanOptis's Motions *in Limine* (ECF 209)

1.  <u>Granted</u>. Neither party may refer to the fact that a claim or defense was dropped during the course of the litigation.

2.  Denied.

3.  <u>Granted-in-part</u>. Huawei may not argue that a patent is less valuable because ownership of the patent was transferred from the original patentee.

4.  Withdrawn.

5.  Denied.

6.  <u>Granted</u>. Huawei may not refer to the fact that PanOptis does not have employees.

7.  Denied as moot in light of the parties' agreement.

### C.  Huawei's Motions *in Limine* (ECF 210)

1.  <u>Granted-in-part</u>. PanOptis may not compare the clear and convincing evidence burden required to invalidate a patent claim to the clear and convincing evidence burden required in other areas of law, including criminal and family law, other than to say during voir dire that the standard for invalidating a patent claim is similar to the burden required to remove a child from her parents in order to ask the panel during jury selection whether any potential juror has had experience with the clear and convincing evidence burden in child custody cases.

2.  <u>Granted-in-part</u>. The parties agree that no reference will be made to (a) any sufficiency or deficiency in discovery or production of witnesses, or (b) any litigation misconduct. The parties may not otherwise tread into a discovery dispute.

3.  <u>Granted-by-agreement</u>. Neither party may refer to a person's nationality or residence in a way that could be perceived as disparaging.

4.  <u>Granted</u>. PanOptis may not refer to China's alleged disrespect for intellectual property or their allegedly weak intellectual property system.

5.  <u>Granted-by-agreement</u>. Neither party may refer to Huawei's opening or closing of offices to imply knowledge of infringement or lack thereof. The parties are not prevented from referring to Huawei's Texas facility.

6. <u>Granted-in-part</u>. PanOptis may not refer to Huawei's overall financial size, wealth, revenue, etc. PanOptis may not refer to the overall profit or revenue of an accused product unless Huawei opens the door by arguing that the royalties PanOptis is seeking would erode Huawei's profits on that product. If Huawei opens the door, PanOptis is limited to referring to the profit or revenue of the accused device earned through United States sales.

7. <u>Granted-in-part</u>. No reference to other litigation or proceedings may be made, except for the discussion of the *Unwired Planet* case that appears in the expert reports.

8. Denied as moot.

9. Withdrawn.

10. Denied as moot.

## VII.    Exhibits

Any unobjected-to exhibit on the final exhibit lists (due August 3, 2018) is considered "preadmitted," along with any exhibit for which an objection has been overruled. (See <u>Trial Procedure</u> for information concerning "preadmitted" exhibits.)

Objections under FRE 403 to the following exhibits are <u>sustained</u>: PX814-830 (Interdigital and Qualcomm agreements), and DX97, DX102, and DX336 (NTT agreement).

PanOptis's objections to the following exhibits are <u>overruled</u>: DX98, DX117, DX118, DX225.

## VIII.    Jury Trial Procedure

**Final Claims and Defenses**. Subject to the parties' commitments in their proposed pretrial order (ECF 225), all claims and defenses must be finalized by <u>August 3, 2018</u>. Any change to the claims and defenses after this point will result in a corresponding reduction in the offending party's trial time. "Claims and defenses" includes asserted patent claims and prior art references.

**Expert Reports**. Counsel must deliver a USB drive with a complete copy of any testifying expert's report, including any addendum or attached exhibits, by <u>August 17, 2018 at noon</u>.

**Jury Selection**. Voir dire will begin with questions from the court. Potential jurors will be asked about their education, knowledge about the parties and counsel, and the like. Counsel are then permitted <u>30 minutes per side</u> to question the panel. Counsel may provide a high-level, non-argumentative introduction to the case during the first three minutes. The court will then address for-cause challenges, followed by a fifteen-minute recess to let the parties assess peremptory challenges. Each side gets <u>four peremptory challenges</u>, which will be exercised simultaneously according to the "blind strike" system, i.e., a party with four strikes will strike up to four jurors, without knowing whether the opponent has struck those same jurors. <u>Eight jurors</u> will then be seated, and the court will give preliminary instructions. Only a unanimous verdict will be accepted.

**Jury Notebooks**. The parties must provide juror notebooks containing the following: (1) the patents-in-suit, with the asserted claim numbers highlighted in yellow; (2) witness pages for

each testifying witness, including a head and shoulders photograph of the witness at the top of the page, name underneath, with ruled lines below for the jurors to take notes (the pages should not distinguish between plaintiffs' and defendants' witnesses); (3) a three-hole-punched and lined notepad; and (4) a non-retractable (non-clicking) ink pen. Other helpful materials may be included, but only if both sides agree. (The court will not resolve disputes about the content of jury notebooks). <u>Ten notebooks must be delivered to Judge Gilstrap's chambers by noon on August 17, 2018</u>.

**Time Limits for Argument and Evidence**. Each side has <u>thirty minutes</u> for opening argument, <u>twelve hours</u> for the presentation of evidence, and <u>thirty minutes</u> for closing argument. Plaintiffs' counsel may reserve a portion of closing argument time for rebuttal.

**Deposition Testimony**. Aside from testimony intended to be played during the first day of trial, objections to deposition testimony will be resolved on a rolling basis during trial. After a good-faith conference, the proponent of any objected-to deposition testimony should send to chambers their opponent's objection and their response (in a single document) by 9:00 P.M., <u>two nights in advance</u>, e.g., any objection to Tuesday's deposition testimony should be sent by Sunday night. Objections will be resolved the morning before the testimony is intended to be played.

**Demonstratives**. After a good-faith conference, the proponent of any objected-to demonstrative should send to chambers their opponent's objection and their response (in a single document) by 9:00 P.M., <u>one night in advance</u>, e.g., any objection to Tuesday's demonstratives should be sent by Monday night. Objections will be resolved the morning before the demonstrative is intended to be used.

**Exhibits**. A "preadmitted" exhibit does not become part of the trial record unless it is referred to in front of the jury or shown to the jury through a PowerPoint slide or otherwise. At the end of each day of trial, the parties should meet and confer regarding which exhibits were used in front of the jury that day. The following morning, both sides should be prepared to read a list of admitted exhibits into the record. Admitted exhibits will not be present in the jury room during deliberations, but the jury may request any admitted exhibit by exhibit number.

**Moving for Judgment as a Matter of Law**. In accordance with FRCP 50(a)(2), if a party has been fully heard on an issue, only one motion for judgment as a matter of law on that issue is required. The motion must be made before the case is submitted to the jury.

**Final Jury Instructions and Charge Conference**. The parties are encouraged to continue conferring about final jury instructions. A Word copy of the proposed instructions should be sent to chambers no later than <u>three days before</u> the anticipated day of closing argument. Before closing, the court will hold both an informal and formal charge conference. Objections to the jury instructions <u>must be made on the record during the formal charge conference</u>. The objection must include the reason for the objection and any proposed alternative instruction.

**Section 101 Issue**. The court is deferring ruling on whether the subject-matter eligibility question should be presented to the jury, and if so, in what form it should be presented.

## IX.  Bench Trial Procedure

Count IX of PanOptis's complaint, which relates to PanOptis's licensing offer to Huawei, will be tried before the court, pursuant to the parties' agreement at the pretrial conference. In addition to Count IX, Huawei's fifth through tenth affirmative defenses will be presented. The jury trial will proceed first, followed (although not necessarily immediately) by the bench trial. The parties have 3.5 hours per side to complete the bench trial, including any opening or closing argument.

As discussed at the pretrial conference, any exhibit on a party's jury trial exhibit list may be used during the bench trial (and such an exhibit need not be repeated on the party's bench trial exhibit list). An additional bench trial exhibit list must be filed no later than August 17, 2018, which should include only exhibits that will be used solely during the bench trial.

* * *

Any requested item may be emailed to chambers at patrick_holvey@txed.uscourts.gov.

**SIGNED this 6th day of August, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE