# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, PANOPTIS PATENT MANAGEMENT, LLC, OPTIS CELLULAR TECHNOLOGY, LLC., <br><br>*Plaintiffs*, <br><br>v. <br><br>HUAWEI DEVICE USA, INC., HUAWEI DEVICE (SHENZHEN) CO., LTD., <br><br>*Defendants*. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:17-CV-00123-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Optis Wireless Technology, LLC; PanOptis Patent Management, LLC; and Optis Cellular Technology, LLC's (collectively, "PanOptis") Motion for Exceptional Case Status and Attorney Fees (the "Motion"). (Dkt. No. 376.) Having considered the briefing, case record, and relevant authorities the Court is of the opinion the Motion should be **GRANTED** for the reasons set forth herein.

I.  BACKGROUND

PanOptis sued Defendants Huawei Device USA, Inc. and Huawei Device (Shenzhen) Co., Ltd. (collectively, "Huawei") for patent infringement on February 10, 2017. (Dkt. No. 1.) PanOptis alleged that Huawei infringed U.S. Patent Nos. 7,769,238 (the "'238 Patent"); 6,604,216 (the "'216 Patent"); 8,208,569 (the "'569 Patent"); 8,385,284 (the "'284 Patent"); and 8,437,293 (the "'293 Patent") (collectively, the "Asserted Patents"). The '216, '569, '284, and '293 patents have been declared "essential" to the LTE cellular communications standard and the '238 patent overlaps

with portions of the H.264 standard; these patents are known as "Standard Essential Patents" ("SEPs"). (Dkt. No. 325 at 4.)

In its Complaint, PanOptis requested declaratory judgment ("Count IX") affirming that it had complied with its obligation to offer a license to its SEPs on fair, reasonable, and non-discriminatory terms. ("FRAND"). (Dkt. No. 1 ¶ 143.) Huawei raised five FRAND affirmative defenses alleging that PanOptis violated its commitments by failing to offer and grant a license on FRAND terms. (Dkt. No. 70, at 32.) At the urging of Huawei, the PanOptis claims were bifurcated into a jury trial and a bench trial with the declaratory action being relegated to the bench trial. (*See* Dkt. No. 244 at 22:17–24:17; Dkt. No. 243 at 21.)

Throughout the jury trial, Huawei vigorously asserted its FRAND affirmative defenses arguing that PanOptis had failed to offer a license to its SEPs to Huawei on FRAND terms. (*See* Dkt. No. 225 at 8.) After jury deliberations began, the Court proceeded to take up the bench trial issues, particularly Count IX. Before the Court began the bench trial, Huawei announced it was dropping its FRAND affirmative defenses. (Dkt. 310 No. at 101:3–5.) Following this announcement, Huawei argued that the Court lacked subject matter jurisdiction over Count IX, and as such, Count IX should be dismissed. (Dkt. No. 280 at 2.) To consider this late-breaking assertion as to a lack of jurisdiction, the Court delayed the bench trial. (Dkt. No. 310 at 111:16–21.)

Ultimately, the jury returned a verdict in favor of PanOptis finding that (1) Huawei infringed each of the asserted claims of the Asserted Patents (the "Asserted Claims"); (2) that the infringement was willful; (3) that none of the Asserted Claims were invalid; and (4) that PanOptis was entitled to damages in the amount of $10,553,565 as a running royalty. (Dkt. No. 291.)

Over Huawei's objections, the Court held a bench trial on August 27, 2018 as to Count IX. (Dkt. No. 313.) However, in the exercise of its discretion, the Court declined to issue a declaratory judgment finding that the Court was not presented with evidence from which it could adjudicate whether PanOptis had or had not complied with its FRAND obligations. (Dkt. No. 373.) The Court entered final judgment on March 18, 2019 designating PanOptis as the prevailing party. (Dkt. No. 374 at 4.) Additionally, in light of the verdict of willfulness, the Court awarded enhanced the damages by 25 percent. (*Id.* at 6.) PanOptis now moves for a finding of exceptionality and an award of attorneys' fees under 35 U.S.C. § 285 (Dkt. No. 376.)

## II.  LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to the Patent Act. 35 U.S.C. § 285. An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); see also *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755)). Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g., because it involves bad faith or some other misconduct. *See id*. at 1756–57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

District courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*,

134 S. Ct. at 1756. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the evidence," *Octane Fitness*, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 134 S. Ct. at 1748; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted)).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994)) (addressing a similar fee-shifting provision in the Copyright Act). As previously noted, *Octane Fitness* made clear that a party's conduct need not be independently sanctionable to warrant an award of fees under § 285. *Id.* at 1756-57. That said, courts have cautioned that fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id*. at 1753 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

While an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

## III. DISCUSSION

As noted, section 285 permits the Court to award "reasonable attorney fees to the prevailing party" in "exceptional cases." As there is no dispute that PanOptis is the prevailing party in this case, (*see* Dkt. No. 374), the Court proceeds to consider "whether [this] case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1757.

### A. PanOptis Alleges Several Grounds for Exceptional Case Status.

PanOptis moves for attorneys' fees on three grounds: (1) Huawei engaged in litigation conduct where it used timing and delay to its advantage and forced PanOptis to expend unnecessary resources; (2) Huawei's infringement defenses were objectively weak; and (3) the jury's willful infringement finding is an indication that this is an exceptional case. (Dkt. No. 376.)

PanOptis asserts that Huawei intentionally caused waste and delay on several occasions throughout this litigation. (*Id.* at 3.) First, PanOptis argues that Huawei mounted FRAND defenses and continued to assert those defenses through pretrial proceedings, as well as during trial, only to drop those defenses immediately prior to the bench trial on Count IX in a strategic effort to deprive the Court of jurisdiction to adjudicate the FRAND dispute. (*Id.* at 4; *see* Dkt. No. 381 at 101:2–11.)

Second, PanOptis argues that Huawei engaged in intentional delay by waiting until the dispositive motion deadline to dismiss the "foreign part" of Count IX.[1] (Dkt. No. 376 at 6.)

---

[1] PanOptis' Count IX sought declaratory relief concerning both U.S. and non-U.S. patents. (Dkt. No. 31.) On May 14, 2018, Huawei moved to dismiss Count IX to the extent it encompassed non-U.S. patents on the grounds the Court lacked subject-matter jurisdiction. (Dkt. No. 145.) Huawei argued that 28 U.S.C. §§ 1331, 1338 do not confer federal question jurisdiction over a FRAND dispute over non-U.S. patents. (*Id.* at 3.) The Court did not rule on the jurisdictional issue but ultimately dismissed Count IX as it pertained to non-U.S. patents. (Dkt. No. 246.)

PanOptis argues that Huawei waited nearly a year after filing its answer before raising the jurisdictional issue. During that time, the parties conducted extensive discovery on FRAND issues. (*Id.* at 7.)

Third, PanOptis argues that Huawei waited until the eve of trial to narrow its patent defenses. (*Id.*) Specifically, Huawei asserted that it had not committed infringement and that all asserted claims were invalid. (*Id.*; s*ee* Dkt. No. 39.) However, just before trial, Huawei conceded that it would not contest infringement as to the '239 and the '569 patents, nor would it argue that the '216 and '284 patents were invalid. (Dkt. No. 376 at 7.)

Fourth, PanOptis argues that Huawei caused delay by declining to agree to any representative products or admit that its products complied with the relevant portions of the LTE standard. (*Id.* at 8.) This required PanOptis to prepare separate infringement proof for all 30 accused devices. However, mere days before the end of discovery, Huawei supplemented its responses to PanOptis' request for admissions and admitted that the accused products comply with the LTE standard and function in the same way for purposes of infringement. (*Id.* at 9–10.)

Fifth, PanOptis argues Huawei wasted PanOptis' resources during claim construction by disputing the construction of 26 terms. (*Id.* at 10.) However, after PanOptis addressed all 26 terms in its opening briefing, Huawei dropped its own proposed construction for a full 50 percent (13 out of 26) of the disputed terms. (Dkt. No. 101.)

Beyond Huawei's litigation conduct, PanOptis also argues that Huawei's defenses were objectively unreasonable. In support of this assertion, PanOptis points to Huawei's "last-minute" withdrawal of forty percent of its counterclaims. (Dkt. No. 376 at 11.) Additionally, the defenses Huawei did choose to present were unanimously rejected by the jury. Finally, PanOptis argues that the jury's finding of willfulness supports the award of attorneys' fees. (*Id.* at 12–13). PanOptis

contends that this finding coupled with the totality of the circumstances supports an award of attorneys' fees.

### B. Huawei Engaged in Conduct Making this Case Exceptional.

Much of the conduct PanOptis complains of would not give rise to an exceptional case status if considered alone and separately but taken together within the totality of the circumstances this case stands out and is exceptional. Perhaps most egregiously, Huawei's strategic withdrawal of its FRAND affirmative defenses immediately following the jury trial (while the jury deliberated) but immediately prior to the beginning of the bench trial was nothing less than rank gamesmanship that crossed the line of zealous advocacy.

First, Huawei advanced the position that Count IX should not be addressed in the jury trial, but in a separate bench trial during pretrial hearings. (*See* Dkt. No. 244 at 22:17–24:17.) By doing this, Huawei was able to position itself to reap the full benefits of its FRAND affirmative defenses before the jury by arguing that the damages sought by PanOptis were not consistent with FRAND and Huawei's conduct was not willful because it sought only a FRAND license. (*See* Dkt. No. 313 at 193:14–194:8.)

Then, despite having represented to the Court throughout pretrial there was a pressing need for a bench trial on the FRAND issues, Huawei dropped its FRAND defenses just prior to the bench trial. In sum, once Huawei reaped all the benefits of its FRAND-centric defenses during the jury trial, it dropped them like a hot rock and asserted a lack of jurisdiction. (*See id.* at 197:1–19.) This intentional move by Huawei was clearly calculated to divest the Court of jurisdiction to hear the Count IX claim and at the same time deprive PanOptis the opportunity to pursue its declaratory claim that it had complied with its FRAND obligation. This conduct reveals a mindset intent on

7

gaming our legal system for an immediate advantage while at the same time subverting the very purpose of the courts to pursue justice over the long run.

To compound the egregious nature of this conduct, Huawei would not commit to refraining from this sort of conduct in the future. The Court asked whether this course of conduct would repeat itself in the future, but all Huawei's counsel could say was "I don't know what will happen in the future." (*Id.* at 197:20–198:4.) Furthermore, when the Court probed as to whether this was a planned tactic by Huawei, Huawei's counsel would not disavow that appearance, but merely apologized for not raising the jurisdiction issue earlier. (*Id.* at 199:4–200:10.)

Huawei's staged delay in withdrawing its FRAND affirmative defenses was inequitable and unreasonable. Delay in withdrawing claims (or defenses thereto) can support a finding that a case is exceptional. *See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 706 F. Supp. 2d 713, 731 (N.D. Tex. Apr. 1, 2010), *modified on other grounds by* 732 F. Supp. 2d 653 (N.D. Tex. Aug. 9, 2010). In *Highmark*, the defendant delayed withdrawing an allegation of infringement that was shown to be without support by its own expert. *Id.* The delay was orchestrated to provide leverage in relation to the opposing party's contentions. *Id.* The court found that the maintenance of "meritless" allegations and defenses supported an exceptional case finding. *Id.* at 738. Further, the court noted that the defendant likely misled the court. *Id.*

This conduct is not unlike the current case. The Court concludes that each of the grounds asserted by PanOptis for finding Huawei's conduct at trial exceptional are true. While the Court has elected to explain in particular detail Huawei's conduct concerning the bench trial and withdrawal of its FRAND defenses, it has done so because it views such actions as the worst and most egregious part of Huawei's wide-spread pattern of litigation abuse

## IV. CONCLUSION

Based on the foregoing, the Court finds that Huawei's litigation conduct merits a finding of exceptional case status. Accordingly, PanOptis' Motion for Exceptional Case Status and Attorney Fees (Dkt. No. 376) is **GRANTED**. The Court awards PanOptis all its attorneys' fees and expenses incurred herein. Plaintiffs are hereby directed to file an accounting of their recoverable attorneys' fees and expenses to identify the same within the record within 30 days hereof.

**So Ordered this**
**Nov 15, 2019**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE